# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------------------
MARSH USA LLC,

                 Plaintiff,

v.                                                      No. 1:25-cv-03241-JAV-HJR

AON RISK SERVICES COMPANIES, INC.,
ROBERT MCDONOUGH, and DANNY
HALL,

                 Defendants.
---------------------------------------------------
```

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

VEDDER PRICE P.C.

Joshua A. Dunn
jdunn@vedderprice.com
Courtney M. Brown
cmbrown@vedderprice.com
Elvira Razzano
erazzano@vedderprice.com
1633 Broadway, 31st Floor
New York, New York 10019
T:  +1 212 407 7700
F:  +1 212 407 7799

Jeanah Park (admitted *pro hac vice*)
jpark@vedderprice.com
222 N. LaSalle Street
Chicago, Illinois  60601
T:  +1 312 609 7500
F:  +1 312 609 5001

O'MELVENY & MYERS LLP

David S. Almeling (*pro hac vice* application
forthcoming)
dalmeling@omm.com
Christopher B. Phillips (*pro hac vice* application
forthcoming)
cphillips@omm.com
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone:  +1 415 984 8700

Eric Amdursky (*pro hac vice* application
forthcoming)
eamdursky@omm.com
Ramon Ramirez (*pro hac vice* application
forthcoming)
rramirez@omm.com
2765 Sand Hill Road, 1st Floor
Menlo Park, California 64025-7019
Telephone:  +1 650 473 2600

*Counsel for Defendants Aon Risk Services Companies, Inc.,
Robert McDonough, and Danny Hall*

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ............................................................................................... 6

    A.    McDonough Returns to Aon After a Nine-Year Stint at Marsh, and Other
Marsh Employees from His Group Also Choose to Join Aon .................... 6

    B.    Marsh Conducts a Fruitless Two-Month Long Forensic Investigation of 20
Departing Employees, Yet Finds No Evidence of Any Departing
Employee Actually Taking Marsh's Alleged Confidential Information or
Trade Secrets .......................................................................................... 7

    C.    Neither McDonough Nor Hall Solicits or Services Any Marsh Clients on
Behalf of Aon ......................................................................................... 8

    D.    Other Departing Employees Are Offered Higher Compensation by Aon
and Decide Freely to Leave Marsh, After Which Marsh Hires Four Aon
Employees to Replace Them .................................................................... 9

LEGAL STANDARD ...................................................................................... 10

ARGUMENT ................................................................................................. 11

I.    THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST
MCDONOUGH AND HALL FOR BREACH OF CONTRACT BECAUSE
MARSH FAILS TO IDENTIFY THE CONTRACTUAL PROVISIONS
ALLEGEDLY BREACHED (COUNT I). .................................................. 11

II.    MARSH'S BREACH OF FIDUCIARY DUTY CLAIMS AGAINST
MCDONOUGH AND HALL ARE DUPLICATIVE OF ITS BREACH OF
CONTRACT CLAIMS AND MUST BE DISMISSED AS A MATTER OF LAW
(COUNT II). ......................................................................................... 14

III.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST AON
FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (COUNT
VII). .................................................................................................... 16

    A.    Marsh Fails to Allege an Underlying Breach of Fiduciary Duty by
McDonough or Hall. ............................................................................. 16

    B.    Marsh's Claim for Aiding and Abetting McDonough's Alleged Breach of
Fiduciary Duty Fails. ............................................................................ 16

    C.    Marsh's Claim Against Aon for Aiding and Abetting Hall's Alleged
Breach of Fiduciary Duty Fails. ............................................................ 19

IV.    THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST
MCDONOUGH AND HALL FOR "BREACH" OF THE FAITHLESS
SERVANT DOCTRINE (COUNT IV). ...................................................... 21

    A.    Marsh Fails to Meet the High Bar for Pleading a "Persistent Pattern" of
Misconduct During McDonough's and Hall's Employment. ..................... 22

B.      Marsh's Faithless Servant Claims Are Duplicative of Its Breach of Fiduciary Duty Claims and Must Be Dismissed as a Matter of Law.    23

V.     THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST HALL AND AON FOR TRADE SECRET MISAPPROPRIATION UNDER THE DTSA (COUNT IX).    25

    A.      Marsh Has Failed to Adequately Allege the Existence of Any Trade Secret.    25

    B.      Marsh Fails to Allege Misappropriation of any Trade Secret by Hall.    28

    C.      Marsh Fails to Allege Misappropriation by Aon.    30

VI.    THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST AON AND MCDONOUGH FOR TORTIOUS INTERFERENCE WITH CONTRACT (COUNT VI).    31

    A.      In a Single Count, Marsh Brings Claims Against Two Different Defendants for Alleged Interference with Twenty Different Contracts, While Failing to Allege Sufficient Facts About Those Contracts.    31

    B.      Marsh Fails to Sufficiently Allege that Either Aon or McDonough Had Actual Knowledge of a Contract Between Marsh and a Departing Employee.    33

VII.   THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST AON, MCDONOUGH, AND HALL FOR TORTIOUS INTERFERENCE WITH MARSH'S BUSINESS RELATIONSHIPS (COUNT V).    34

VIII.  THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST AON, MCDONOUGH, AND HALL FOR UNFAIR COMPETITION (COUNT III).    37

IX.    THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST AON, MCDONOUGH, AND HALL FOR CONSPIRACY (COUNT VIII).    39

CONCLUSION    41

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AD Lightning Inc. v. Clean.io, Inc.*,
2020 U.S. Dist. LEXIS 141311 (S.D.N.Y. Aug. 7, 2020) .......................................................29

*Aira Jewels, LLC v. Mondrian Collection, LLC*,
2024 WL 1255798 (S.D.N.Y. Mar. 25, 2024) .......................................................................27

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
239 Cal. Rptr. 3d 577 (Ct. App. 2018) ...............................................................................33

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................................................................10

*AT&T Corp. v. Atos IT Sols. & Servs., Inc.*,
714 F. Supp. 3d 310 (S.D.N.Y. 2024) .................................................................................40

*Barbagallo v. Marcum LLP*,
820 F. Supp. 2d 429 (E.D.N.Y. 2011) .................................................................................14

*Bautista v. PR Gramercy Square Condominium*,
642 F. Supp. 3d 411 (S.D.N.Y. 2022) .................................................................................11

*Beach v. Touradji Cap. Mgmt., LP*,
203 N.Y.S.3d 324 (App. Div. 2024) ...................................................................................23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................................10

*Bose v. Interclick, Inc.*,
2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) .......................................................................32

*Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*,
2007 WL 1040809 (S.D.N.Y. Apr. 4, 2007) .........................................................................40

*Broccoli v. Ashworth*,
2025 WL 880550 (S.D.N.Y. Mar. 21, 2025) ..........................................................................1

*Cambridge Cap. LLC v. Ruby Has LLC*,
565 F. Supp. 3d 420 (S.D.N.Y. 2021) .................................................................................35

*Cartiga, LLC v. Aquino*,
2025 WL 388804 (S.D.N.Y. Feb. 4, 2025) .............................................................14, 15, 35, 37

*Casanas v. Casanas*,
    187 N.Y.S.3d 207 (1st Dep't 2023) ........................................................31

*Chahine v. City of New York*,
    2020 WL 2555228 (S.D.N.Y. May 20, 2020) ........................................37

*Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*,
    546 F. Supp. 3d 204 (W.D.N.Y. 2021) ............................................35, 36

*Cortes v. Twenty-First Century Fox Am., Inc.*,
    285 F. Supp. 3d 629 (S.D.N.Y. 2018) ..................................................31

*Credit Sights, Inc. v. Ciasullo*
    2008 WL 4185737 (S.D.N.Y. Sept. 5, 2008) ........................................13

*CustomGuide v. Career Builder, LLC*,
    813 F. Supp. 2d 990 (N.D. Ill. 2011) ....................................................13

*Ebel v. G/O Media, Inc.*,
    2021 WL 2037867 (S.D.N.Y. May 21, 2021) ..................................23, 24

*Edwards v. Arthur Andersen LLP*,
    189 P.3d 285 290 (Cal. 2008) ..............................................................33

*Elsevier Inc. v. Dr. Evidence, LLC*,
    2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ..............................25, 26, 27

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst.*
    *for Cancer Rsch.*,
    106 N.Y.S.3d 302 (App. Div. 2019) ................................................39, 40

*Ferring B.V. v. Allergan, Inc.*,
    4 F. Supp. 3d 612 (S.D.N.Y. 2014) ......................................................34

*Filippova v. Mogilevsky*,
    2018 WL 7825449 (S.D. Fla. Aug. 29, 2018) ......................................12

*Friedman v. Hosp.*,
    2024 WL 5691656 (S.D.N.Y. Apr. 2, 2024) ..........................................2

*Garvey v. Face of Beauty, LLC*,
    2022 U.S. Dist. LEXIS 171182 (S.D.N.Y. Sep. 21, 2022) ..............16, 23

*Grayson v. Ressler & Ressler*,
    271 F. Supp. 3d 501 (S.D.N.Y. 2017) ....................................................2

*In re Int. Rate Swaps Antitrust Litig.*,
    351 F. Supp. 3d 698 (S.D.N.Y. 2018) ..................................................36

*In Touch Concepts, Inc. v. Cellco P'ship*,
    949 F. Supp. 2d 447 (S.D.N.Y. 2013)................................................................31, 32

*Intrepid Fin. Partners, LLC v. Fernandez*,
    2020 WL 7774478 (S.D.N.Y. Dec. 30, 2020) ........................................25, 26, 27

*JAPNA, Inc. v. SELFX Innovations Inc.*,
    2024 WL 1250269 (S.D.N.Y. Mar. 22, 2024) ........................................21, 22, 23

*Kassover v. Prism Venture Partners, LLC*,
    862 N.Y.S.2d 493 (App. Div. 2008) ................................................................16

*Katz v. Travelers*,
    241 F. Supp. 3d 397 (E.D.N.Y. 2017) ............................................................35

*Krys v. Butt*,
    486 F. App'x 153 (2d Cir. 2012) ............................................................19, 21

*Kumaran v. Nat'l Futures Ass'n, LLC*,
    2022 WL 1805936 (S.D.N.Y. 2022)................................................................28

*Lindberg v. Dow Jones & Co., Inc.*,
    2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021)................................................19

*Marans v. Intrinsiq Specialty Solutions, Inc.*,
    2018 WL 4759772 (S.D.N.Y. Sept. 30, 2018)..........................................11, 13

*Masefield AG v. Colonial Oil Indus.*,
    2006 WL 346178 (S.D.N.Y. Feb. 15, 2006)..................................................36

*MedQuest Ltd. v. Rosa*,
    2023 WL 2575051 (S.D.N.Y. Mar. 20, 2023) ........................................27, 29

*Medtech Prods. Inc. v. Ranir, LLC*,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008)............................................................34

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*,
    600 N.Y.S.2d 212 (App. Div. 1993)..............................................................40

*MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*,
    655 F. Supp. 3d 193 (S.D.N.Y. 2023)............................................................10

*MThree Corp. Consulting Ltd. v. Wascak*,
    2022 WL 15524842 (S.D.N.Y. Oct. 27, 2022)..............................................22

*Murray v. Beard*,
    102 N.Y. 505 (1886) ........................................................................21, 22, 23

v

*N. Food I/E, Inc. v. Apollo Food Int'l Inc.*,
    2020 WL 9607108 (E.D.N.Y. Aug. 14, 2020)............................................32, 38, 39

*Naughright v. Weiss*,
    826 F. Supp. 2d (S.D.N.Y. 2011)...............................................................................10

*Oliver Wyman, Inc. v. Adam*,
    2016 WL 5339549 (S.D.N.Y. Sept. 22, 2016)...........................................14, 15, 16

*Plymouth Cap., LLC v. Montage Fin. Grp., Inc.*,
    219 N.Y.S.3d 372 (2024)............................................................................................16

*Q3 Res., Inc. v. Navigant Consulting, Inc.*,
    2019 U.S. Dist. LEXIS 108835 (S.D.N.Y. June 27, 2019).........................17, 18, 19

*Quest Partners LLC v. Brugman*,
    204 N.Y.S.3d 923, 2024 WL 952685 (Sup. Ct. Feb. 29, 2024)..............................39

*R.R. Donnelley & Sons Co. v. Marino*,
    505 F. Supp. 3d 194 (W.D.N.Y. 2020) ....................................................................30

*Rinaldi v. SCA La Goutte, D'Or*,
    2020 WL 5441290 (S.D.N.Y. Sept. 9, 2020)...........................................................39

*Ruderman v. Liberty Mut. Grp., Inc.*,
    No. 21-817, 2022 WL 244086 (2d Cir. Jan. 27, 2022)...........................................11

*Saulsbury v. Durfee*,
    162 N.Y.S.3d 614 (App. Div. 2022) .........................................................................39

*Shamrock Power Sales, LLC v. Scherer*,
    2016 WL 7647597 (S.D.N.Y. Dec. 8, 2016) ...........................................................25

*Swan Media Grp., Inc. v. Staub*,
    841 F. Supp. 2d 804 (S.D.N.Y. 2012)................................................................11, 13

*Swiss Reinsurance Am. Corp. v. Access Gen. Agency, Inc.*,
    571 F. Supp. 2d 882 (N.D. Ill. 2008) .......................................................................12

*TileBar v. Glazzio Tiles*,
    723 F. Supp. 3d 164 (E.D.N.Y. 2024) ............................................................ *passim*

*Turner v. Konwenhoven*,
    100 N.Y. 115 (1885) ............................................................................................21, 22

*Vinas v. Chubb Corp.*,
    499 F. Supp. 2d 427 (S.D.N.Y. 2007)................................................................36, 37

*Warren v. John Wiley & Sons, Inc.*,
    952 F. Supp. 2d 610 (S.D.N.Y. 2013)................................................................11

*Watts v. Jackson Hewitt Tax Serv. Inc.*,
    675 F. Supp. 2d 274 (E.D.N.Y. 2009) ...............................................16, 17, 18, 20

*WeRide Corp. v. Huang*,
    379 F. Supp. 3d 834 (N.D. Cal. 2019) ...............................................................33

*Worldcare Int'l, Inc. v. Kay*,
    989 N.Y.S.2d 495 (App. Div. 2014).....................................................................24

*Yucyco, Ltd. v. Republic of Slovn.*,
    984 F. Supp. 209 (S.D.N.Y. 1997).......................................................................12

*Yukos Cap. S.A.R.L. v. Feldman*,
    977 F.3d 216 (2d Cir. 2020).........................................................21, 22, 23, 25

*Zoom Imaging Solutions, Inc. v. Roe*,
    2020 WL 489238 (E.D. Cal. Jan. 30, 2020) .......................................................13

**Statutes**

18 U.S.C. § 1832....................................................................................................4

18 U.S.C. § 1839(3)..............................................................................................25

18 U.S.C. § 1839(5)..............................................................................................28

Cal. Bus. & Prof. Code § 16600 ...........................................................................33

Fed. R. Civ. P. 8(a) ........................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6).............................................................................1, 10, 14

**Other Authorities**

https://aon.mediaroom.com/2025-03-10-Aon-Hires-New-Leadership-to-
    Accelerate-Construction-and-Surety-Practice-in-North-America ............................6

https://www.insurancejournal.com/news/east/2016/03/17/402291.htm.................6

https://www.linkedin.com/in/christopher-spiridis-b1950022/........................................1

https://www.linkedin.com/in/sarah-coburn-cris-3b717711 .......................................1

https://www.linkedin.com/in/brandon-schoper-42248383 .........................................1

https://www.marsh.com/en/about/media/jim-dunn-joins-marsh-as-us-
    construction-practice-leader.html ............................................................................................1

Defendants, Aon Risk Services Companies, Inc. ("Aon"), Robert McDonough ("McDonough"), and Danny Hall ("Hall" and, together with Aon and McDonough, "Defendants"), by their undersigned attorneys, submit this memorandum of law in support of their motion to dismiss the Amended Complaint [ECF No. 18] ("AC") of Plaintiff, Marsh USA LLC ("Marsh"), for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## PRELIMINARY STATEMENT

Marsh filed this lawsuit in a brazen attempt to exert control over individuals' autonomy to work where they choose under the guise of unfair competition. This tactic is disingenuous and must be stopped. Marsh's lawsuit is particularly ironic because after filing suit, Marsh targeted and hired four *Aon employees* to join Marsh.[2] Marsh's strategy to chill fair competition by filing a shotgun-style Complaint, followed by a similarly flawed Amended Complaint, fails because the Amended Complaint fails to state any claim for relief.

Notably, less than five years ago, Marsh poached over 40 of Aon's employees in South Florida and certain of those employees even took confidential Aon information on their way out,

---

[1] McDonough and Hall are employed by a different Aon entity, Aon Risk Services, Inc. of Maryland. Should Plaintiff file a Second Amended Complaint, and while Defendants deny any liability of any kind, Defendants suggest that Plaintiff name the proper Aon entity as a defendant.

[2] Marsh targeted and hired an Aon executive as its US Construction Practice Leader—the very same position McDonough had held at Marsh. S*ee* https://www.marsh.com/en/about/media/jim-dunn-joins-marsh-as-us-construction-practice-leader.html. The Court may take judicial notice of articles published on websites and press releases where neither party "dispute[s] the[ir] authenticity . . . and they are capable of accurate and ready determination." *Broccoli v. Ashworth*, 2025 WL 880550, at *3 (S.D.N.Y. Mar. 21, 2025). Then, after filing the Amended Complaint, Marsh hired three additional former Aon employees who previously worked with that executive to join the same practice at Marsh. *See* https://www.linkedin.com/in/christopher-spiridis-b1950022/; https://www.linkedin.com/in/sarah-coburn-cris-3b717711; https://www.linkedin.com/in/brandon-schoper-42248383.

forcing Aon to file suit against Marsh in Florida state court.[3]  Here, many of the Departing Employees[4] were (i) formerly Aon employees who developed client relationships at Aon, (ii) were subsequently recruited by Marsh several years ago, (iii) brought those Aon clients with them to Marsh, (iv) now chose to return to Aon, and (v) importantly, without soliciting clients.  The Construction and Infrastructure ("C&I") and Surety industry is a small space in which prominent employees are well known.  Tellingly, while Marsh complains that the loss of these employees and clients destroyed the "core" of its construction and surety business (which it has now filled with former *Aon* employees), Marsh never sought injunctive relief to stop the alleged harm.  That is because there is no evidence to support any wrongful conduct or violation of covenants, let alone injunctive relief.

None of the Amended Complaint's allegations actually support an inference of wrongdoing by McDonough, Hall, or Aon.  Most notably, Marsh alleges that it conducted a thorough inspection of the Departing Employees' Marsh-issued computers and mobile devices (AC ¶¶ 129-32), yet the Amended Complaint contains no facts whatsoever that McDonough, Hall, or the Departing Employees downloaded, copied, or misappropriated any confidential information or trade secrets.  While Marsh makes much of the allegation that Hall *accessed* client information "in the weeks leading up to his resignation" while he was still employed by Marsh (AC ¶ 47), this unremarkable

---

[3] *See Aon Risk Services, Inc. of Florida et al. v. Marsh USA Inc. et al.*, Case No. 2021-015086-CA-01 (Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida) (the "Miami Litigation").  The Court may take judicial notice of public filings made in other court proceedings, "not for the truth of the matters asserted in the other litigation[s], but rather to establish the fact of such litigation[s] and related filings."  *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 514 (S.D.N.Y. 2017) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)); *see also Friedman v. Hosp.*, 2024 WL 5691656, at *2 (S.D.N.Y. Apr. 2, 2024), *report and recommendation adopted sub nom. Friedman v. Mt. Sinai Hosp.*, 2025 WL 1360890 (S.D.N.Y. May 9, 2025) (taking judicial notice of plaintiff's filings in prior state court action).

[4] Unless otherwise specified, defined terms shall have the meanings ascribed to them in the Amended Complaint.

assertion simply demonstrates that Hall was doing his job at Marsh.  Indeed, it would be more concerning if he was working for Marsh and **_not_** accessing information needed to service Marsh's clients.  Notably, Marsh alleges **_no facts_** that Hall copied, downloaded, emailed, or otherwise transferred the information he accessed while he was still a Marsh employee.  In other words, Marsh cannot allege that any alleged confidential information or trade secrets were actually taken, nor that any information Hall accessed contained confidential information or trade secrets.  Indeed, all that **_has_** occurred is that former Marsh employees exercised their freedom to work where they choose and that Aon is engaging in fair competition.

Marsh's threadbare claims fall far short of the pleading standard and should be dismissed, as set forth more fully below.

The breach of contract claim against McDonough and Hall fails to satisfy Rule 8(a) because, as pled, it alleges multiple breaches of different contracts against multiple defendants within a single count.  (*See* Section I, *infra*.)

The breach of fiduciary duty claim against McDonough and Hall must be dismissed as duplicative of the breach of contract claim.  (*See* Section II, *infra*.)

The aiding and abetting breach of fiduciary duty claim against Aon fails for three separate and independent reasons.  First, because Marsh does not state an underlying claim against McDonough or Hall for breach of fiduciary duty, its aiding and abetting claim automatically fails. Second, Marsh cannot allege that Aon substantially assisted McDonough or Hall.  Marsh offers only conclusory allegations—based entirely upon information and belief—that Aon directed McDonough to solicit one Marsh client, one Marsh prospective client, and the Departing Employees.  As for Hall, Marsh does not even attempt to tie Hall's access to Marsh information to

any allegedly wrongful action by Aon.  Third, Marsh cannot allege that Aon had actual knowledge of McDonough's or Hall's purported breaches.  (*See* Section III, *infra*.)

The "claim" for breach of the faithless servant doctrine also is duplicative of the breach of fiduciary duty claim (and, by extension, the breach of contract claim).  Additionally, the faithless servant claim fails because Marsh cannot allege that McDonough's or Hall's conduct in preparing to leave Marsh, during an approximately one-month period, amounted to a "persistent pattern" of misconduct.  (*See* Section IV, *infra*.)

The claim against Hall and Aon under the Defend Trade Secrets Act, 18 U.S.C. § 1832 *et seq.* ("DTSA") fails because Marsh does not allege the existence of a trade secret protected by the DTSA, nor does Marsh allege any facts to support that Hall or Aon misappropriated any alleged trade secrets.  (*See* Section V, *infra.*).

The claims against McDonough and Aon for tortious interference with all Departing Employees' contracts are defective for a number of reasons.  First, these claims fail because Marsh does not allege any facts about the purported contract(s) each Departing Employee supposedly breached.  Without these details, neither the Court nor any of the Defendants can determine something as basic as whether the allegedly breached provisions were valid, a concern heightened by the fact that the Departing Employees are located in different states and are subject to different restrictive covenants.  The claim against Aon also fails because the Amended Complaint lacks sufficient facts to support the allegation that Aon had actual knowledge of the Departing Employees'—including McDonough's and Hall's—contracts with Marsh.  (*See* Section VI, *infra*.)

Marsh's claims against McDonough, Hall, and Aon for tortious interference with business relationships also fail for two reasons.  First, Marsh's claim is based entirely on information and belief, with no supporting facts.  Second, Marsh fails to adequately allege that McDonough, Hall,

or Aon used wrongful means or were acting solely out of malice. For example, Marsh concludes, solely on information and belief, that McDonough worked with Aon to develop a plan to identify Marsh clients to move business to Aon. Marsh, however, does not otherwise allege any facts regarding the details of that plan, such as when it was developed, who at Aon was involved, or which Marsh clients were identified. (*See* Section VII, *infra*.)

The unfair competition claim should be dismissed because it is premised on Marsh's other claims and fails because those underlying claims fail for the reasons stated herein. Further, this claim should be dismissed for two additional reasons. First, even a cursory review of the Amended Complaint makes clear that Marsh offers nothing but vague and conclusory allegations as to McDonough's allegedly sharing with Aon compensation information about the Departing Employees. Second, the unfair competition claim against McDonough and Hall is duplicative of nearly all other claims against them. Similarly, the unfair competition claim against Aon is duplicative of all other claims against Aon. Moreover, the allegation that Aon acted in "bad faith" is premised on Marsh's other claims against Aon, each of which also fails to state a claim. The unfair competition claim must fall with Marsh's other claims. (*See* Section VIII, *infra*.)

The conspiracy claim fails because New York law does not recognize civil conspiracy as a standalone cause of action. Marsh fails to identify, let alone allege sufficient facts to state a claim for, an independent tort. To the extent that any of Marsh's other claims survive dismissal, Marsh's conspiracy claim must be dismissed as duplicative. (*See* Section IX, *infra*.)

Marsh brought this lawsuit as an attempt to stifle ***fair*** competition. After the Departing Employees chose to leave Marsh—many of them returning to an employer that they previously worked for—Marsh turned around and sued McDonough and Aon, and later Hall, solely to bide time while it tries to conjure up a legitimate basis for its claims. It cannot do so, because there are

none.  The Amended Complaint fails to state any claim upon which relief can be granted, and so it must be dismissed.

## BACKGROUND

As alleged in the Amended Complaint, Aon is a leading global professional services firm providing a broad range of conventional and alternative risk management products and services covering the businesses of, among others, insurance brokerage.  (AC ¶ 11.)  Marsh is one of Aon's direct competitors.  (*Id.*)  Before McDonough was employed by Marsh, he worked for Aon for over 20 years.[5]  Accordingly, McDonough and certain other Departing Employees generated and developed certain established Aon client relationships that they moved with them to Marsh.

### A.    McDonough Returns to Aon After a Nine-Year Stint at Marsh, and Other Marsh Employees from His Group Also Choose to Join Aon.

McDonough worked in Marsh's New York office as Managing Director and US Construction Practice Leader of Marsh's Construction Surety business unit from March 31, 2016, through March 14, 2025.  (AC ¶¶ 33, 121.)  On March 10, 2025, McDonough resigned from Marsh.  (AC ¶ 36.)  On March 17, 2025, McDonough rejoined Aon.  (AC ¶ 121.)  As Marsh has stated previously, there is "nothing unusual about" people being recruited to switch companies.[6]

Following the Departing Employees' resignations, Marsh sent correspondence to Aon and the Departing Employees, and engaged with their outside counsel about Marsh's ongoing forensic investigation of the Departing Employees and their post-employment obligations to Marsh.  (AC ¶¶ 131-32.)  The Departing Employees are located across the country, worked in Marsh offices

---

[5] *See* https://aon.mediaroom.com/2025-03-10-Aon-Hires-New-Leadership-to-Accelerate-Construction-and-Surety-Practice-in-North-America; *see also* https://www.insurancejournal.com/news/east/2016/03/17/402291.htm.

[6] *See* Marsh Opp. to Aon Mot. for Temp. Restraining Order, at 8-9, Miami Litigation, Dkt. No. 47 ("Marsh Miami Litigation Opp."), attached hereto as Exhibit A to the Declaration of Joshua A. Dunn; *see also* AC ¶ 115 n.2 (referencing another Aon employee who formerly worked at Marsh).

across at least 10 different states, signed different employment agreements with different restrictive covenants, and in some instances, are subject to different states' laws.  (AC ¶¶ 40-57.) While Marsh attaches McDonough's and Hall's employment agreements to the Amended Complaint, Marsh tellingly does not attach any alleged employment agreements of the other Departing Employees.  Nor does Marsh allege specific facts relating to any other employment agreements.

According to Marsh, McDonough's and Hall's employment agreements contain the following relevant provisions: (1) McDonough and Hall are prohibited, through the 12-month period after their employment with Marsh ends, from soliciting clients or prospective clients of Marsh for the purpose of providing the same type of services they provided while at Marsh (this includes certain non-interference, non-supervision, and non-assistance provisions), with respect to clients with whom McDonough and Hall "had contact" or about whom McDonough and Hall obtained Confidential Information and Trade Secrets during the last two years of their employment (AC ¶¶ 68-69); (2) McDonough and Hall are prohibited, through the 12-month period after their employment with Marsh ends, from soliciting Marsh employees with whom they worked or about whom they obtained Confidential Information and Trade Secrets during the last two years of their employment (AC ¶¶ 70-71); and (3) McDonough and Hall are prohibited from disclosing Marsh Confidential Information and Trade Secrets other than in connection with Marsh's business or as specifically authorized by Marsh (AC ¶ 60).

### B.    Marsh Conducts a Fruitless Two-Month Long Forensic Investigation of 20 Departing Employees, Yet Finds No Evidence of Any Departing Employee Actually Taking Marsh's Alleged Confidential Information or Trade Secrets.

Despite having conducted a two-month long forensic investigation, Marsh was unable to find *any* evidence of misappropriation of any alleged confidential Marsh information or trade secrets.  On April 17, 2025—over one month after the Departing Employees' resignations—Marsh

filed its original Complaint against McDonough and Aon, in which Marsh asserted eight different counts all based on the same allegations: McDonough purportedly solicited Marsh's clients or prospective clients and the Departing Employees, McDonough disclosed certain unspecified Marsh Confidential Information, and Aon knew about and was involved in McDonough's alleged misconduct.   (Compl. [ECF No. 1] ¶¶ 94-95.)   On May 29, 2025, Marsh filed an Amended Complaint, adding Hall as a defendant and alleging that, on information and belief, Hall purportedly accessed confidential and trade secret information related to an unnamed client, "Client M," to entice Client M to move its surety business from Marsh to Aon.  (AC ¶¶ 147-54.)

### C.    Neither McDonough Nor Hall Solicits or Services Any Marsh Clients on Behalf of Aon.

Marsh devotes less than 10 pages of its nearly 60-page Amended Complaint to asserting how McDonough allegedly breached his employment agreements.  Marsh points to only ***one*** Marsh client with whom McDonough worked and who left Marsh for Aon.[7]   (AC ¶ 135.) Excluding allegations pled on information and belief, the other clients referenced (but not identified) by Marsh were, according to Marsh, (i) not serviced by McDonough while he was at Marsh (*id.*), (ii) solicited by ***Aon*** but not by McDonough or the other Departing Employees (AC ¶¶ 137, 141, 145), (iii) not solicited by ***anyone*** (AC ¶¶ 136, 139, 140, 144), or (iv) solicited by an unidentified Departing Employee, but did not move to Aon (AC ¶ 140).   At bottom, these allegations do not support a claim that McDonough breached any client non-solicitation provision.

Similarly, Marsh devotes just over a single page of its Amended Complaint to asserting how Hall allegedly breached his employment agreements, disclosed trade secrets, or committed any other torts.  Marsh alleges that while he was still employed by Marsh, "in the weeks leading

---

[7] Aon has lost at least one client to Marsh (i.e., Aon has received at least one broker of record letter) following one of the four recent departures of Aon employees to Marsh.

up to his resignation," Hall accessed three documents relating to an unnamed client, "Client M."
(AC ¶ 147.)  Notably, there are no allegations that Hall copied, downloaded, or transferred any of
this information to himself, Aon or anyone else; Marsh merely alleges that Hall accessed it.  On
these thin allegations, Marsh makes an extraordinary factual leap by alleging, on information and
belief, that Hall used this confidential information he accessed weeks earlier to move Client M's
business to Aon.  (*Id.* ¶¶ 149, 152).  Marsh flip flops, alleging that Hall used confidential
information "in the weeks" and "days just preceding his resignation" (AC ¶ 151), which
presumably he was required to use while employed at Marsh as the business lead for Client M.
(AC ¶ 147.)

> **D.   Other Departing Employees Are Offered Higher Compensation by Aon and
> Decide Freely to Leave Marsh, After Which Marsh Hires Four Aon
> Employees to Replace Them.**

While Marsh alleges that McDonough must have improperly disclosed the other Departing
Employees' compensation information to Aon (AC ¶ 117), those allegations are not only
conclusory, but are contrary to Marsh's positions in the Miami Litigation that such information is
publicly available or otherwise readily ascertainable from publicly available information.  *See*
Marsh Miami Litigation Opp. at 24.  Nor was there anything stopping the Departing Employees
from disclosing their own compensation information to Aon in an attempt to secure a higher offer.

Marsh also neglects to mention that in the Miami Litigation, it took another contrary
position, arguing that its offering a departing employee a "life-altering amount of money" did ***not***
amount to improper solicitation.  *See* Marsh Miami Litigation Opp. at 17.  Here, Marsh takes the
opposite position, alleging that the Departing Employees' decisions to take strong compensation
packages to work where and with whom they wished, is inherently wrongful.  (AC ¶¶ 116-17.)

Marsh's position is indeed rich, given that ***after*** filing this lawsuit, it hired four Aon
employees who worked together within the same group at Aon to join Marsh's C&I and Surety

practice.  Immediately after one employee left to join Marsh, one of the clients she serviced issued a Broker of Record letter moving its business to Marsh.

In sum, each of Marsh's claims is deficient and should be dismissed under Rule 12(b)(6).

## LEGAL STANDARD

Rule 12(b)(6) requires dismissal of a complaint when its allegations fail "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint "requires more than labels and conclusions"—"formulaic recitation[s]" or "[t]hreadbare recitals" of the elements of a cause of action will not suffice.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678-79.

While the Court must accept as true all specific non-conclusory factual allegations set forth in the complaint, it is "free to disregard legal conclusions, deductions or opinions couched as factual allegations."  *Naughright v. Weiss*, 826 F. Supp. 2d, 676, 689 (S.D.N.Y. 2011); *Iqbal*, 556 U.S. at 678.  A court must consider whether the complaint has alleged "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 547.

Here, Marsh's allegations as to critical facts, when made on information and belief, are speculative.  While a plaintiff may plead facts alleged upon information and belief where "the belief is based on factual information that makes the inference of culpability plausible, such allegations must be accompanied by a statement of the facts upon which the belief is founded."  *MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*, 655 F. Supp. 3d 193, 204 (S.D.N.Y. 2023) (internal quotations omitted).  Further, "it is well established that a complaint must at least contain enough factual allegations that are *not* made upon information and belief to raise a right to relief above the

speculative level."[8]  *Bautista v. PR Gramercy Square Condominium*, 642 F. Supp. 3d 411, 427

(S.D.N.Y. 2022) (internal quotations omitted) (emphasis in original).  Marsh does not do so here.

## ARGUMENT

I.    **THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST MCDONOUGH AND HALL FOR BREACH OF CONTRACT BECAUSE MARSH FAILS TO IDENTIFY THE CONTRACTUAL PROVISIONS ALLEGEDLY BREACHED (COUNT I).**

Marsh's breach of contract claim fails to satisfy Rule 8(a) because it alleges breaches of

multiple contracts against multiple Defendants within a single count, and it does not identify which

provisions McDonough allegedly breached.  To state a claim for breach of contract under New

York law, Marsh must allege "(1) the existence of an agreement; (2) adequate performance of the

contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages."  *Warren v.

John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 624 (S.D.N.Y. 2013) (quoting *Swan Media Grp.,

Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012)); *see also* Fed. R. Civ. P. 8(a).  Marsh

must, "at a minimum, allege the terms of the contract, each element of the alleged breach and the

resultant damages in a plain and simple fashion."  *Warren*, 952 F. Supp. 2d at 624 (internal

quotations omitted).  New York courts require plaintiffs to "plead the provisions of the contract

upon which the claim is based—in other words, a complaint in a breach of contract action must

set forth the terms of the agreement upon which liability is predicated."  *Marans v. Intrinsiq

Specialty Solutions, Inc.*, 2018 WL 4759772, at *4 (S.D.N.Y. Sept. 30, 2018) (internal quotations

omitted).

---

[8] In deciding a motion to dismiss, the Court may consider documents "expressly incorporated by reference" in the complaint, as well as other documents that are nevertheless "integral" to the complaint.  *Ruderman v. Liberty Mut. Grp., Inc.*, No. 21-817, 2022 WL 244086, at *1 (2d Cir. Jan. 27, 2022).

Here, Marsh fails to comply with Rule 8(a) because it attempts to assert breaches of multiple contracts against two different Defendants within a single count. "Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint against multiple defendants 'indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants.'" *Yucyco, Ltd. v. Republic of Slovn.*, 984 F. Supp. 209, 219 (S.D.N.Y. 1997) (quoting *Matthews v. Kilroe*, 170 F. Supp. 416, 417 (S.D.N.Y. 1959)).  Courts have dismissed breach of contract claims for "lumping together" multiple defendants in a breach of contract action. *See, e.g.*, *Swiss Reinsurance Am. Corp. v. Access Gen. Agency, Inc.*, 571 F. Supp. 2d 882, 885-86 (N.D. Ill. 2008) (dismissing amended complaint that "[i]n just two substantive counts . . . allege[d] breaches of four different agreements . . . by three ostensibly separate corporate entities" and holding that "the amended complaint fails to state clearly which entity it seeks to hold responsible for which alleged breach.").

Marsh also fails to comply with Rule 8(a) because it attempts to assert breaches of seven different contracts or "terms of employment" in a single count: (1) McDonough's 2016 Confidentiality Agreement; (2) Hall's 2016 Confidentiality Agreement; (3) McDonough's 2016 Non-Solicitation Agreement; (4) Hall's 2016 Non-Solicitation Agreement; (5) McDonough's 2024 Grant Agreement; (6) a variety of McDonough's "Supplemental Terms and Conditions of Employment"; and (7) a variety of Hall's "Supplemental Terms and Conditions of Employment." (AC ¶¶ 163-66 & Exs. A, B, D, E, F.)  This is improper under Rule 8(a), and courts have dismissed claims for similar pleading defects.  *See Filippova v. Mogilevsky,* 2018 WL 7825449, at *3 (S.D. Fla. Aug. 29, 2018) (dismissing "monstrosity of a pleading" where the court was "at a loss to make sense of th[e] complaint because it fails to separate each cause of action into separate counts" and holding that "[i]f there are multiple contracts that were breached, the complaint ought to plead

each breach of contract separately and identify with whom the contract was entered, the relevant

terms and what terms were breached"); *see also Zoom Imaging Solutions, Inc. v. Roe*, 2020 WL

489238, at *1 (E.D. Cal. Jan. 30, 2020) (describing dismissal of complaint where plaintiff included

violations of three agreements in one breach of contract claim and was instructed by the court to

allege a separate count for each breach of contract claim).  While Marsh quotes multiple provisions

found in these agreements, it does not identify the specific provisions that McDonough or Hall

allegedly breached.  Instead, in a ***single*** cause of action, Marsh alleges that McDonough's and

Hall's actions breached seven separate agreements, without citing any specific terms.  (AC ¶¶ 171-

77.)

Courts in this District have previously dismissed other breach of contract claims for this

same reason.  For example, in *Credit Sights, Inc. v. Ciasullo*, the counterclaim plaintiff failed to

state a claim for breach of contract because he did not "identify specifically breached contract

terms" in his counterclaims.  2008 WL 4185737, at *11 (S.D.N.Y. Sept. 5, 2008).  The Court

rejected the counterclaim plaintiff's argument that he "provided Counterclaim Defendants with

adequate notice of the claimed breaches by incorporating various contractual provisions in the

pleading," because he nonetheless "failed to set forth the specific contractual provisions

Counterclaim Defendants allegedly breached."  *Id.* at *10; *see also Swan Media Grp., Inc.*, 841 F.

Supp. 2d at 807 (granting dismissal where complaint failed to "specify which clause of the

Agreement Defendant is alleged to have breached"); *Marans*, 2018 WL 4759772, at *4 (same);

*CustomGuide v. Career Builder, LLC*, 813 F. Supp. 2d 990, 1004 (N.D. Ill. 2011) (dismissing

claim that incorporated preceding paragraphs of complaint by reference because "the use of such

'shotgun' pleadings in this case does not provide adequate notice" as to what the claim was based upon).  For the same reasons, dismissal is also compelled here.[9]

## II.    MARSH'S BREACH OF FIDUCIARY DUTY CLAIMS AGAINST MCDONOUGH AND HALL ARE DUPLICATIVE OF ITS BREACH OF CONTRACT CLAIMS AND MUST BE DISMISSED AS A MATTER OF LAW (COUNT II).

The Court should dismiss Marsh's breach of fiduciary duty claim because it is based on the same underlying allegations supporting Marsh's breach of contract claim.  *See Cartiga, LLC v. Aquino*, 2025 WL 388804, at *11 (S.D.N.Y. Feb. 4, 2025) (dismissing breach of fiduciary duty claim that was based on same "exact conduct" as breach of contract claim); *see also Oliver Wyman, Inc. v. Adam*, 2016 WL 5339549, at *10 (S.D.N.Y. Sept. 22, 2016) (allegations that employees breached their fiduciary duties by "encouraging each other to resign" were duplicative of allegations that same employees breached their contracts).

As to McDonough, the Amended Complaint alleges that McDonough breached his fiduciary duties to Marsh by "soliciting Marsh clients to leave Marsh and to move their business to Aon" (AC ¶ 185), "solicit[ing] Marsh's employees away from Marsh for the benefit of himself or competitors" (AC ¶ 186), and "disclosing Marsh's confidential information to Aon" (AC ¶ 189). These are the very same allegations underlying Marsh's breach of contract claim.  (*See* AC ¶¶ 173, 175 (alleging solicitation of Marsh's clients and Marsh's employees); AC ¶¶ 171, 176 (alleging improper disclosure of Marsh's confidential information).)[10]  There are no factual allegations

---

[9] If Marsh elects or is given leave to file a Second Amended Complaint, Defendants reserve the right to again seek dismissal of any breach of contract claim or other common law or statutory claim pursuant to Rule 12(b)(6).

[10] While Marsh seeks punitive damages in connection with its fiduciary duty claim (AC ¶ 191), Marsh cannot recover punitive damages as a matter of law.  Marsh does not—and cannot truthfully—allege that McDonough's conduct was "aimed at the public generally," as required to obtain punitive damages.  *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 448-49 (E.D.N.Y. 2011).  Marsh is precluded from recovering punitive damages on any of its tort claims.

supporting Marsh's breach of fiduciary duty claim that are different from the allegations giving rise to the breach of contract claim.

Marsh's inclusion of the phrase "to the extent there is no overlapping contractual obligation" (AC ¶¶ 184, 186, 188) is a futile attempt to plead around the well-accepted rule that a tort claim cannot stand if it is duplicative of a breach of contract claim. Marsh *does* allege a duplicative overlapping contractual obligation (and breach) for each breach of fiduciary duty alleged. Accordingly, Marsh's breach of fiduciary duty claim must be dismissed as duplicative.[11]

Similarly, the Court should dismiss Marsh's breach of fiduciary duty claim against Hall for the same reason—it is duplicative of Marsh's breach of contract claim. *See Cartiga*, 2025 WL 388804, at *11; *see also Oliver Wyman*, 2016 WL 5339549, at *10. The Amended Complaint alleges that Hall breached his fiduciary duty to Marsh by "improperly appropriating Marsh's confidential information and trade secrets." (AC ¶ 190.) This is the exact allegation underlying Marsh's claim that Hall breached his Confidentiality Agreement. (*See* AC ¶ 172.) Marsh does not support its breach of fiduciary duty claim against Hall with any facts apart from the same facts used to support its breach of contract claim.[12] Accordingly, the breach of fiduciary duty claim against Hall must be dismissed as duplicative of the breach of contract claim.

---

[11] Even if Marsh is granted leave to amend this claim, Marsh's allegations also fall short of meeting the high bar for alleging a breach of fiduciary duty. *See, e.g.*, *TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 204 (E.D.N.Y. 2024) (holding that an employee is liable for a breach of fiduciary duty owed to its employer where he or she "commits an unfair, fraudulent, or wrongful act" and that "merely helping to create [a] . . . business plan for [a competing business] does not in itself amount to a breach of the duty of loyalty.") (internal quotations and citations omitted). Defendants reserve the right to seek dismissal of any newly alleged claim for breach of fiduciary duty.

[12] Marsh may not plead around the well-accepted rule that a tort claim cannot stand if it is duplicative of a breach of contract claim by including the phrase "to the extent there is no overlapping contractual obligation." (AC ¶ 188.) Again, Marsh's allegations fall short of meeting the high bar for alleging a breach of fiduciary duty. *See, e.g.*, *TileBar*, 723 F. Supp. 3d at 204.

III.    **THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST AON FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (COUNT VII).**

    A.    **Marsh Fails to Allege an Underlying Breach of Fiduciary Duty by McDonough or Hall.**

Marsh's aiding and abetting claim fails because Marsh fails to plead facts supporting at least three elements of the claim. "A prerequisite to an aiding and abetting claim . . . is an adequately pled claim for the underlying breach of fiduciary duty." *Watts v. Jackson Hewitt Tax Serv. Inc.*, 675 F. Supp. 2d 274, 280 (E.D.N.Y. 2009); *see also Oliver Wyman*, 2016 WL 5339549, at *10 (dismissal of duplicative claim for breach of fiduciary duty also mandated dismissal of claim for aiding and abetting breach of fiduciary duty); *Kassover v. Prism Venture Partners, LLC*, 862 N.Y.S.2d 493, 498 (App. Div. 2008) (same). A claim for breach of fiduciary duty requires "(1) the existence of a fiduciary duty owed by the defendant; (2) a breach of that duty; and (3) resulting damages." *Garvey v. Face of Beauty, LLC*, 2022 U.S. Dist. LEXIS 171182, at *10 (S.D.N.Y. Sep. 21, 2022) (internal quotations omitted).

Here, as discussed in Section III, *supra*, Marsh does not adequately plead that either McDonough or Hall breached any fiduciary duty to Marsh independent of Marsh's breach of contract claim. Because Marsh fails to state a claim against McDonough or Hall for breach of fiduciary duty, its corresponding aiding and abetting claim against Aon also fails.

    B.    **Marsh's Claim for Aiding and Abetting McDonough's Alleged Breach of Fiduciary Duty Fails.**

        1.    **Marsh Fails to Allege Aon's Substantial Assistance in McDonough's Alleged Breaches.**

Marsh's aiding and abetting claim fails for at least two other independent reasons—it fails to allege (1) that Aon provided substantial assistance to McDonough in breaching his fiduciary duties, and (2) that Aon had knowledge of McDonough's alleged breaches. *See Watts*, 675 F. Supp. 2d, at 281; *see also Plymouth Cap., LLC v. Montage Fin. Grp., Inc.*, 219 N.Y.S.3d 372, 376

16

(App. Div. 2024). Not only does Marsh fail to allege these elements, but it collapses these two elements into a single conclusory allegation: "Aon knowingly participated in McDonough's breaches of his duty of loyalty by encouraging and substantially assisting McDonough's breaches of his duty of loyalty." (AC ¶ 237.)

To plead substantial assistance, Marsh must allege that Aon "affirmatively assist[ed], help[ed] conceal or fail[ed] to act when required to do so, thereby enabling [McDonough's] breach to occur." *Watts*, 675 F. Supp. 2d at 281 (internal citation omitted). Marsh fails to do so. The Amended Complaint merely alleges that Aon hired McDonough and the other Departing Employees. The Amended Complaint further alleges in a conclusory manner, and solely ***upon information and belief***, that Aon directed McDonough to solicit other Marsh employees to join Aon. (AC ¶¶ 117-18, 134.) The Amended Complaint further alleges, again, ***all upon information and belief***, that Aon directed McDonough to solicit—while McDonough was still employed by Marsh—***one*** unidentified Marsh client who ***did not actually leave*** Marsh (AC ¶ 137), and to solicit ***one*** prospective client of Marsh by misappropriating unspecified confidential information belonging to Marsh (AC ¶ 145). The only allegation not made on information and belief is that McDonough "***intended*** to participate on a call involving a Marsh client" on behalf of Aon (AC ¶ 141) (emphasis added). Again, Marsh does not allege that McDonough actually participated on the call or that the unidentified client actually left Marsh for Aon.

Courts have dismissed aiding and abetting claims premised on similar allegations. For example, in *Q3 Resources, Inc. v. Navigant Consulting, Inc.*, plaintiff alleged that defendant "knowingly participated and assisted Haywood in breaching his fiduciary duties to [Plaintiff] negotiating with Makin and Haywood even as [Defendant] was ostensibly negotiating the purchase of [Plaintiff]; hiring Haywood on the condition and understanding that he would not honor his

fiduciary duties and actively breach the protective provisions in his Haywood Agreement; encouraging, instigating, and supporting Haywood's other breaches of fiduciary duty."  2019 U.S. Dist. LEXIS 108835, at *6 (S.D.N.Y. June 27, 2019).  The court dismissed the aiding and abetting claim, determining that, other than the plaintiff's "speculation, there are no factual allegations that Haywood or any of the other [Plaintiff] executives solicited or encouraged other [Plaintiff] employees or clients to go to [Defendant]."  *Id.* at *13; *see also Watts*, 675 F. Supp. 2d at 281 (defendants "set forth no sworn allegations of fact, however, indicating ***how*** plaintiffs 'substantially assisted' the unnamed employees in obtaining the documents") (emphasis added).

Similarly, Marsh offers nothing more than conclusory allegations and speculation: "Aon knowingly participated in McDonough's breaches of his duty of loyalty by encouraging and substantially assisting McDonough's breaches of his duty of loyalty" (AC ¶ 237); "The suspicious timing of these and other client moves—occurring when news of the resignations had barely begun to circulate in the broader market—strongly suggest they were spurred by improper direct and indirect solicitation of the clients by McDonough and other Departing Employees with the aid and encouragement of McDonough and Aon." (AC ¶ 154.)  These allegations fail to state a claim.

Marsh also alleges that, "on information and belief, McDonough shared [with Aon] confidential employment and compensation information about the targeted Marsh employees." (AC ¶ 117.)  But the "mere inaction" of allegedly receiving unspecified Marsh Confidential Information would constitute substantial assistance "only if [Aon] owes a fiduciary duty directly to [Marsh]," which it does not.  *Watts*, 675 F. Supp. 2d at 281.  Marsh does not, and cannot, allege that Aon provided substantial assistance to McDonough in his alleged breaches.

## 2. Marsh Fails to Allege that Aon Had Actual Knowledge of McDonough's Alleged Breaches.

A claim for aiding and abetting "does not encompass a 'should have known' standard." *Lindberg v. Dow Jones & Co., Inc.*, 2021 WL 3605621, at *14 (S.D.N.Y. Aug. 11, 2021) (internal citation omitted). "Actual knowledge, not mere notice or unreasonable unawareness, is therefore essential." *Id.*; *see also Krys v. Butt*, 486 F. App'x 153, 157 (2d Cir. 2012) ("Constructive knowledge of the breach of fiduciary duty by another is legally insufficient to impose aiding and abetting liability."). Actual knowledge "cannot be alleged 'on information and belief' or 'according to standard industry practice.'" *Lindberg*, 2021 WL 3605621, at *14 (internal citation omitted). Marsh's allegations, discussed *supra*, Section III.B, are improperly pled on information and belief.

The Amended Complaint contains no factual allegations suggesting that Aon knew about McDonough's alleged breaches. Marsh merely alleges that "Aon knowingly participated in McDonough's breaches . . . ." (AC ¶ 237.) Even if Aon had access to McDonough's employment agreement(s)—which the Amended Complaint does not [directly] allege—that alone "is not enough to show [Aon] actually knew about and procured a breach of [McDonough's] fiduciary obligations." *Q3 Res., Inc.*, 2019 U.S. Dist. LEXIS 108835, at *13-14 (access to former employee's employment agreement and plaintiff's ownership information were insufficient to state aiding and abetting claim).

## C. Marsh's Claim Against Aon for Aiding and Abetting Hall's Alleged Breach of Fiduciary Duty Fails.

### 1. Marsh Fails to Allege Aon's Substantial Assistance in Hall's Alleged Breaches.

With regard to the claim that Aon aided and abetted in Hall's alleged breach of fiduciary duties, Marsh's claim similarly fails because the Amended Complaint alleges no facts showing

19

(1) how Aon substantially assisted Hall in breaching his fiduciary duty by "accessing and/or misusing Marsh's confidential information" (AC ¶ 236), or (2) that Aon had actual knowledge of Hall's alleged breach. Marsh merely states that "Aon knowingly participated in McDonough and Hall's breaches of their duty of loyalty by encouraging and substantially assisting McDonough and Hall's breaches of their duty of loyalty." (AC ¶ 237.) This conclusory allegation is not supported by any factual information showing *how* Aon "affirmatively assist[ed], help[ed] conceal or fail[ed] to act when required to do, thereby enabling [Hall's] breach to occur." *Watts*, 675 F. Supp. 2d at 281 (internal citation omitted).

The only specific information Hall is alleged to have accessed are three documents related to "Client M." (*See* AC ¶¶ 147-152) The allegations that connect Hall's alleged access of Client M's files to Aon are that (1) Hall "misappropriated and misused Marsh's confidential information . . . for the benefit of Aon"[13] (AC ¶ 5); (2) "shortly after Hall and the other Departing Employees left Marsh, on May 2, 2025, Client M sent notice to Marsh stating that it would be terminating the parties' agreement and moving all of its surety business from Marsh to Aon" (AC ¶ 150); and (3) "[t]he solicitation of Client M was made possible by Hall's improper access and usurpation of Marsh's confidential information and trade secrets." (AC ¶ 152.) As discussed further in Section VI, *infra*, all of these allegations are circumstantial and speculative. Even if Hall did misuse Marsh's confidential information (he did not) and Aon benefited from that misuse, such an allegation still would not suffice to show that Aon ***assisted*** Hall in any way.[14] Accordingly,

---

[13] Marsh also claims that McDonough and Hall "solicited, attempted to solicit, or directed others to solicit" Marsh clients to move their business to Aon, "at Aon's direction." (AC ¶¶ 133, 134.) However, Marsh's breach of fiduciary claim against Hall is only based on Hall's alleged misuse of Marsh's confidential information. (*See* AC ¶ 190.)

[14] To the extent Marsh is claiming that Aon's alleged passive receipt of unspecified Marsh Confidential Information constitutes substantial assistance, that would be true "only if [Aon] owes a fiduciary duty directly to [Marsh]," which it does not. *Watts*, 675 F. Supp. 2d at 281.

Marsh's aiding and abetting claim must be dismissed for failure to plead the second element of the claim.

### 2. Marsh Fails to Allege that Aon Had Actual Knowledge of Hall's Alleged Breaches.

Finally, as with the aiding and abetting claim with respect to McDonough's alleged breaches, Marsh does not provide any facts showing that Aon knew about Hall's alleged improper access or misuse of Client M's files. Marsh assumes—and asks the Court to infer—that Aon won Client M's business not because of fair competition, but because Hall improperly accessed and misused Marsh's confidential information related to Client M. (*See* AC ¶ 152.) However, that is patently insufficient to show knowledge on the part of Aon. *See Krys*, 486 F. App'x at 157. Thus, the conclusory allegation that Aon "knowingly participated" in Hall's alleged breach of his fiduciary duty lacks merit. Accordingly, Marsh fails to adequately plead all three elements of an aiding and abetting claim and it should be dismissed.

## IV. THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST MCDONOUGH AND HALL FOR "BREACH" OF THE FAITHLESS SERVANT DOCTRINE (COUNT IV).

Marsh asserts claims against McDonough and Hall under the "faithless servant" doctrine. To establish this claim, Marsh must plead facts showing a "persistent pattern" of misconduct during employment. *JAPNA, Inc. v. SELFX Innovations Inc.*, 2024 WL 1250269, at *9 (S.D.N.Y. Mar. 22, 2024). Under New York law, there are two standards for determining whether an employee's conduct is encompassed by the faithless servant doctrine: (1) "misconduct and unfaithfulness substantially violat[ing] the contract of service which requires a persistent pattern," also known as the *Turner* standard, and (2) "misconduct by an employee that rises to the level of a breach of a duty of loyalty or good faith," i.e., a breach of fiduciary duty, also known as the *Murray* standard. *JAPNA*, 2024 WL 1250269, at *9; *see also Yukos Cap. S.A.R.L. v. Feldman*,

977 F.3d 216, 237-38 (2d Cir. 2020) (discussing the *Turner* and *Murray* standards). Under either standard, Count IV must be dismissed because Marsh cannot allege a "persistent pattern" of misconduct by McDonough or Hall, and the faithless servant claims are duplicative of Marsh's breach of fiduciary duty claims.

### A. Marsh Fails to Meet the High Bar for Pleading a "Persistent Pattern" of Misconduct During McDonough's and Hall's Employment.

The faithless servant doctrine is limited to extreme misconduct—it requires a "persistent pattern" of misconduct during employment. *JAPNA*, 2024 WL 1250269, at *9. A disloyal employee forfeits promised compensation only when the "misconduct and unfaithfulness . . . substantially violates the contract of service." *Feldman*, 977 F.3d at 240 (quoting *Turner v. Konwenhoven*, 100 N.Y. 115, 120 (1885)). In *Feldman*, the Second Circuit affirmed the district court's jury instruction regarding the faithless servant doctrine after determining that the defendant's embezzlement of $2.6 million "was not necessarily 'substantial' as a matter of law." 977 F.3d at 240.

Here, the alleged misconduct is isolated to only a few weeks when McDonough and Hall were preparing to leave Marsh, which brief time period does not amount to a "persistent pattern." (*See* AC ¶ 115 ("Defendants began their efforts to target select Marsh employees . . . at least as early as February 2025."); AC ¶¶ 36, 37 (both McDonough and Hall resigned on March 10, 2025).) This court has previously determined that allegations that defendants set up a competing business during a similar span of time failed to allege the required "pattern." *See MThree Corp. Consulting Ltd. v. Wascak*, 2022 WL 15524842, at *5 (S.D.N.Y. Oct. 27, 2022) (dismissing complaint because it contained "no allegations of a 'pattern of disloyalty,' let alone a 'persistent pattern,'" where conduct complained of occurred during a six-week period). Similarly, here, Marsh's allegations fall short of any "persistent pattern" of misconduct.

**B.      Marsh's Faithless Servant Claims Are Duplicative of Its Breach of Fiduciary Duty Claims and Must Be Dismissed as a Matter of Law.**

As an alternative to the "persistent pattern" theory, the faithless servant doctrine provides the basis "for a claim for breach of duty of loyalty where the employee has acted directly against the employer's interests—as in embezzlement, improperly competing with the current employer, or usurping business opportunities." *Beach v. Touradji Cap. Mgmt., LP*, 203 N.Y.S.3d 324, 325 (App. Div. 2024) (affirming dismissal of affirmative defense based on faithless servant doctrine); *see also Feldman*, 977 F.3d at 237 (discussing *Murray v. Beard*, 102 N.Y. 505, 508 (1886)). Many courts "do not [] distinguish" between claims based on the faithless servant doctrine and claims for breach of fiduciary duty, and "some even note that they are essentially the same." *JAPNA*, 2024 WL 1250269, at *9 (permitting faithless servant claim to proceed where it was not duplicative of breach of fiduciary duty claim); *see also Garvey*, 2022 U.S. Dist. LEXIS 171182, at *10 ("Under New York law, an employee owes a duty of good faith and loyalty to his employer. Breach of that duty of loyalty is actionable as a breach of fiduciary duty.") (internal citations omitted).

Where, as here, the Amended Complaint's "factual allegations in support of both claims are coterminous, and both rest on the charge of disloyalty," courts will dismiss the duplicative claim. *Ebel v. G/O Media, Inc.*, 2021 WL 2037867, at *7 (S.D.N.Y. May 21, 2021) (dismissing duty of care claim as duplicative of "breach of fiduciary duty of loyalty/faithless servant" claim). The court in *Ebel*, in dismissing the duplicative claim, determined that the former employer defendants did not allege "any specific facts," but rather "simply assert that [the former employee] breached her fiduciary duty of care 'by disregarding and acting disloyally and directly against the interests of the corporation.'" *Id.* The court had already determined, in the context of the "breach of fiduciary duty of loyalty/faithless servant" claim, that the former employers had failed to plausibly allege that the former employee acted disloyally or against their interests. In light of the

23

identical allegations underpinning both claims, "the failure of one, in this case, entails the failure of the other."  *Id.*  So too, here.

With respect to McDonough, both of Marsh's faithless servant and breach of fiduciary duty claims are based on the same allegations relating to McDonough's duty of loyalty, including the alleged violation of McDonough's client and employee non-solicitation covenants.  In support of its faithless servant claim, Marsh alleges that McDonough breached his duty of loyalty to Marsh by "soliciting clients to leave Marsh and to move their business to Aon" (AC ¶ 204), and by "soliciting Marsh's employees to leave employment with March [*sic*] and accept employment with Aon" (AC ¶ 207).  These are the exact same allegations underlying Marsh's breach of fiduciary duty claim.[15]  (*See* AC ¶¶ 185, 187.)

With respect to Hall, Marsh alleges that Hall breached fiduciary duties to Marsh by "improperly appropriating Marsh's confidential information and trade secrets—made available to him as a fiduciary and only because of his employment—for the benefit of himself or competitors." (AC ¶ 190.)  These are the same allegations underlying Marsh's breach of fiduciary duty claim. (*See* AC ¶ 205.)

While the two sets of claims seek different damages—the breach of fiduciary duty claims seek "lost revenue" (AC ¶ 191), and the faithless servant claims seek disgorgement of McDonough's and Hall's compensation (AC ¶ 210)—both claims rest on the same allegations as to McDonough's alleged breach of his fiduciary duty of loyalty.  The available remedy for breach

---

[15] Similarly, Marsh's faithless servant claims are also duplicative of its breach of contract claims. *Cf. Worldcare Int'l, Inc. v. Kay*, 989 N.Y.S.2d 495, 497 (App. Div. 2014) (faithless servant claim was not duplicative only because there was a "bona fide dispute as to the validity and enforceability" of the employment manual that was the subject of the breach of contract claim). Marsh's attempt to plead around this defect by adding the caveat "to the extent there was no overlapping contractual obligation" is to no avail.  (AC ¶¶ 184, 188, 203.)

of fiduciary duty is *either* lost profits *or* disgorgement, but *not both*. *See, e.g.*, *Shamrock Power Sales, LLC v. Scherer*, 2016 WL 7647597, at *8 (S.D.N.Y. Dec. 8, 2016), *report and recommendation adopted*, 2017 WL 57855 (S.D.N.Y. Jan. 4, 2017). Accordingly, some courts treat the compensation paid by the employer to the faithless servant as satisfying the "damages" element of claim for breach of fiduciary duty, where the employer cannot prove the required element of damages in the form of lost profits. *See Feldman*, 977 F.3d at 241. Marsh is not entitled to a double recovery.

## V.   THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST HALL AND AON FOR TRADE SECRET MISAPPROPRIATION UNDER THE DTSA (COUNT IX).

### A.   Marsh Has Failed to Adequately Allege the Existence of Any Trade Secret.

The DTSA defines a "trade secret" to include "all forms and types of financial, business, scientific, technical, economic, or engineering information" so long as "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from" its secrecy. 18 U.S.C. § 1839(3).

In order to support an inference that such information qualifies as a trade secret, a complaint must contain facts "sufficient to identify the information for which protection is claimed," including "its nature, value, and measures taken to safeguard it." *Intrepid Fin. Partners, LLC v. Fernandez*, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020) (dismissing DTSA claim based on failure to allege existence of a trade secret). A plaintiff "must do more than simply list general categories of information," otherwise "any claimant could survive a motion to dismiss a trade secrets claim with conclusory statements that simply restate the elements of a trade secret." *Elsevier Inc. v. Dr. Evidence, LLC*, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018). Notably, trade secrets and confidential information "are not one in the same—trade secrets are a subset of confidential information," and the standard to classify a trade secret is "far greater." *Id.* at *6, 14.

25

Marsh identifies only three documents in connection with its DTSA claim: (1) "Client M's Bond Collateral Summary," (2) Client M's "Client Services Agreement," and (3) "Marsh's response to Client M's request for proposal." (AC ¶ 151.) The allegations surrounding these documents repeatedly and impermissibly conflate "confidential information and trade secrets" (AC ¶¶ 147, 148, 152) and offer no details justifying why the information should be accorded trade secret status (i.e., the information's value, the amount of effort or money spent to develop the information, and the ease with which the information could be acquired or developed by others). This alone supports dismissal of Count IX. *See Elsevier*, 2018 WL 557906, at *6; *Intrepid Fin. Partners*, 2020 WL 7774478, at *4.

In addition, as to Client M's Bond Collateral Summary, Marsh alleges that it is a "compilation of Client M's financial data," including "bank names, bank accounts, affiliated assets, and statement balances." (AC ¶ 151.) Taking Marsh's description of Client M's document at face value, the alleged information at issue is **Client M's** confidential information and financial data, not Marsh's. That the alleged trade secret does not belong to Marsh also requires dismissal of Marsh's DTSA claim with respect to this document.

As to Client M's "Client Services Agreement," Marsh alleges that it contains "compensation information, competitive pricing, and terms and conditions of Client M's contracts." (AC ¶ 151.) As to Marsh's response to Client M's request for proposal, Marsh alleges that it contains "client-specific information and preferences identified and developed by Marsh and not readily ascertainable by the public." (*Id.*) However, here, Marsh does not plead facts to support how these particular documents could be protected under the DTSA. For example, there are no allegations regarding when these documents were created, leaving open the possibility that the information is stale and of little value. Similarly, there are no allegations demonstrating **how**

Marsh "developed" this information such that it cannot be readily ascertainable by the public or is otherwise subject to trade secret protection. *See MedQuest Ltd. v. Rosa*, 2023 WL 2575051, at *4 (S.D.N.Y. Mar. 20, 2023); *see also Intrepid Fin. Partners*, 2020 WL 7774478, at *4 ("Intrepid does not plead any specific facts demonstrating that Intrepid has such unique customer preference information or has specialized knowledge of customers' operations or needs that is organized or used in a way that is unique to Intrepid.").

In Count IX, Marsh merely lists categories of information without explaining how any specific information derives independent economic value. Marsh alleges no fewer than **forty** broad categories, including unspecified "financial and business information" and "client information," that purportedly constitute "trade secrets." (AC ¶ 247.) Marsh then recites the elements alleging the existence of a trade secret. (AC ¶¶ 248-253.) These conclusory statements are insufficient to withstand a motion to dismiss. *See Intrepid Fin. Partners*, 2020 WL 7774478, at *4 (dismissing DTSA claim where plaintiff merely "reference[d] categories of information concerning its clients and ordinary business operations," and made conclusory allegations that information was not readily available and provided economic value).[16]

Accordingly, Marsh's claim against Hall and Aon for violation of the DTSA must be dismissed for failure to adequately identify any protectable trade secret.

---

[16] *See also Aira Jewels, LLC v. Mondrian Collection, LLC*, 2024 WL 1255798, at *4 (S.D.N.Y. Mar. 25, 2024) (dismissing DTSA claim because plaintiff described "little more than general categories of information and data," including "customer lists, client contacts, supplier contacts, sales, marketing and business strategies," and did not provide any details regarding "how its strategies and plans function"); *Elsevier*, 2018 WL 557906, at *4, *6 (dismissing DTSA claim where plaintiff alleged nine general categories of information and also failed to "elucidate how those 'methods,' 'processes,' and 'interpretations' [claimed to be trade secrets] function").

**B.    Marsh Fails to Allege Misappropriation of Any Trade Secret by Hall.**

In addition to failing to establish the existence of a trade secret, Marsh's DTSA claim falls short because Marsh does not allege any misappropriation by Hall.   The DTSA defines "misappropriation" to mean "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent."   18 U.S.C. § 1839(5).   "Improper means" includes "theft, bribery misrepresentation, [and] breach or inducement of a breach of a duty to maintain secrecy."   *Id.*   The DTSA contemplates "three theories of liability: (1) acquisition, (2) disclosure, or (3) use."   *Kumaran v. Nat'l Futures Ass'n, LLC*, 2022 WL 1805936, at *14 (S.D.N.Y. 2022).   Marsh fails to allege facts supporting any of these theories of misappropriation.

Here, Marsh offers only vague, circumstantial allegations that Hall misappropriated its alleged trade secrets.   The Amended Complaint alleges that, "in the week leading up to his resignation, Hall repeatedly accessed sensitive information—including Marsh trade secrets— related to a Marsh client.   Then, that same client announced shortly after Hall and the other Departing Employees' resignations, that it would be moving its surety business from Marsh to Aon."   (AC ¶ 7.)   Marsh then deduces that the "solicitation of Client M was made possible by Hall's improper access and usurpation of Marsh's confidential information and trade secrets."   (AC ¶¶ 151-52.)   This inference is illogical for at least two reasons.

First, Marsh's allegation of misappropriation is based solely on information and belief. Marsh merely theorizes, and asks this Court to ***infer***, that Hall must have misappropriated Client M's information simply because Client M moved its business from Marsh to Aon.   (*See* AC ¶ 149 (alleging "on information and belief" that "Hall deliberately exploited this information by using it to divert Client M's business").)   However, mere access to purported trade secrets does not suffice to plausibly allege a DTSA claim where there are no details showing how the defendant allegedly

used or disclosed the trade secret. *See MedQuest*, 2023 WL 2575051, at *3 (plaintiff must allege an "unconsented disclosure or use of a trade secret").

*MedQuest* is instructive on this point. In that case, the plaintiff claimed that two of its former employees misappropriated an expert database and lawyer list to which only they were provided password-protected access. *Id.* at *1. The court held that the complaint failed to adequately allege improper "use of a trade secret" because the plaintiff "did not directly allege that [Defendants] *used* the lawyer list or the expert database list in their new business. Instead, the Amended Complaint asks the Court to *infer* that they did so" because the defendants referred clients to experts on the plaintiff's list, and the plaintiff's Expert Service business had diminished. *Id.* at *6-7 (emphasis added). So too, here. Thus, the DTSA claim against Hall must be dismissed.

Second, Marsh fails to show how Hall acquired, used, or disclosed Marsh's alleged trade secrets through *improper means*. Marsh alleges: "[I]n the weeks[17] leading up to his resignation, Hall used his company-issued laptop to access confidential information and trade secrets related to a specific Marsh client ('Client M'), including financial and payment data, as well as client-specific information and preferences that are not accessible to the public." (AC ¶ 147.) In the very next sentence, Marsh admits that "Hall was the business lead for Client M while he was employed by Marsh." (*Id.*) Alleging that Hall accessed client information *while he still serviced that client as an employee of Marsh* does not equate to alleging improper means, as there are other more plausible explanations for Hall's access. *See AD Lightning Inc. v. Clean.io, Inc.*, 2020 U.S.

---

[17] Marsh's allegations regarding when Hall accessed Client M's confidential information are inconsistently stated throughout the Amended Complaint. For example, Marsh claims Hall accessed the information "in the week leading up to his resignation" (AC ¶ 7), "in the weeks leading up to his resignation" (AC ¶ 147), and in Paragraph 151, "in the days just preceding his resignation." (AC ¶ 151.)

Dist. LEXIS 141311, at *9 (S.D.N.Y. Aug. 7, 2020) (dismissing DTSA claim for failure to allege improper means where plaintiff alleged merely that employees had access to information).

Accordingly, Marsh's DTSA claim against Hall must be dismissed for failure to plausibly allege misappropriation.

### C.    Marsh Fails to Allege Misappropriation by Aon.

With regard to misappropriation, Marsh's sole allegation of misappropriation by Aon is the conclusory (and jointly pled) allegation that "Hall and Aon misappropriated Marsh's trade secrets and improperly used Marsh's trade secrets for the benefit of Aon and at the expense of Marsh, without Marsh's consent."  (AC ¶ 259.)  This allegation is even weaker than Marsh's allegation relating to Hall's "access" of specific documents, as Marsh cannot even allege that Aon specifically acquired *any* specific information belonging to Marsh, let alone the purported "trade secrets" alleged in Paragraph 151.

While Marsh is far from clear regarding what Aon allegedly misappropriated, to the extent Marsh's claim against Aon is based on Hall's alleged *access* of Client M's information *while he was servicing that client for Marsh*, Marsh does not explain that Aon even acquired this information or if it did, how Aon used it.  Even if Marsh were capable of alleging a DTSA claim against Hall—it is not—Aon cannot be "brought into a trade secret misappropriation case simply by offering employment to an employee who has been disloyal to his or her former employer." *See R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 207 (W.D.N.Y. 2020) (dismissing DTSA claim against new employer who merely hired former employees that had misappropriated plaintiff's trade secrets).  Aon's merely hiring Hall, after which Client M moved from Marsh to Aon, is not sufficient to impose liability on Aon under the DTSA. *See id*.

Accordingly, Marsh's DTSA claim against Aon must be dismissed for failure to plausibly allege misappropriation.

## VI.    THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST AON AND MCDONOUGH FOR TORTIOUS INTERFERENCE WITH CONTRACT (COUNT VI).

To adequately plead tortious interference with contract, Marsh must plausibly allege "(1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach, and (4) damages." *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 474 (S.D.N.Y. 2013) (quoting *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 285 (2d Cir. 2006)). Marsh fails to do so in at least two independent ways.

### A.    In a Single Count, Marsh Brings Claims Against Two Different Defendants for Alleged Interference with Twenty Different Contracts, While Failing to Allege Sufficient Facts About Those Contracts

The Court should dismiss this claim because the Amended Complaint lacks any specific facts about the alleged contracts between Marsh and the Departing Employees other than McDonough[18] and Hall. The Amended Complaint cannot satisfy Rule 8(a), as it does not even identify the specific contracts and terms that were breached, let alone how each of the Departing Employees supposedly breached his or her contract(s). Marsh instead offers only a formulaic restatement of the element itself with no alleged facts. *See* AC ¶ 3 (alleging that "[e]ach of the Departing Employees . . . owe contractual duties to Marsh"); AC ¶ 218 ("Marsh had valid and enforceable agreement [sic] with the Departing Employees.").

Courts require plaintiffs at the pleading stage to do more because "without facts regarding the terms of the contracts or the specific parties to the contracts, it cannot be determined if a

---

[18] As a matter of law, McDonough cannot tortiously interfere with his own contract. *Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 640 (S.D.N.Y. 2018), *aff'd*, 751 F. App'x 69, 74 (2d Cir. 2018). It is "well settled" that a claim for tortious interference "lies only against a stranger to the contract." *Casanas v. Casanas*, 187 N.Y.S.3d 207, 209 (App. Div. 2023) (affirming denial of motion to amend complaint to add tortious interference claim).

contract indeed existed or if Defendants' activities procured a breach of those contracts." *Bose v. Interclick, Inc.*, 2011 WL 4343517, at *10 (S.D.N.Y. Aug. 17, 2011) (dismissing tortious interference with contract claim). For example, in *Northern Food I/E, Inc. v. Apollo Food International Inc.*, the Court held that "[b]ecause Plaintiff has failed to identify in the Complaint any contract between Plaintiff and a third party with which Defendant allegedly interfered, Plaintiff fails to plausibly allege a claim for tortious interference with contract." 2020 WL 9607108, at *8 (E.D.N.Y. Aug. 14, 2020). And in *In Touch Concepts*, the court similarly held, "The allegations refer generally to Zcom's subagents and do not specify which subagents the defendants intentionally induced to breach their contracts with Zcom. Thus, plaintiff has not adequately alleged its claim." 949 F. Supp. 2d at 475.

Here, with no details about the contracts with Departing Employees (other than McDonough and Hall) that Aon allegedly interfered with, neither this Court nor the Defendants can evaluate whether the allegedly interfered-with contracts exist, are enforceable, or were actually breached. *Compare* AC ¶ 225 ("The Departing Employees, at Aon's and McDonough's inducement and direction, violated the [unidentified] non-solicitation ***and/or*** non-disclosure covenants contained in their [unidentified] employment agreements with Marsh by soliciting Marsh clients to move their business from Marsh to Aon, by soliciting Marsh employees to join Aon, ***and/or*** by disclosing Marsh's confidential information for Aon's benefit.") (emphasis added) *with* AC ¶¶ 58-109 (identifying specific terms of agreements of McDonough and Hall only). This failure is particularly noteworthy because the alleged interference involves contracts between Marsh and 20 different employees. (AC ¶¶ 33-57.) These employees live in different states, were hired at different times, and had different roles at Marsh (*id*.)—any agreements with each of

these 20 different Departing Employees include different terms and in some instances, are governed by different laws.

Various allegations in Marsh's Amended Complaint highlight the reason these failures are material. For example, Marsh alleges that a California-based Departing Employee attended an industry conference and engaged in "an effort to solicit [Marsh employees and clients] on behalf of Aon." (AC ¶¶ 45, 144.) But, even if this California Departing Employee's supposed contract with Marsh included post-employment non-solicitation covenants, Marsh cannot prevent this employee from engaging in these actions, because California Business and Professions Code section 16600 bars the enforcement of both employee non-solicitation provisions[19] and customer non-solicitation provisions.[20]

### B.    Marsh Fails to Sufficiently Allege that Either Aon or McDonough Had Actual Knowledge of a Contract Between Marsh and a Departing Employee.

Marsh's tortious interference with contract claims against Aon and McDonough fail for the independent reason that the Amended Complaint does not contain facts sufficient to plausibly allege that either Aon or McDonough had actual knowledge of any Departing Employee's contract(s) with Marsh. "While a defendant need not be aware of the details of a contract, it must have 'actual knowledge' of the contract's existence, and conclusory allegations that a defendant knew or should have known of a contract are insufficient to plead a tortious interference with contract claim." *TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 201 (E.D.N.Y. 2024). In *TileBar*,

---

[19] *See, e.g.*, *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 239 Cal. Rptr. 3d 577, 587 (Ct. App. 2018) (holding a "nonsolicitation of employee provision . . . void under section 16600"); *WeRide Corp. v. Huang*, 379 F. Supp. 3d 834, 852 (N.D. Cal. 2019), *modified in part*, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) (citing cases and concluding "California law is properly interpreted . . . to invalidate employee non-solicitation provisions").

[20] *See, e.g.*, *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 290 (Cal. 2008) (concluding a "noncompetition agreement was invalid" under section 16600 because the agreement restricted employees "from performing work for [a former employer's] clients").

for example, the plaintiff alleged that "[u]pon information and belief, . . . [defendant] had knowledge of [the Confidentiality Agreement] and acted with full knowledge thereof." 723 F. Supp. 3d at 201 (final alteration in original). The court held this "conclusory and speculative" allegation "insufficient to plead that [defendant] had actual knowledge of the" agreement. *Id.* The same is true here.

With respect to McDonough and Hall, Marsh simply concludes that "on information and belief, Aon was aware of the contractual . . . duties owed by McDonough and Hall." (AC ¶ 114.) With respect to the other Departing Employees, the Amended Complaint's sole allegation regarding Aon's and McDonough's knowledge is the mere recitation of the element. (AC ¶ 220 ("Aon and McDonough were aware of . . . the Departing Employees' contractual obligations to Marsh.").) As in *TileBar*, these "conclusory and speculative" allegations are "insufficient to plead" that Aon or McDonough "had actual knowledge" of any alleged contract between Marsh and any of the Departing Employees. 723 F. Supp. 3d at 201; *see also Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 813 (S.D.N.Y. 2008) (adopting report and recommendation determining that Plaintiffs "cannot survive a motion to dismiss by making merely a 'conclusory assertion' of knowledge"); *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 626-27 (S.D.N.Y. 2014) (alleging merely constructive knowledge is insufficient); ("information and belief" allegations regarding intent to interfere fail when made "without any accompanying supporting evidence").

## VII.  THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST AON, MCDONOUGH, AND HALL FOR TORTIOUS INTERFERENCE WITH MARSH'S BUSINESS RELATIONSHIPS (COUNT V).

To adequately plead tortious interference with business relationships, Marsh must plausibly allege "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used

dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Katz v. Travelers*, 241 F. Supp. 3d 397, 404 (E.D.N.Y. 2017) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).

Further, "the defendant's conduct must amount to a crime or an independent tort, or some 'wrongful means,' or the defendant must have acted 'solely out of malice.'" *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 215 (W.D.N.Y. 2021) (citing *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004)). Thus, a plaintiff must show "that the defendant was motivated solely by the desire to harm and not with a permissible purpose, such as normal economic self-interest." *Cartiga, LLC v. Aquino*, 2025 WL 388804, at *10 (S.D.N.Y. Feb. 4, 2025) (internal quotation marks and citation omitted). Given this requirement of an independent wrong to sufficiently allege tortious interference, it is "very difficult to sustain such a claim." *Id.* (internal quotation marks and citation omitted). Marsh has failed to sufficiently plead this claim in at least three ways.

As an initial matter, Marsh's claim must be dismissed because the allegations as to (1) the existence of Marsh's business relations, and (2) each Defendant's interference are based solely on information and belief, with no supporting facts. *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 474 (S.D.N.Y. 2021) (granting motion to dismiss tortious interference with business relations claim because plaintiff's allegations were "based on 'labels and conclusions' and not facts"). For example, Marsh concludes, on information and belief, that McDonough and Hall worked with Aon to develop a plan to identify Marsh clients to move business to Aon. (AC ¶ 134.) However, Marsh does not offer a single factual allegation to substantiate that conclusion, such as the details of that plan, when it was developed, who at Aon was involved, or which Marsh clients were identified. Instead, Marsh offers only assumptions and speculation.

Similarly, Marsh concludes, on information and belief, that Aon directed McDonough to solicit an unidentified Marsh client.  (AC ¶ 137.)  But again, Marsh does not allege any facts supporting this conclusion, such as who at Aon contacted that client, whether Aon actually solicited business from that client, or whether that client actually moved its business to Aon.  The failure to provide a single factual allegation about Aon's, McDonough's, or Hall's alleged interference with Marsh's business relationships requires dismissal.  *See In re Int. Rate Swaps Antitrust Litig.*, 351 F. Supp. 3d 698, 709-10 (S.D.N.Y. 2018) ("limited facts" supporting plaintiff's claim for tortious interference with business relations, such as the allegation that plaintiff "had business relationship with numerous buy-side customers, including Buy Side Client 1 through 16," was "too vague to survive" a motion to dismiss).

Even if these allegations involved more than speculation and conclusion (which they do not), Marsh's claims fail because these allegations cannot satisfy the wrongful means element.  "To establish wrongful means, as a general rule, the defendant's conduct must amount to a crime or an independent tort."  *Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 435 (S.D.N.Y. 2007) (internal quotation marks omitted).    "'Wrongful means' include 'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions' and 'extreme and unfair economic pressure.'"  *Corning*, 546 F. Supp. 3d at 215.  On the other hand, "[i]f the defendant's 'motive in interfering . . . was normal economic self-interest,' the defendant did not use unlawful means."  *Id.*; *Masefield AG v. Colonial Oil Indus.*, 2006 WL 346178, at *8-9 (S.D.N.Y. Feb. 15, 2006) (dismissing claim where parties acted in furtherance of their own economic interests as competitors, without allegations of malice or any fraudulent or criminal conduct).  Because these requirements are difficult to meet, "courts routinely dismiss such claims where the defendant is

alleged to have been motivated at least in part by its own economic interest." *Cartiga*, 2025 WL 388804, at *10 (internal quotation marks and citation omitted).

Here, Marsh simply concludes, with no supporting allegations of fact, that "McDonough, Hall, and Aon, directly or indirectly, intentionally and with malice . . . interfered with Marsh's existing and prospective business relationships, causing existing and prospective clients to leave Marsh using unfair or improper means and/or with the intent to interfere with such relationships." (AC ¶ 213.) This conclusory allegation on the wrongful-means prong is devoid of facts and cannot satisfy "the demanding standard required to state a claim for this tort." *Cartiga*, 2025 WL 388804, at *10 (dismissing the claim where plaintiff failed to allege that defendant was "motivated solely by the desire to harm and not with a permissible purpose, such as normal economic self-interest") (internal quotation marks omitted); *Chahine v. City of New York*, 2020 WL 2555228, at *4 (S.D.N.Y. May 20, 2020) (dismissing claim for tortious interference with prospective business relations because the complaint "contains no factual allegations that give rise to the inference that the City acted for a wrongful purpose or used dishonesty, unfair, or improper means"); *Vinas*, 499 F. Supp. 2d at 434 ("Vinas does not allege, aside from conclusory allegations, that Chubb acted 'solely out of malice.' Indeed, Chubb's economic motivation, even if somewhat attenuated from the Vinas–Angeliades relationship, counsels against such a finding of malice.").

## VIII.   THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST AON, MCDONOUGH, AND HALL FOR UNFAIR COMPETITION (COUNT III).

To state a claim for unfair competition, Marsh must allege that Defendants "misappropriated Plaintiff's labor, skills, expenditures or good will, and displayed some element of bad faith in doing so." *TileBar*, 723 F. Supp. 3d at 199 (internal citation omitted). As a threshold matter, Marsh's unfair competition claims against Defendants are premised on Marsh's other claims and fail because those underlying claims fail. Specifically, Marsh alleges that McDonough

unfairly competed with Marsh *by* breaching his contractual obligations and fiduciary duties (AC ¶ 193), that Hall unfairly competed with Marsh *by* breaching his contractual obligations (AC ¶ 194), and that Aon unfairly competed with Marsh *by* aiding and abetting McDonough's breaches of fiduciary duties and conspiring to interfere with Marsh's business relationships and contracts (AC ¶ 195).  For all of the same reasons described above, so too must Marsh's unfair competition claims be dismissed.

The only non-duplicative allegation against Aon is that it used Marsh's confidential information to solicit customers.  (AC ¶¶ 195, 196.)  But Marsh's conclusory allegation is based solely on information and belief.  *N. Food I/E, Inc.*, 2020 WL 960710, at *11 (dismissing unfair competition claim where the only allegation against defendant was "the conclusory allegation, made upon information and belief, that [defendant] 'personally authorized or directed all infringing activity of [the Corporate Defendants]'") (final alteration in original).

Specifically, Marsh alleges, on information and belief, that McDonough and Hall disclosed Marsh confidential information to Aon.  (AC ¶ 117 ("on information and belief, McDonough shared confidential employment and compensation information about the targeted Marsh employees"); AC ¶ 134 (Mr. McDonough and Mr. Hall worked with Aon to solicit clients); AC ¶ 145 ("on information and belief, Aon worked with its subsidiary to unfairly frustrate Marsh's efforts to secure [unidentified] Project B misappropriating Marsh's confidential information"); AC ¶ 149 ("on information and belief, Hall deliberately exploited [Marsh's] information by using it to divert Client M's business"); AC ¶ 156 ("on information and belief, [McDonough] deliberately misappropriated" Marsh's unspecified confidential information and trade secrets regarding recruitment of a candidate).)  Marsh does not offer *any* facts to support its belief that McDonough

or Hall actually disclosed confidential information to Aon.  The absence of any such alleged fact is fatal to Marsh's claim.  *N. Food I/E, Inc.*, 2020 WL 960710, at *11.

Marsh's unfair competition claims against McDonough and Hall fail for the additional independent reason that they are duplicative of Marsh's breach of contract claims against them. *TileBar*, 723 F. Supp. 3d at 200 ("[T]o the extent that the unfair competition claim is premised on Defendants' use of information that is confidential but not a trade secret, it is duplicative of Plaintiff's contract claims."); *see also Quest Partners LLC v. Brugman*, 204 N.Y.S.3d 923, 2024 WL 952685, at *2 (Sup. Ct. Feb. 29, 2024).  Marsh's unfair competition claim against McDonough also fails as duplicative of its breach of fiduciary duty claim against McDonough.  *Cf. Rinaldi v. SCA La Goutte, D'Or*, 2020 WL 5441290, at *1 (S.D.N.Y. Sept. 9, 2020) (dismissing claims for breach of fiduciary duty and unfair competition as duplicative of breach of contract claim).

Marsh's unfair competition claim against Aon fails as duplicative of its claims for aiding and abetting McDonough's and Hall's breaches of fiduciary duties, tortiously interfering with Marsh's business relationships, and tortiously interfering with Marsh's contracts.  *Cf. Saulsbury v. Durfee*, 162 N.Y.S.3d 614, 620 (App. Div. 2022) (claims for unfair competition and tortious interference with prospective business relations should have been dismissed as duplicative of breach of contract claim).

Marsh fails to state any claim for unfair competition.

## IX.    THE AMENDED COMPLAINT FAILS TO STATE CLAIMS AGAINST AON, MCDONOUGH, AND HALL FOR CONSPIRACY (COUNT VIII).

Under New York law, "civil conspiracy is not recognized as an independent tort." *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, 106 N.Y.S.3d 302, 305 (App. Div. 2019) (dismissing conspiracy claim).  Because "civil conspiracy must be derivative of an underlying tort, a civil conspiracy claim 'should be dismissed if the underlying tort claim either is

not adequately pleaded or has been dismissed.'" *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 339-40 (S.D.N.Y. 2024). So too, here, should the underlying civil conspiracy claim be dismissed.

At most, a conspiracy claim is "deemed part of the remaining causes of action to which [it is] relevant." *Errant Gene Therapeutics*, 106 N.Y.S.3d at 305. "[W]here the acts underlying a claim of conspiracy are the same as those underlying other claims alleged in the complaint, the conspiracy claim is dismissed as duplicative. *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, 2007 WL 1040809, at *26 (S.D.N.Y. Apr. 4, 2007) (dismissing conspiracy claim as duplicative of claim for aiding and abetting breach of fiduciary duty). Here, Marsh's sole allegation in support of its conspiracy claim is that "Aon, acting in concert with McDonough and Hall, reached an agreement among themselves to unlawfully interfere with Marsh's business relationships and contracts and for McDonough and Hall to breach their contractual obligations[21] and fiduciary duties owed to Marsh." (AC ¶ 241.) Accordingly, to the extent that any of Counts V, VI, II, or VII survive dismissal (they should not), Marsh's conspiracy claim must be dismissed as duplicative.[22]

---

[21] It is a "long-established doctrine that one does not have a cause of action against another contracting party for conspiracy to breach the agreement between them." *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 600 N.Y.S.2d 212, 214-15 (App. Div. 1993) (quoting *Bereswill v. Yablon*, 6 N.Y.2d 301, 306 (1959)), *aff'd*, 643 N.E.2d 504 (N.Y. 1994).

[22] Marsh's claims for, among other things, conspiracy, are further undermined by Marsh's own allegation that McDonough encouraged Marsh to give one Departing Employee a bonus award, warning Marsh, "I also FULLY expect that Aon will approach [him]." (AC ¶ 119.) Marsh provides no explanation as to why McDonough would voluntarily disclose his own alleged conspiracy plot in advance.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully submit that the Amended Complaint should be dismissed in its entirety, and the Court should award Defendants any further relief the Court deems just and proper.

Dated:    July 11, 2025
          New York, New York

Respectfully submitted,

VEDDER PRICE P.C.                          O'MELVENY & MYERS LLP

By: /s/ *Joshua A. Dunn*
    Joshua A. Dunn                          David S. Almeling (*pro hac vice*
    jdunn@vedderprice.com                   application forthcoming)
    Courtney M. Brown                       dalmeling@omm.com
    cmbrown@vedderprice.com                 Christopher B. Phillips (*pro hac vice*
    Elvira Razzano                          application forthcoming)
    erazzano@vedderprice.com                cphillips@omm.com
    1633 Broadway, 31st Floor               Two Embarcadero Center, 28th Floor
    New York, New York 10019                San Francisco, California 94111
    T:  +1 212 407 7700                     Telephone:  +1 415 984 8700
    F:  +1 212 407 7799
                                            Eric Amdursky (*pro hac vice* application
    Jeanah Park (admitted *pro hac vice*)   forthcoming)
    jpark@vedderprice.com                   eamdursky@omm.com
    222 N. LaSalle Street                   Ramon Ramirez (*pro hac vice* application
    Chicago, Illinois  60601                forthcoming)
    T:  +1 312 609 7500                     rramirez@omm.com
    F:  +1 312 609 5001                     2765 Sand Hill Road, 1st Floor
                                            Menlo Park, California 64025-7019
                                            Telephone:  +1 650 473 2600

*Counsel for Defendants Aon Risk Services*        *Counsel for Defendants Aon Risk Services*
*Companies, Inc., Robert McDonough, and*          *Companies, Inc., Robert McDonough, and*
*Danny Hall*                                      *Danny Hall*

41

**<u>WORD COUNT CERTIFICATION</u>**

I, Joshua A. Dunn, certify that according to the word count of the word-processing program used to prepare the foregoing memorandum of law, and exclusive of the portions of it that are excluded by Local Rule 7.1 and this Court's Individual Rule 5.A., there are 13,049 words in the memorandum of law.

 /s/ *Joshua A. Dunn*
Joshua A. Dunn
