**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

MARSH USA LLC,

             Plaintiff,

v.

AON RISK SERVICES COMPANIES, INC.,
ROBERT MCDONOUGH, and DANNY
HALL,

             Defendants.

No. 1:25-cv-03241-JAV-HJR

---------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANTS' PARTIAL MOTION TO DISMISS**

VEDDER PRICE P.C.

Joshua A. Dunn
jdunn@vedderprice.com
Courtney M. Brown
cmbrown@vedderprice.com
Elvira Razzano
erazzano@vedderprice.com
1633 Broadway, 31st Floor
New York, New York 10019
T:  +1 212 407 7700
F:  +1 212 407 7799

Jeanah Park (admitted *pro hac vice*)
jpark@vedderprice.com
222 N. LaSalle Street
Chicago, Illinois  60601
T:  +1 312 609 7500
F:  +1 312 609 5005

O'MELVENY & MYERS LLP

David S. Almeling (admitted *pro hac vice*)
dalmeling@omm.com
Christopher B. Phillips (admitted *pro hac vice*)
cphillips@omm.com
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone:  +1 415 984 8700

Eric Amdursky (admitted *pro hac vice*)
eamdursky@omm.com
Ramon Ramirez (admitted *pro hac vice*)
rramirez@omm.com
2765 Sand Hill Road, 1st Floor
Menlo Park, California 64025-7019
Telephone:  +1 650 473 2600

*Counsel for Defendants Aon Risk Services Companies, Inc.,*
*Robert McDonough, and Danny Hall*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT** ..................................................................... 1

**BACKGROUND** ......................................................................................... 6

    A.   McDonough Returns to Aon After a Nine-Year Stint at Marsh, and Other
        Marsh Employees from His Group Also Choose to Join Aon ........................ 7

    B.   Marsh Conducts a Fruitless Five-Month Long Forensic Investigation of 20
        Departing Employees, Yet Finds No Evidence of Any Departing
        Employee Actually Taking Marsh's Alleged Confidential Information or
        Trade Secrets ................................................................................................ 8

    C.   Neither McDonough Nor Hall Solicits or Services Any Marsh Clients on
        Behalf of Aon .............................................................................................. 9

    D.   Other Departing Employees Are Offered Higher Compensation by Aon
        and Decide Freely to Leave Marsh, After Which Marsh Hires Four Aon
        Employees to Replace Them ...................................................................... 10

**LEGAL STANDARD** ................................................................................. 11

**ARGUMENT** ............................................................................................ 12

I.    MARSH'S BREACH OF CONTRACT CLAIMS AGAINST HALL THAT ARE
      BASED ON HALL'S ALLEGED MISAPPROPRIATION MUST BE
      DISMISSED (COUNTS III, IV, AND V) ................................................... 12

II.   MARSH'S BREACH OF FIDUCIARY DUTY CLAIM AGAINST
      MCDONOUGH IS DUPLICATIVE OF ITS BREACH OF CONTRACT
      CLAIMS AND MUST BE DISMISSED AS A MATTER OF LAW
      (COUNT VII) ............................................................................................. 14

III.  THE SAC FAILS TO STATE A CLAIM AGAINST AON FOR AIDING AND
      ABETTING BREACH OF FIDUCIARY DUTY (COUNT XII) .................. 15

    A.   Marsh Fails to Allege an Underlying Breach of Fiduciary Duty by
        McDonough ................................................................................................ 15

    B.   Marsh Fails to Allege Aon's Substantial Assistance in McDonough's
        Alleged Breaches. ...................................................................................... 16

    C.   Marsh Fails to Allege That Aon Had Actual Knowledge of McDonough's
        Alleged Breaches. ...................................................................................... 18

IV.  THE SAC FAILS TO STATE A CLAIM AGAINST MCDONOUGH FOR
      "BREACH" OF THE FAITHLESS SERVANT DOCTRINE (COUNT VIII) .... 19

    A.   Marsh Fails to Meet the High Bar for Pleading a "Persistent Pattern" of
        Misconduct During McDonough's Employment. ..................................... 20

i

B.     Marsh's Faithless Servant Claim Is Duplicative of Its Breach of Fiduciary Duty Claim and Must Be Dismissed as a Matter of Law    21

V.    THE SAC FAILS TO STATE CLAIMS AGAINST HALL AND AON FOR TRADE SECRET MISAPPROPRIATION UNDER THE DTSA (COUNT XIII)    23
    A.    Marsh Fails to Allege Misappropriation of Any Trade Secret by Hall.    23
    B.    Marsh Fails to Allege Misappropriation by Aon.    27

VI.    THE SAC FAILS TO STATE CLAIMS AGAINST AON AND MCDONOUGH FOR TORTIOUS INTERFERENCE WITH CONTRACT (COUNT XI)    28

VII.    THE SAC FAILS TO STATE CLAIMS AGAINST AON, MCDONOUGH, AND HALL FOR TORTIOUS INTERFERENCE WITH MARSH'S BUSINESS RELATIONSHIPS (COUNT X).    30

VIII.    THE SAC FAILS TO STATE CLAIMS AGAINST AON, MCDONOUGH, AND HALL FOR UNFAIR COMPETITION (COUNT IX)    32

**CONCLUSION**    33

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*,
  2023 WL 372883 (S.D.N.Y. Jan. 24, 2023) ........................................................................13

*AD Lightning Inc. v. Clean.io, Inc.*,
  2020 U.S. Dist. LEXIS 141311 (S.D.N.Y. Aug. 7, 2020) .....................................................25

*Affinity LLC v. GfK Mediamark Rsch. & Intel., LLC*,
  547 F. App'x 54 (2d Cir. 2013) ....................................................................................14, 24

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
  28 Cal. App. 5th 923 (2018) ..........................................................................................30

*Aniero Concrete Co. v. N.Y.C. Constr. Auth.*...............................................................28
  1997 WL 3268, at *19 (S.D.N.Y. Jan. 3, 1997)

*Aon Risk Servs., Inc. of Fla. et al. v. Marsh USA Inc. et al*,
  Case No. 2021-015086-CA-01 (Fla. Cir. Ct.)....................................................................2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................11

*Bader v. Wells Fargo Home Mortg., Inc.*,
  2012 WL 1428898 (S.D.N.Y. Apr. 25, 2012).....................................................................13

*Barbagallo v. Marcum LLP*,
  820 F. Supp. 2d 429 (E.D.N.Y. 2011) ............................................................................14

*Bautista v. PR Gramercy Square Condo.*,
  642 F. Supp. 3d 411 (S.D.N.Y. 2022)..............................................................................12

*Beach v. Touradji Cap. Mgmt., LP*,
  203 N.Y.S.3d 324 (App. Div. 2024) .................................................................................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................................11

*Bose v. Interclick, Inc.*,
  2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011)....................................................................28

*Broccoli v. Ashworth*,
  2025 WL 880550 (S.D.N.Y. Mar. 21, 2025) .......................................................................1

*Cartiga, LLC v. Aquino*,
    2025 WL 388804 (S.D.N.Y. Feb. 4, 2025)................................................................14, 15, 31

*Casanas v. Casanas*,
    187 N.Y.S.3d 207 (App. Div. 2023) ........................................................................28

*Chahine v. City of New York*,
    2020 WL 2555228 (S.D.N.Y. May 20, 2020) ........................................................32

*Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*,
    546 F. Supp. 3d 204 (W.D.N.Y. 2021) ...........................................................30, 31

*Cortes v. Twenty-First Century Fox Am., Inc.*,
    285 F. Supp. 3d 629 (S.D.N.Y. 2018)....................................................................28

*Ebel v. G/O Media, Inc.*,
    2021 WL 2037867 (S.D.N.Y. May 21, 2021) ......................................................22

*Edwards v. Arthur Andersen LLP*,
    44 Cal. 4th 937 (2008) ...........................................................................................30

*Friedman v. Hosp.*,
    2024 WL 5691656 (S.D.N.Y. Apr. 2, 2024)...........................................................2

*Garvey v. Face of Beauty, LLC*,
    2022 U.S. Dist. LEXIS 171182 (S.D.N.Y. Sept. 21, 2022)....................................15

*Gravitas Search Partners LLC, v. Deutsch*
    2025 WL 2243720 (S.D.N.Y. Aug. 6, 2025)....................................................20, 21

*Grayson v. Ressler & Ressler*,
    271 F. Supp. 3d 501 (S.D.N.Y. 2017)......................................................................2

*JAPNA, Inc. v. SELFX Innovations Inc.*,
    2024 WL 1250269 (S.D.N.Y. Mar. 22, 2024) ................................................19, 20

*Kassover v. Prism Venture Partners, LLC*,
    862 N.Y.S.2d 493 (App. Div. 2008) ......................................................................15

*Katz v. Travelers*,
    241 F. Supp. 3d 397 (E.D.N.Y. 2017) ...................................................................30

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991).....................................................................................2

*Krys v. Butt*,
    486 F. App'x 153 (2d Cir. 2012) ...........................................................................18

*Kumaran v. Nat'l Futures Ass'n, LLC*,
   2022 WL 1805936 (S.D.N.Y. June 2, 2022) ...........................................................23, 25, 26

*Lindberg v. Dow Jones & Co.*,
   2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021) ......................................................................18

*Marsh & McClennan Agency LLC v. Alliant Ins. Servs., Inc., et al.*,
   Case No. 25-cv-06936 (Abrams, J.) .......................................................................................1

*Marsh & McLennan Cos., Inc. et al. v. Howden US Servs., LLC, et al.*,
   Case No. 2025-0877-MTZ (Del. Ct. of Chancery, Aug. 1, 2025) .........................................1

*Marsh USA LLC v. Parrish et al.*,
   Case No. 25-cv-06208 (Daniels, J.) .......................................................................................1

*Masefield AG v. Colonial Oil Indus.*,
   2006 WL 346178 (S.D.N.Y. Feb. 15, 2006) ........................................................................31

*MedQuest Ltd. v. Rosa*,
   2023 WL 2575051 (S.D.N.Y. Mar. 20, 2023) .................................................................24, 25

*MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*,
   655 F. Supp. 3d 193 (S.D.N.Y. 2023) ..................................................................................11

*MThree Corp. Consulting Ltd. v. Wascak*,
   2022 WL 15524842 (S.D.N.Y. Oct. 27, 2022) .....................................................................20

*Murray v. Beard*,
   102 N.Y. 505 (1886) .......................................................................................................19, 22

*Naughright v. Weiss*,
   826 F. Supp. 2d (S.D.N.Y. 2011) .........................................................................................11

*Oliver Wyman, Inc. v. Adam*,
   2016 WL 5339549 (S.D.N.Y. Sept. 22, 2016) .................................................................14, 15

*Plymouth Cap., LLC v. Montage Fin. Grp., Inc.*,
   219 N.Y.S.3d 372 (App. Div. 2024) .....................................................................................16

*Q3 Res., Inc. v. Navigant Consulting, Inc.*
   2019 U.S. Dist. LEXIS 108835 (S.D.N.Y. June 27, 2019) ..............................................17, 19

*Quest Partners LLC v. Brugman*,
   204 N.Y.S.3d 923, 2024 WL 952685 (Sup. Ct. Feb. 29, 2024) ...........................................33

*R.R. Donnelley & Sons Co. v. Marino*,
   505 F. Supp. 3d 194 (W.D.N.Y. 2020) .................................................................................27

*Race Winning Brands, Inc. v. Gearhart*,
    2023 WL 4681539 (C.D. Cal. Apr. 21, 2023) ......................................................30

*Rinaldi v. SCA La Goutte, D'Or*,
    2020 WL 5441290 (S.D.N.Y. Sept. 9, 2020)......................................................33

*Ruderman v. Liberty Mut. Grp., Inc.*,
    2022 WL 244086 (2d Cir. Jan. 27, 2022) ...............................................................12

*Saulsbury v. Durfee*,
    162 N.Y.S.3d 614 (App. Div. 2022)......................................................................33

*Superb Motors Inc. v. Deo*,
    776 F. Supp. 3d 21 (S.D.N.Y. 2025).....................................................................26

*Swan Media Grp., Inc. v. Staub*,
    841 F. Supp. 2d 804 (S.D.N.Y. 2012)..................................................................12

*TileBar v. Glazzio Tiles*,
    723 F. Supp. 3d 164 (E.D.N.Y. 2024) ..................................................15, 32, 33

*Touch Concepts, Inc. v. Cellco P'ship*,
    949 F. Supp. 2d 447 (S.D.N.Y. 2013)..................................................................28

*Turner v. Konwenhoven*,
    100 N.Y. 115 (1885) ......................................................................................19, 20

*Vinas v. Chubb Corp.*,
    499 F. Supp. 2d 427 (S.D.N.Y. 2007)............................................................31, 32

*Watts v. Jackson Hewitt Tax Serv. Inc.*,
    675 F. Supp. 2d 274 (E.D.N.Y. 2009) ........................................15, 16, 17, 18

*Worldcare Int'l, Inc. v. Kay*,
    989 N.Y.S.2d 495 (App. Div. 2014) ....................................................................23

*Yukos Cap. S.A.R.L. v. Feldman*,
    977 F.3d 216 (2d Cir. 2020)...........................................................19, 20, 21, 22

*Zurich Am. Life Ins. Co. v. Nagel*,
    538 F. Supp. 3d 396 (S.D.N.Y. 2021)..................................................................26

**Statutes**

18 U.S.C. § 1832.....................................................................................................5

18 U.S.C. § 1839(5) ..............................................................................................23

Cal. Bus. & Prof. Code § 16600 ...........................................................................29

Cal. Bus. & Prof. Code § 16600.1 ...........................................................................30

Cal. Bus. & Prof. Code § 16600.5 ...........................................................................30

Cal. Lab. Code § 925(a) ...........................................................................................30

**Other Authorities**

https://aon.mediaroom.com/2025-03-10-Aon-Hires-New-Leadership-to-
   Accelerate-Construction-and-Surety-Practice-in-North-America ...............................6

https://www.insurancejournal.com/news/east/2016/03/17/402291.htm ..........................6

https://www.linkedin.com/in/sarah-coburn-cris-3b717711 ............................................2

https://www.marsh.com/en/about/media/jim-dunn-joins-marsh-as-us-
   construction-practice-leader.html .......................................................................1

**Rules**

Fed. R. Civ. P. 8(a) ...................................................................................................11

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 11

Defendants, Aon Risk Services Companies, Inc.[1] ("Aon"), Robert McDonough ("McDonough"), and Danny Hall ("Hall" and, together with Aon and McDonough, "Defendants"), by their undersigned attorneys, submit this memorandum of law in support of their motion for an order dismissing Counts III, IV, and V, as against Hall, of the Second Amended Complaint [ECF No. 56] ("SAC") of Plaintiff, Marsh USA LLC ("Marsh"), with prejudice, and dismissing Counts VII, VIII, IX, X, XI, XII, and XIII of the SAC in their entirety with prejudice, for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Marsh filed this lawsuit in a brazen attempt to exert control over individuals' autonomy to work where they choose. This lawsuit is part of a pattern in which Marsh uses litigation to chill competition, and it must be stopped. For example, since filing this action, Marsh has filed at least three other lawsuits—including two in this District—against former employees and other competitors, seeking in one case to enjoin its former employees from working for a different Marsh competitor.[2] The above-captioned lawsuit is particularly ironic because after filing, Marsh targeted and hired four *Aon employees* to join Marsh.[3] Marsh's transparent strategy seeks to stifle

---

[1] Aon Risk Companies, Inc. is not the proper defendant because McDonough and Hall are employed by a different Aon entity, Aon Risk Services, Inc. of Maryland. Despite notice of this defect, Plaintiff chose not to name the proper Aon entity as a defendant in the SAC.

[2] *See Marsh USA LLC v. Parrish et al.*, Case No. 25-cv-06208 (Daniels, J.) (seeking temporary restraining order to enjoin employees from working for competitor Howden); *Marsh & McClennan Agency LLC v. Alliant Ins. Servs., Inc., et al.*, Case No. 25-cv-06936 (Abrams, J.); *Marsh & McLennan Cos., Inc. et al. v. Howden US Servs., LLC, et al.*, Case No. 2025-0877-MTZ (Del. Ch. Aug. 1, 2025).

[3] Marsh targeted and hired an Aon executive as its US Construction Practice Leader—the very same position McDonough had held at Marsh. *See* https://www.marsh.com/en/about/media/jim-dunn-joins-marsh-as-us-construction-practice-leader.html. The Court may take judicial notice of articles published on websites and press releases where neither party "dispute[s] the[ir] authenticity . . . and they are capable of accurate and ready determination." *Broccoli v. Ashworth*, 2025 WL 880550, at *3 (S.D.N.Y. Mar. 21, 2025). Then, after filing the Amended Complaint, Marsh hired three additional former Aon employees who previously worked with that executive

fair competition—first by filing a shotgun-style Complaint, then by filing two additional amended pleadings suffering from many of the same defects as the first.  Marsh's latest attempt to fix these deficiencies —made after Defendants filed a motion to dismiss [ECF No. 39]— once again fails.

Less than five years ago, Marsh poached over 40 of Aon's employees in South Florida and certain of those employees took confidential Aon information on their way out, forcing Aon to file suit against Marsh in Florida state court.[4]  Unlike the conduct of Marsh and the individual defendants in that case, here, many of the Departing Employees[5] (i) were formerly Aon employees who developed client relationships at Aon, (ii) were subsequently recruited by Marsh several years ago, (iii) brought those Aon clients with them to Marsh, (iv) chose to return to Aon, and (v) importantly, returned without soliciting clients.  The Construction and Infrastructure ("C&I") and Surety industry is a small space in which prominent employees are well known.  Tellingly, while Marsh complains that the loss of these employees and clients destroyed the "core" of its construction and surety business, and unlike the recently filed case pending before Judge Daniels, Marsh never sought injunctive relief to stop the alleged harm.  That is because there is no evidence here to support any wrongful conduct that could remotely warrant injunctive relief.

---

to join the same practice at Marsh.  *See*, *e.g.*, https://www.linkedin.com/in/sarah-coburn-cris-3b717711.  Two of those employees have since returned to Aon.

[4] *See Aon Risk Servs., Inc. of Fla. et al. v. Marsh USA Inc. et al.*, Case No. 2021-015086-CA-01 (Fla. Cir. Ct.) (the "Miami Litigation").  The Court may take judicial notice of public filings made in other court proceedings, "not for the truth of the matters asserted in the other litigation[s], but rather to establish the fact of such litigation[s] and related filings." *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 514 (S.D.N.Y. 2017) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)); *see also Friedman v. Hosp.*, 2024 WL 5691656, at *2 (S.D.N.Y. Apr. 2, 2024), *report & recommendation adopted sub nom. Friedman v. Mt. Sinai Hosp.*, 2025 WL 1360890 (S.D.N.Y. May 9, 2025) (taking judicial notice of plaintiff's filings in prior state court action).

[5] Unless otherwise specified, defined terms shall have the meanings ascribed to them in the SAC.

None of the SAC's allegations supports an inference of misappropriation by McDonough, Hall, or Aon. Most notably, after five months and what must have involved Marsh's thorough forensic inspection of the Departing Employees' Marsh-issued computers and mobile devices (SAC ¶¶ 167-70), Marsh *still* cannot cobble together facts that McDonough, Hall, or the Departing Employees misappropriated any confidential information or trade secrets. Marsh makes much of the allegation that Hall *accessed* client information "in the weeks leading up to his resignation" while he was still employed by Marsh and for a client Hall had been servicing on Marsh's behalf. (SAC ¶ 178.) While Marsh still vaguely alleges that Hall had no legitimate business reason to access those specific files on that specific day, Marsh alleges *no facts* that Hall copied, downloaded, emailed, or otherwise transferred the information he accessed while he was still a Marsh employee. In other words, Marsh cannot allege that any alleged confidential information or trade secrets were actually taken.

Despite three bites at the apple, Marsh still struggles to state any claim against any Defendant. Faced with Defendants' prior motion to dismiss, Marsh has dropped its conspiracy claim and its claims against Hall for breach of fiduciary duty (and related aiding and abetting claim against Aon) and faithless servant. In the SAC, Marsh barely manages to allege claims for breach of contract (which Defendants dispute). And despite having notice of the many defects in its remaining claims through Defendants' Motion to Dismiss, Marsh cannot plead allegations sufficient to sustain those claims. For example, Marsh has resorted to deleting the phrase "upon information and belief" from certain prior allegations, which only serves to transform them from speculative to conclusory. As the Court previewed [ECF No. 53], further leave to amend the defective claims should not be granted.

3

The breach of contract claims against Hall that sound in misappropriation (Counts III, IV, and V) must be dismissed for failure to allege that Hall misused or disclosed any of the three documents containing alleged confidential information and/or trade secrets relating to "Client M." (*See* Section I, *infra*.)

The breach of fiduciary duty claim against McDonough (Count VII) must be dismissed as duplicative of the breach of contract claims against McDonough.  (*See* Section II, *infra*.)

Once again, the aiding and abetting breach of fiduciary duty claim against Aon (Count XII) fails for three separate and independent reasons.  First, because Marsh does not state an underlying claim against McDonough for breach of fiduciary duty, its aiding and abetting claim against Aon automatically fails.  Second, Marsh cannot allege that Aon substantially assisted McDonough.  Marsh alleges only that Aon prepared a Broker of Record letter ("BOR") *after* a former Marsh client decided it was going to change firms.  Other than that, Marsh offers only conclusory allegations that Aon directed McDonough to solicit two Marsh clients, one Marsh prospective client, and the Departing Employees.  Third, Marsh does not sufficiently allege that Aon had actual knowledge of McDonough's purported breaches.  (*See* Section III, *infra*.)

The "claim" for breach of the faithless servant doctrine against McDonough (Count VIII) also is duplicative of the breach of fiduciary duty claim (and, by extension, the breach of contract claim).  Additionally, the faithless servant claim still fails because Marsh cannot allege that McDonough's conduct in preparing to leave Marsh, during an approximately one-month period, amounted to a "persistent pattern" of misconduct.  This is highlighted by Marsh's own contradictory allegations that McDonough was working in furtherance of Marsh's business interests one month before his departure.  (*See* Section IV, *infra*.)

The claims against Hall and Aon under the Defend Trade Secrets Act, 18 U.S.C. § 1832 *et seq.* ("DTSA") (Count XIII) fail because Marsh does not allege any facts to support that Hall or Aon misappropriated any alleged trade secrets.  Marsh merely alleges that Hall ***accessed*** the alleged trade secrets, which he was authorized to do as an employee of Marsh.  Marsh's new vague allegations that Hall had no business purpose to access the alleged trade secrets on a specific day are insufficient to allege improper use as a matter of law.  Marsh's other speculative and conclusory allegations that Hall and Aon "must have" engaged in misappropriation are similarly deficient. (*See* Section V, *infra.*).

The claims against McDonough and Aon for tortious interference with all Departing Employees' contracts (Count XI) are also defective.  These claims fail because Marsh does not allege any facts about the purported contract(s) each Departing Employee supposedly breached, how these employees breached those contracts, or even how McDonough or Aon induced any purported breach.  Without these details, neither the Court nor any of the Defendants can determine something as basic as whether the allegedly breached provisions were valid, a concern heightened by the fact that the Departing Employees are located in different states and are subject to different restrictive covenants.  (*See* Section VI, *infra*.)

Marsh's claims against McDonough, Hall, and Aon for tortious interference with business relationships (Count X) also fail because Marsh does not, and cannot, allege that McDonough, Hall, or Aon used wrongful means or were acting solely out of malice.  For example, Marsh concludes, solely on information and belief, that McDonough worked with Aon to develop a plan to identify Marsh clients to move business to Aon.  However, Marsh does not otherwise allege any facts regarding the details of that plan, such as when it was developed, who at Aon was involved, or which Marsh clients were identified.  (*See* Section VII, *infra*.)

5

The unfair competition claims (Count IX) must be dismissed because Marsh's allegations, including the allegation that Aon acted in "bad faith," are premised on Marsh's other claims and fail because those underlying claims fail for the reasons stated herein.  In addition, the unfair competition claims against McDonough and Hall are duplicative of nearly all other claims against them.  Similarly, the unfair competition claim against Aon is duplicative of all other claims against Aon.  The unfair competition claims must fall with Marsh's other claims.  (*See* Section VIII, *infra*.)

Marsh brought this lawsuit as an attempt to stifle ***fair*** competition.  After the Departing Employees chose to leave Marsh—many of them returning to an employer that they previously worked for—Marsh, with no actual evidence of wrongdoing, turned around and sued McDonough and Aon, and later Hall, to bide time while it tried to conjure up a legitimate basis for its claims.  Despite three attempts at drafting a sufficient pleading, Marsh still fails to state any non-contract claim.  Accordingly, Counts VII, VIII, IX, X, XI, XII, and XIII in the SAC each fail to state any claim upon which relief can be granted, and so they must be dismissed.

## **BACKGROUND**

Aon is a leading global professional services firm providing a broad range of conventional and alternative risk management products and services covering the businesses of, among others, insurance brokerage.  (SAC ¶ 17.)  Marsh is one of Aon's direct competitors.  (*Id.*)  Before McDonough was employed by Marsh, he worked for Aon for over 20 years.[6]  Accordingly, McDonough and certain other Departing Employees generated and developed certain established Aon client relationships that they moved with them to Marsh.

---

[6] *See* https://aon.mediaroom.com/2025-03-10-Aon-Hires-New-Leadership-to-Accelerate-Construction-and-Surety-Practice-in-North-America; *see also* https://www.insurancejournal.com/news/east/2016/03/17/402291.htm.

**A.    McDonough Returns to Aon After a Nine-Year Stint at Marsh, and Other Marsh Employees from His Group Also Choose to Join Aon.**

McDonough worked in Marsh's New York office as Managing Director and US Construction Practice Leader of Marsh's Construction Surety business unit from March 31, 2016, through March 14, 2025.  (SAC ¶¶ 37, 157.)  On March 10, 2025, McDonough resigned from Marsh.  (SAC ¶ 43.)  On March 17, 2025, McDonough rejoined Aon.  (SAC ¶ 157.)  As Marsh has stated previously, there is "nothing unusual about" people being recruited to switch companies.[7]

Following the Departing Employees' resignations, Marsh sent correspondence to Aon and the Departing Employees, and engaged with their outside counsel about Marsh's ongoing forensic investigation of the Departing Employees and their post-employment obligations to Marsh.  (SAC ¶¶ 147, 167, 170.)  As alleged by Marsh, the Departing Employees are located across the country, worked in Marsh offices across at least 10 different states, some signed different employment agreements with different restrictive covenants, and in some instances, are subject to different states' laws.  (SAC ¶¶ 47-82.)  While Marsh attaches McDonough's and Hall's employment agreements to the SAC, Marsh tellingly still does not attach any alleged employment agreements of the other Departing Employees.  Nor does Marsh allege specific facts relating to any other employment agreements.

According to Marsh, McDonough's and Hall's employment agreements contain the following relevant provisions: (1) McDonough and Hall are prohibited, through the 12-month period after their employment with Marsh ends, from soliciting clients or prospective clients of

---

[7] *See* Marsh Opp. to Aon Mot. for Temp. Restraining Order, at 8-9, Miami Litigation, Dkt. No. 47 ("Marsh Miami Litigation Opp."), attached hereto as Exhibit A to the Declaration of Joshua A. Dunn; *see also* SAC ¶ 149 n.2 (referencing another Aon employee who formerly worked at Marsh).

Marsh for the purpose of providing the same type of services they provided while at Marsh (this includes certain non-interference, non-supervision, and non-assistance provisions), with respect to clients with whom McDonough and Hall "had contact" or about whom McDonough and Hall obtained Confidential Information and Trade Secrets during the last two years of their employment (SAC ¶¶ 95-96); (2) McDonough and Hall are prohibited, through the 12-month period after their employment with Marsh ends, from soliciting Marsh employees with whom they worked or about whom they obtained Confidential Information and Trade Secrets during the last two years of their employment (SAC ¶¶ 98-99); and (3) McDonough and Hall are prohibited from disclosing Marsh Confidential Information and Trade Secrets other than in connection with Marsh's business or as specifically authorized by Marsh (SAC ¶ 85).

> ### B.    Marsh Conducts a Fruitless Five-Month Long Forensic Investigation of 20 Departing Employees, Yet Finds No Evidence of Any Departing Employee Actually Taking Marsh's Alleged Confidential Information or Trade Secrets.

Despite having conducted a five-month long forensic investigation, Marsh was unable to find *any* evidence of misappropriation of any alleged confidential Marsh information or trade secrets. On April 17, 2025—over one month after the Departing Employees' resignations—Marsh filed its original Complaint against McDonough and Aon, in which Marsh asserted eight different counts all based on the same allegations: McDonough purportedly solicited Marsh's clients or prospective clients and the Departing Employees, McDonough disclosed certain unspecified Marsh Confidential Information, and Aon knew about and was involved in McDonough's alleged misconduct.  (Compl. [ECF No. 1] ¶¶ 94-95.)

On May 29, 2025, Marsh filed an Amended Complaint, adding Hall as a defendant and alleging that, on information and belief, Hall purportedly *accessed* confidential and trade secret information related to an unnamed client, "Client M," to entice Client M to move its surety business from Marsh to Aon.  (Am. Compl. [ECF No. 18] ¶¶ 147-54.)  After Defendants filed a

motion to dismiss the Amended Complaint [ECF No. 39], Marsh filed the SAC.  Marsh has abandoned its claims against Hall for breach of fiduciary duty and faithless servant, as well as its conspiracy claims against all Defendants.

Marsh's misappropriation-based claims against Hall rest on allegations that "in the weeks leading up to his resignation" from Marsh, Hall accessed three documents relating to an unnamed client, "Client M."  (SAC ¶¶ 178-79.)  Notably, there are *no* allegations that Hall copied, downloaded, or transferred any of this information to himself, Aon or anyone else; Marsh merely alleges that Hall accessed it.  Nor does Marsh allege that Hall circumvented any restrictions when accessing this information in the ordinary course of his employment.  In the SAC, Marsh attempts to salvage these claims by adding a vague allegation that "Hall had no legitimate business reason to access" the alleged documents at that specific time, and that Hall "did little else" on his laptop during the four days before he resigned.[8]  (SAC ¶¶ 181-82.)

On these thin allegations, Marsh summarily concludes that "there is no credible explanation for Client M's decision to terminate its business relationship with Marsh *other than* Hall's unlawful solicitation and misappropriation."  (SAC ¶ 186; *see also id.* ¶¶ 185,[9] 187.)

### C.    Neither McDonough Nor Hall Solicits or Services Any Marsh Clients on Behalf of Aon.

Marsh points to only *two* Marsh clients with whom McDonough worked and who left Marsh for Aon.[10]  (SAC ¶¶ 173, 175.)  While Marsh laments that it has "lost the business of at

---

[8] While not pertinent to this motion, or alleged in the SAC, Mr. Hall was, in fact traveling on Marsh business in the four days leading up to his resignation.  Ironically, Marsh has refused to pay Mr. Hall's Marsh-issued corporate credit card bill for these related business charges amounting to approximately $5,000, risking throwing Mr. Hall into collections.

[9] Marsh previously pled this allegation on information and belief.  (*See* Am. Compl. ¶ 149.)

[10] Aon has lost at least one client to Marsh (i.e., Aon has received at least one BOR letter) following one of the four recent departures of Aon employees to Marsh.

least twelve surety clients or client accounts to Aon," (SAC ¶ 201), it does not identify any of those other clients or which Defendant(s) or Departing Employee(s) supposedly wrongfully solicited those clients. Excluding allegations pled on information and belief[11] and conclusory allegations, the other clients referenced (but not identified) by Marsh were, according to Marsh, (i) not serviced by McDonough while he was at Marsh (SAC ¶ 173), (ii) solicited by *Aon* but not by McDonough or the other Departing Employees (SAC ¶¶ 176, 199), (iii) not solicited by *anyone* (SAC ¶¶ 175, 191), or (iv) solicited but did not move to Aon (SAC ¶¶ 192, 198).[12]

### D. Other Departing Employees Are Offered Higher Compensation by Aon and Decide Freely to Leave Marsh, After Which Marsh Hires Four Aon Employees to Replace Them.

Marsh alleges that McDonough improperly disclosed the other Departing Employees' compensation information to Aon because McDonough "had access to this information in the Workday HR platform." (SAC ¶ 154.) Those allegations are not only conclusory, but are contrary to Marsh's positions in the Miami Litigation that such information is publicly available or otherwise readily ascertainable from publicly available information. *See* Marsh Miami Litigation Opp. at 24. Nor was there anything stopping the Departing Employees from disclosing their own compensation information to Aon in an attempt to secure a higher offer.

Marsh's position is indeed rich, given that *after* filing this lawsuit, it hired four Aon employees who worked together within the same group at Aon to join Marsh's C&I and Surety practice. Immediately after one employee left to join Marsh, one of the clients she serviced issued a BOR letter moving its business to Marsh.

---

[11] *See, e.g.*, *id.* (Marsh "knows or reasonably *believes* that Aon and the Departing Employee[s] are actively interfering in Marsh's relationship with at least thirty-two other clients and/or potential clients.")

[12] Defendants will establish at summary judgment or at trial that they are not liable.

**LEGAL STANDARD**

Rule 12(b)(6) requires dismissal of a complaint when its allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "requires more than labels and conclusions"—"formulaic recitation[s]" or "[t]hreadbare recitals" of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678-79.

While the Court must accept as true all specific non-conclusory factual allegations set forth in the complaint, it is "free to disregard legal conclusions, deductions or opinions couched as factual allegations." *Naughright v. Weiss*, 826 F. Supp. 2d, 676, 689 (S.D.N.Y. 2011); *Iqbal*, 556 U.S. at 678. A court must consider whether the complaint has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547.

Here, Marsh's allegations as to critical facts, when made on information and belief, are speculative. While a plaintiff may plead facts alleged upon information and belief where "the belief is based on factual information that makes the inference of culpability plausible, such allegations must be accompanied by a statement of the facts upon which the belief is founded." *MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*, 655 F. Supp. 3d 193, 204 (S.D.N.Y. 2023) (internal quotations omitted). Further, "it is well established that a complaint must at least contain enough factual allegations that are *not* made upon information and belief to raise a right to relief above the

speculative level."[13] *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 427 (S.D.N.Y. 2022) (internal quotations omitted) (emphasis in original).  Marsh does not do so here.

## ARGUMENT

### I.    MARSH'S BREACH OF CONTRACT CLAIMS AGAINST HALL THAT ARE BASED ON HALL'S ALLEGED MISAPPROPRIATION MUST BE DISMISSED (COUNTS III, IV, AND V).

Marsh asserts three breach of contract claims against Hall that are based on Hall's alleged misappropriation of Marsh confidential information and/or trade secrets: breach of the conflict-of-interest provisions in Hall's Non-Solicitation Agreement (Count III); breach of Hall's Confidentiality Agreement (Count IV); and breach of Hall's Supplemental Terms & Conditions of Employment (Count V).  The same allegations underly each claim against Hall—namely, that Hall "used his . . . knowledge of Marsh's confidential information and trade secrets and Marsh's assets through his misappropriation of sensitive information, including information about Client M." (SAC ¶ 235; *see also* SAC ¶¶ 244,[14] 253[15]).   Because Marsh fails to allege that Hall misappropriated any of Marsh's trade secrets or confidential information (*see* Section 5.A., *infra*), it cannot satisfy the "breach" element of each of these three breach of contract claims.[16]  *See Swan*

---

[13] In deciding a motion to dismiss, the Court may consider documents "expressly incorporated by reference" in the complaint, as well as other documents that are nevertheless "integral" to the complaint.  *Ruderman v. Liberty Mut. Grp., Inc.*, 2022 WL 244086, at *1 (2d Cir. Jan. 27, 2022).

[14] "Hall used and disseminated to Aon Marsh's confidential information and/or trade secrets, including foundational client history and account information regarding Client M, for illegitimate purposes and without authorization."

[15] "Hall utilized and shared Marsh's competitively sensitive information, including information related to Marsh's client accounts, for the benefit of a competitor. In so doing, Hall also used and disclosed Marsh information for illegitimate purposes and failed to protect Marsh's intellectual property and confidential information by sharing it with unauthorized parties. Hall further used and disclosed confidential information outside of Marsh to which he had access that was not required to perform his assigned job duties."

[16] Marsh also fails to identify any confidential information that Hall purportedly misappropriated as distinguishable from the alleged trade secrets underlying its DSTA claim.  (SAC ¶¶ 178-79.)

*Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012) (dismissing breach of contract claim where complaint did not specify the actions or inactions of the defendant that constituted breach); *see also Bader v. Wells Fargo Home Mortg., Inc.*, 2012 WL 1428898 at *4 (S.D.N.Y. Apr. 25, 2012) ("essential element" of breach of contract claim is that defendant "in fact failed to perform under a binding contract").

In his Confidentiality Agreement, Hall allegedly agreed not to "use, disseminate or disclose to any other person, organization or entity Confidential Information or Trade Secrets, except as required to carry out [his] duties as an employee of the Company, and except as expressly authorized by the President or highest executive officer of the Company." (SAC ¶ 85.) Because Marsh alleges only that Hall "accessed" certain alleged confidential information or trade secrets while he was still an employee, and not that he improperly used or disclosed them, Marsh cannot state any breach of contract claim against Hall that is based on misappropriation. *See, e.g.*, *Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*, 2023 WL 372883, at *2-3 (S.D.N.Y. Jan. 24, 2023) (granting dismissal where allegations as to breach contradicted "express terms of the Agreement").

Marsh offers only vague, circumstantial allegations that Hall misappropriated its alleged trade secrets and confidential information relating to Client M. *See also* Section V.A, *infra*. Marsh merely alleges that Hall **accessed** information relating to Client M, and then concludes: "Indeed, given the recency of Client M's renewal and the proximity of Hall's access to and departure with Marsh's confidential information and trade secrets to Client M's departure from Marsh, there is no credible explanation for Client M's decision to terminate its business relationship with Marsh *other than* Hall's unlawful solicitation and misappropriation." (SAC ¶ 186.) These allegations are completely conclusory and insufficient to allege misappropriation as a matter of law. *See*

*Affinity LLC v. GfK Mediamark Rsch. & Intel., LLC*, 547 F. App'x 54, 57 (2d Cir. 2013) (affirming dismissal of claim for misappropriation of confidential information where allegations were "entirely conclusory, amounting to little more than a declaration that Defendant *must have* breached the NDA when it launched Starch Syndicated and Ad Measure").

## II. MARSH'S BREACH OF FIDUCIARY DUTY CLAIM AGAINST MCDONOUGH IS DUPLICATIVE OF ITS BREACH OF CONTRACT CLAIMS AND MUST BE DISMISSED AS A MATTER OF LAW (COUNT VII).

The Court should dismiss Marsh's breach of fiduciary duty claim because it is based on the same underlying allegations supporting Marsh's breach of contract claim. *See Cartiga, LLC v. Aquino*, 2025 WL 388804, at *11 (S.D.N.Y. Feb. 4, 2025) (dismissing breach of fiduciary duty claim that was based on same "exact conduct" as breach of contract claim); *see also Oliver Wyman, Inc. v. Adam*, 2016 WL 5339549, at *10 (S.D.N.Y. Sept. 22, 2016) (allegations that employees breached their fiduciary duties by "encouraging each other to resign" were duplicative of allegations that same employees breached their contracts).

The SAC alleges that McDonough breached his fiduciary duties to Marsh by "soliciting Marsh clients to leave Marsh and to move their business to Aon" (SAC ¶ 268), "orchestrating a mass defection to Aon from Marsh's Construction Surety group" (*id.*), and "misusing Marsh confidential information for the benefit of Aon" (*id.*). These are the very same allegations underlying one or more of Marsh's breach of contract claims. (*See* SAC ¶ 213 (alleging solicitation of Marsh's clients); SAC ¶ 223 (alleging solicitation of Marsh's employees); SAC ¶¶ 224, 243 (alleging improper disclosure of Marsh's confidential information).)[17] There are no

---

[17] While Marsh seeks punitive damages in connection with its fiduciary duty claim (SAC ¶ 270), Marsh cannot recover punitive damages as a matter of law. Marsh does not—and cannot truthfully—allege that McDonough's conduct was "aimed at the public generally," as required to obtain punitive damages. *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 448-49 (E.D.N.Y. 2011). Marsh is precluded from recovering punitive damages on any of its tort claims.

factual allegations supporting Marsh's breach of fiduciary duty claim that are different from the allegations giving rise to one or more of the breach of contract claims.  And because a tort claim cannot stand if it is duplicative of a breach of contract claim, *see Cartiga*, 2025 WL 388804, at *11; *Oliver Wyman*, 2016 WL 5339549, at *10, Marsh's breach of fiduciary duty claim against McDonough must be dismissed as duplicative.[18]

## III.    THE SAC FAILS TO STATE A CLAIM AGAINST AON FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY (COUNT XII).

### A.    Marsh Fails to Allege an Underlying Breach of Fiduciary Duty by McDonough.

Marsh's aiding and abetting claim fails because Marsh fails to plead facts supporting at least three elements of the claim.  "A prerequisite to an aiding and abetting claim . . . is an adequately pled claim for the underlying breach of fiduciary duty."  *Watts v. Jackson Hewitt Tax Serv. Inc.*, 675 F. Supp. 2d 274, 280 (E.D.N.Y. 2009); *see also Oliver Wyman*, 2016 WL 5339549, at *10 (dismissal of duplicative claim for breach of fiduciary duty also mandated dismissal of claim for aiding and abetting breach of fiduciary duty); *Kassover v. Prism Venture Partners, LLC*, 862 N.Y.S.2d 493, 498 (App. Div. 2008) (same).  A claim for breach of fiduciary duty requires "(1) the existence of a fiduciary duty owed by the defendant; (2) a breach of that duty; and (3) resulting damages."  *Garvey v. Face of Beauty, LLC*, 2022 U.S. Dist. LEXIS 171182, at *10 (S.D.N.Y. Sept. 21, 2022) (internal quotations omitted).

---

[18] Moreso, Marsh's allegations also fall short of meeting the high bar for alleging a breach of fiduciary duty.  *See, e.g.*, *TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 204 (E.D.N.Y. 2024) (holding that an employee is liable for a breach of fiduciary duty owed to its employer where he or she "commits an unfair, fraudulent, or wrongful act" and that "merely helping to create [a] . . . business plan for [a competing business] does not in itself amount to a breach of the duty of loyalty") (internal quotations and citations omitted).  To the extent Marsh seeks, and the Court grants, leave to further amend—it should not—Defendants reserve the right to seek dismissal of any newly alleged claim for breach of fiduciary duty.

Here, as discussed in Section II, *supra*, Marsh does not adequately plead that McDonough breached any fiduciary duty to Marsh independent of Marsh's breach of contract claims. Because Marsh fails to state a claim against McDonough for breach of fiduciary duty, its corresponding aiding and abetting claim against Aon also fails.

**B.    Marsh Fails to Allege Aon's Substantial Assistance in McDonough's Alleged Breaches.**

Marsh's aiding and abetting claim fails for at least two other independent reasons—it fails to allege (1) that Aon provided substantial assistance to McDonough in breaching his fiduciary duties, and (2) that Aon had knowledge of McDonough's alleged breaches. *See Watts*, 675 F. Supp. 2d, at 281; *see also Plymouth Cap., LLC v. Montage Fin. Grp., Inc.*, 219 N.Y.S.3d 372, 376 (App. Div. 2024).

To plead substantial assistance, Marsh must allege that Aon "affirmatively assist[ed], help[ed] conceal or fail[ed] to act when required to do so, thereby enabling [McDonough's] breach to occur." *Watts*, 675 F. Supp. 2d at 281 (internal citation omitted). Marsh fails to do so. The current iteration of Marsh's breach of fiduciary duty claim is based on McDonough's allegedly "soliciting Marsh's clients away from Marsh to do business with Aon while McDonough was still employed by Marsh." (SAC ¶ 309.) But in support of this conclusion, Marsh offers only conclusory allegations and speculation. For example, Marsh alleges that "Aon directly participated in the solicitation of Marsh clients prior to McDonough's departure, including going so far as assisting in the preparation of BORs for Marsh's existing clients to send once the Departing Employees announced their resignations." (SAC ¶ 311.) To support this conclusion, Marsh cites to paragraphs 175-76 of the SAC, which merely allege that **one** Marsh client notified Marsh that "it would be terminating its agreement with Marsh and wanted 'immediate revocation of all [BOR] letters previously provided to Marsh,'" and that the client "then moved its business

from Marsh to Aon." To the extent that Aon prepared a BOR, that BOR was prepared at the request of Marsh's former client, after the client had already decided to move its business—consistent with the client's alleged statement made to Marsh. In other words, Marsh's broad, conclusory statement in paragraph 309 is unsupported and is insufficient to state a claim.

Courts have dismissed aiding and abetting claims premised on similar allegations. For example, in *Q3 Resources, Inc. v. Navigant Consulting, Inc.*, plaintiff alleged that defendant "knowingly participated and assisted Haywood in breaching his fiduciary duties to [Plaintiff by] negotiating with Makin and Haywood even as [Defendant] was ostensibly negotiating the purchase of [Plaintiff]; hiring Haywood on the condition and understanding that he would not honor his fiduciary duties and actively breach the protective provisions in his Haywood Agreement; encouraging, instigating, and supporting Haywood's other breaches of fiduciary duty." 2019 U.S. Dist. LEXIS 108835, at *6 (S.D.N.Y. June 27, 2019). The court dismissed the aiding and abetting claim, determining that, other than the plaintiff's "speculation, there are no factual allegations that Haywood or any of the other [Plaintiff] executives solicited or encouraged other [Plaintiff] employees or clients to go to [Defendant]." *Id.* at *13; *see also Watts*, 675 F. Supp. 2d at 281 (defendants "set forth no sworn allegations of fact, however, indicating ***how*** plaintiffs 'substantially assisted' the unnamed employees in obtaining the documents") (emphasis added).

Similarly, Marsh offers nothing more than conclusory allegations and speculation: "The timing of this client's departure from Marsh the day after McDonough's resignation, but before his last day of employment with Marsh, makes obvious the fact that McDonough solicited this client on behalf of Aon while still on Marsh's payroll." (SAC ¶ 175); "The suspicious timing of these and other client moves—occurring when news of the resignations had barely begun to circulate in the broader market—strongly suggest they were spurred by improper direct and

17

indirect solicitation of the clients by McDonough and other Departing Employees with the aid and encouragement of McDonough and Aon." (SAC ¶ 200.) These allegations fail to state a claim.

To the extent McDonough shared with Aon confidential Marsh client information—he did not—the "mere inaction" of allegedly receiving unspecified Marsh Confidential Information would constitute substantial assistance "only if [Aon] owes a fiduciary duty directly to [Marsh]," which it does not. *Watts*, 675 F. Supp. 2d at 281. Marsh does not, and cannot, allege that Aon provided substantial assistance to McDonough in his alleged breaches.

### C. Marsh Fails to Allege That Aon Had Actual Knowledge of McDonough's Alleged Breaches.

A claim for aiding and abetting "does not encompass a 'should have known' standard." *Lindberg v. Dow Jones & Co.*, 2021 WL 3605621, at *14 (S.D.N.Y. Aug. 11, 2021) (internal citation omitted). "Actual knowledge, not mere notice or unreasonable unawareness, is therefore essential." *Id.*; *see also Krys v. Butt*, 486 F. App'x 153, 157 (2d Cir. 2012) ("Constructive knowledge of the breach of fiduciary duty by another is legally insufficient to impose aiding and abetting liability.").

Actual knowledge "cannot be alleged 'on information and belief' or 'according to standard industry practice.'" *Lindberg*, 2021 WL 3605621, at *14 (internal citation omitted). But Marsh attempts to do just that. Marsh alleges that "McDonough's and Hall's contracts are standard in the industry," and that Aon also has certain employees execute similar agreements. (SAC ¶ 147.) This falls short of alleging that Aon actually knew about McDonough's alleged fiduciary breaches. Marsh's other allegations are conclusory and speculative: "Aon had actual knowledge of McDonough's fiduciary duty and breach because it knew of McDonough's relationship as a high-ranking employee of Marsh." (SAC ¶ 310); "McDonough's inclusion on the email thread from the

client's reply to Aon with an executed authorization letter for Aon's Construction and Surety Practice demonstrates Aon's knowledge of McDonough's breach . . . ." (SAC ¶ 311).

While Marsh alleges that, on March 20, 2025 (after all of the Departing Employees had already resigned from Marsh), Aon "acknowledged that it had reviewed the Agreements and discussed them with the Departing Employees," (SAC ¶ 147), that alone "is not enough to show [Aon] actually knew about and procured a breach of [McDonough's] fiduciary obligations." *Q3 Res., Inc.*, 2019 U.S. Dist. LEXIS 108835, at *13-14 (access to former employee's employment agreement and plaintiff's ownership information were insufficient to state aiding and abetting claim).

## IV. THE SAC FAILS TO STATE A CLAIM AGAINST MCDONOUGH FOR "BREACH" OF THE FAITHLESS SERVANT DOCTRINE (COUNT VIII).

Marsh again asserts a claim against McDonough under the "faithless servant" doctrine, but once again, this claim fails. To establish this claim, Marsh must plead facts showing a "persistent pattern" of misconduct during employment. *JAPNA, Inc. v. SELFX Innovations Inc.*, 2024 WL 1250269, at *9 (S.D.N.Y. Mar. 22, 2024). Under New York law, there are two standards for determining whether an employee's conduct is encompassed by the faithless servant doctrine: (1) "misconduct and unfaithfulness substantially violat[ing] the contract of service which requires a persistent pattern," also known as the *Turner* standard, and (2) "misconduct by an employee that rises to the level of a breach of a duty of loyalty or good faith," i.e., a breach of fiduciary duty, also known as the *Murray* standard. *JAPNA*, 2024 WL 1250269, at *9; *see also Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 237-38 (2d Cir. 2020) (discussing the *Turner* and *Murray* standards). Under either standard, Count VIII must be dismissed because Marsh cannot allege a "persistent pattern" of misconduct by McDonough, and the faithless servant claim is duplicative of Marsh's breach of fiduciary duty claim.

**A.    Marsh Fails to Meet the High Bar for Pleading a "Persistent Pattern" of Misconduct During McDonough's Employment.**

The faithless servant doctrine is limited to extreme misconduct—it requires a "persistent pattern" of misconduct during employment. *JAPNA*, 2024 WL 1250269, at *9. A disloyal employee forfeits promised compensation only when the "misconduct and unfaithfulness . . . substantially violates the contract of service." *Feldman*, 977 F.3d at 240 (quoting *Turner v. Konwenhoven*, 100 N.Y. 115, 120 (1885)). In *Feldman*, the Second Circuit affirmed the district court's jury instruction regarding the faithless servant doctrine after determining that the defendant's embezzlement of $2.6 million "was not necessarily 'substantial' as a matter of law." 977 F.3d at 240.

Here, the alleged misconduct is alleged by Marsh as being isolated to only a few weeks when McDonough was preparing to leave Marsh. (*See* SAC ¶ 152 ("At least as early as February [2025], Aon and McDonough began targeting select Marsh employees—including Hall."); SAC ¶ 43 (McDonough resigned on March 10, 2025).) Such a brief time period does not amount to a "persistent pattern." This Court has previously determined that allegations that defendants set up a competing business during a similar span of time failed to allege the required "pattern." *See MThree Corp. Consulting Ltd. v. Wascak*, 2022 WL 15524842, at *5 (S.D.N.Y. Oct. 27, 2022) (dismissing complaint because it contained "no allegations of a 'pattern of disloyalty,' let alone a 'persistent pattern,'" where conduct complained of occurred during a six-week period). Similarly, here, Marsh's allegations fall short of any "persistent pattern" of misconduct.

Moreover, McDonough's alleged misconduct does not rise to the level of severity that this Court requires to state a faithless servant claim. In *Gravitas Search Partners LLC v. Deutsch*, for example, the plaintiff alleged that the defendant "neglected her work responsibilities and instead created Premium Partners," a competing business. 2025 WL 2243720, at *14 (S.D.N.Y. Aug. 6,

20

2025) (denying motion to dismiss).  "Far more than an isolated incident, [defendant's] misconduct extended for months and substantially interfered with her obligations to Plaintiff."  *Id.*  Here, on the other hand, the SAC is devoid of any allegations approaching such level of misconduct.  To the contrary, Marsh speculates or assumes only that "McDonough ***could only have been*** working in close collaboration with Aon . . . prior to his resignation."  (SAC ¶ 275 (emphasis added).)

Further, the SAC's own allegations undermine Marsh's faithless servant claim.  First, Marsh alleges that, "just thirty-two days" before he resigned from Marsh, McDonough "sought to enforce" contractual obligations owed to Marsh by a former employee.  (SAC ¶¶ 39-41.)  Second, Marsh alleges that, in early 2025 (a little more than a month before McDonough's departure), "McDonough argued that one of the Departing Employees, Noonan, should receive a retention bonus award," warning Marsh that "a move [by Noonan] would definitely put us at considerable risk around many of these accounts."  (SAC ¶ 156.)  McDonough also allegedly advised others at Marsh about the "importance" of these employees "to the long-term success of Marsh's business." (*Id.*)  Marsh itself alleges that McDonough was attempting to ***help***, not harm, Marsh's business multiple times within about one month of his departure.  This is not a persistent pattern of "misconduct and unfaithfulness substantially violat[ing] [McDonough's] contract of service." *Feldman*, 977 F.3d at 237 (quoting *Turner*, 100 N.Y. at 120).

**B.    Marsh's Faithless Servant Claim Is Duplicative of Its Breach of Fiduciary Duty Claim and Must Be Dismissed as a Matter of Law.**

As an alternative to the "persistent pattern" theory, the faithless servant doctrine provides the basis "for a claim for breach of duty of loyalty where the employee has acted directly against the employer's interests—as in embezzlement, improperly competing with the current employer, or usurping business opportunities."  *Beach v. Touradji Cap. Mgmt., LP*, 203 N.Y.S.3d 324, 325

(App. Div. 2024) (affirming dismissal of affirmative defense based on faithless servant doctrine); *see also Feldman*, 977 F.3d at 237 (discussing *Murray v. Beard*, 102 N.Y. 505, 508 (1886)).

Where, as here, the SAC's "factual allegations in support of both claims are coterminous, and both rest on the charge of disloyalty," courts will dismiss the duplicative claim. *Ebel v. G/O Media, Inc.*, 2021 WL 2037867, at *7 (S.D.N.Y. May 21, 2021) (dismissing duty of care claim as duplicative of "breach of fiduciary duty of loyalty/faithless servant" claim). In *Ebel*, the plaintiff employee sued her employer for discrimination, retaliation and other employment-related claims. The employer defendants filed a counterclaim under the faithless servant doctrine, and the court determined that the former employer defendants did not allege "any specific facts," but rather "simply assert[ed] that [the former employee] breached her fiduciary duty of care 'by disregarding and acting disloyally and directly against the interests of the corporation.'" *Id.* The court had already determined, in the context of the "breach of fiduciary duty of loyalty/faithless servant" claim, that the former employers had failed to plausibly allege that the former employee acted disloyally or against their interests. In light of the identical allegations underpinning both claims, "the failure of one, in this case, entails the failure of the other." *Id.* So too, here.

Similarly, here, both of Marsh's faithless servant and breach of fiduciary duty claims are based on the same allegations relating to McDonough's duty of loyalty, including the alleged violation of McDonough's client and employee non-solicitation covenants. In support of its faithless servant claim, Marsh alleges that McDonough breached his duty of loyalty to Marsh by "soliciting Marsh clients and employees and other misconduct associated with the planned raid on

Marsh's Construction Surety group." (SAC ¶ 275.) These are the exact same allegations underlying Marsh's breach of fiduciary duty claim.[19] (*See* SAC ¶ 268.)

## V. THE SAC FAILS TO STATE CLAIMS AGAINST HALL AND AON FOR TRADE SECRET MISAPPROPRIATION UNDER THE DTSA (COUNT XIII).

### A. Marsh Fails to Allege Misappropriation of Any Trade Secret by Hall.

The DTSA defines "misappropriation" to mean "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5). "Improper means" includes "theft, bribery, misrepresentation, [and] breach or inducement of a breach of a duty to maintain secrecy." *Id.* Thus, the DTSA contemplates "three theories of liability:" (1) acquisition by improper means, (2) disclosure without consent, or (3) use without consent. *Kumaran v. Nat'l Futures Ass'n, LLC*, 2022 WL 1805936, at *5 (S.D.N.Y. June 2, 2022). Marsh fails to allege facts supporting any of these theories of misappropriation.

Here, Marsh offers only vague, circumstantial allegations that Hall misappropriated its alleged trade secrets. The SAC alleges that, "In the days leading up to his resignation, Hall repeatedly accessed Marsh trade secrets, including but not limited to financial data, competitive pricing and compensation arrangements, detailed descriptions of Marsh proprietary systems, tools, and technologies, as well as client-specific information and preferences that are not accessible to the public and which were Marsh's trade secrets." (SAC ¶ 9.) Marsh then deduces that the "solicitation of Client M was made possible by Hall's improper and unauthorized access and

---

[19] Similarly, Marsh's faithless servant claims are also duplicative of its breach of contract claims. *Cf. Worldcare Int'l, Inc. v. Kay*, 989 N.Y.S.2d 495, 497 (App. Div. 2014) (faithless servant claim was not duplicative only because there was a "bona fide dispute as to the validity and enforceability" of the employment manual that was the subject of the breach of contract claim).

usurpation of Marsh's trade secrets, in violation of Hall's duties to serve the ends of his fiduciary relationship with Marsh." (SAC ¶ 187.) These allegations, however, fail to state a DTSA claim for two reasons.

First, the SAC's allegations of use or disclosure without consent are based solely on information and belief. Marsh merely theorizes, and asks this Court to *infer*, that Hall must have used or disclosed Client M's information simply because Client M moved its business from Marsh to Aon: "Hall deliberately exploited this information, at the encouragement of Aon, by using it to divert Client M's business . . . . [T]here is no credible explanation for Client M's decision to terminate its business relationship with Marsh *other than* Hall's unlawful solicitation and misappropriation." SAC ¶¶ 185-86. These allegations are insufficient as a matter of law. *See Affinity LLC v. GfK Mediamark Rsch. & Intel., LLC*, 547 F. App'x 54, 57 (2d Cir. 2013) (affirming dismissal of claim for misappropriation of confidential information where allegations were "entirely conclusory, amounting to little more than a declaration that Defendant *must have* breached the NDA when it launched Starch Syndicated and Ad Measure"). Simply deleting the words "on information and belief" from its Amended Complaint, without adding any nonconclusory allegations, does not relieve Marsh of its pleading burden. (*Compare* Am. Compl. ¶ 149, *with* SAC ¶ 185.) *Cf. MedQuest Ltd. v. Rosa*, 2023 WL 2575051, at *6 (S.D.N.Y. Mar. 20, 2023) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory.") (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018)). Accordingly, the SAC fails to allege that Hall "used" or "disclosed" the alleged trade secrets.

*MedQuest*, 2023 WL 2575051, is instructive on this point. There, the plaintiff claimed that two of its former employees misappropriated an expert database and lawyer list to which only they

were provided password-protected access.  *Id.* at *1.  The court held that the complaint failed to adequately allege improper "use of a trade secret" because the plaintiff "did not directly allege that [Defendants] ***used*** the lawyer list or the expert database list in their new business.  Instead, the plaintiff asks the Court to ***infer*** that they did so" because the defendants referred clients to experts on the plaintiff's list, and the plaintiff's Expert Service business had diminished.  *Id.* at *6-7 (emphasis added).  So too, here.  Thus, the DTSA claim against Hall must be dismissed.

Second, Marsh falls far short of alleging misappropriation by Hall using improper means, which is required to state a DTSA claim.  *Kumaran*, 2022 WL 1805936, at *5.  After five months of detailed forensics examination on Hall's company-issued devices, Marsh's most damning evidence of Hall's alleged misappropriation is that he accessed information while doing his job at Marsh.  Marsh alleges: "[I]n the weeks leading up to his resignation, Hall used his company-issued laptop to access confidential information and trade secrets related to a specific Marsh client ('Client M'), including financial and payment data, as well as client-specific information and preferences that are not accessible to the public and which were Marsh's trade secrets."  (SAC ¶ 178.)  Marsh then admits that "Hall was the business lead for Client M while he was employed by Marsh."  (SAC ¶ 181.)  Alleging that Hall accessed client information ***while he still serviced that client as an employee of Marsh*** does not equate to alleging improper means, as Hall's access was authorized by and consistent with his status as an employee.  *See AD Lightning Inc. v. Clean.io, Inc*., 2020 U.S. Dist. LEXIS 141311, at *9 (S.D.N.Y. Aug. 7, 2020) (dismissing DTSA claim for failure to allege improper means where plaintiff alleged merely that employees had access to information).

Marsh attempts to plead around this defect by asserting with no explanation or basis that "Hall had no legitimate business reason to access" the alleged trade secrets because "Client M had

renewed their business with Marsh just three months prior" and that he "did little else on his [Marsh] laptop" for the next four days before resigning.  (SAC ¶¶ 181-82.)  These allegations do not save Marsh's DTSA claim.  Hall was still "authorized to acquire this information as part of his job, so he did not acquire it by improper means."  *Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 405 (S.D.N.Y. 2021) (internal citation omitted).  In *Zurich*, the plaintiff employer failed to allege that a former paralegal misappropriated its trade secrets when he allegedly forwarded confidential company materials to his personal email account, and then following his termination "threaten[ed] to keep" the trade secrets unless the company entered into a favorable settlement with him.  *Id.* at 399-401.

Here, as in *Zurich*, there is no allegation that Hall evaded any restrictions put in place by Marsh that would have otherwise barred him from accessing or downloading the alleged trade secrets.  *See also Superb Motors Inc. v. Deo*, 776 F. Supp. 3d 21, 81 (S.D.N.Y. 2025) ("Ultimately, Plaintiffs' vague assertions that their alleged trade secrets were only accessible to employees who had a need for the information for work purposes are entirely vague and not enough to state a claim.").

Marsh has had Mr. Hall's Marsh-issued smartphone and laptop for five months—more than enough time to forensically examine the devices for any real evidence—yet the most Marsh can conjure up is that he accessed work information while he was still employed by Marsh.  This does not constitute trade secret misappropriation.  At bottom, the SAC "contains no facts as to how [Hall] personally improperly acquired, disseminated or used [Marsh's] trade secrets," and instead "relies solely on a number of threadbare and conclusory allegations."  *Kumaran*, 2022 WL 1805936, at *6 (quoting R&R and dismissing DTSA claim).  The DTSA requires not just any use of a trade secret, but one that constitutes a "misappropriation."  *Nagel*, 538 F. Supp. 3d at 405.

Accordingly, Marsh's DTSA claim against Hall must be dismissed for failure to plausibly allege misappropriation.

**B.    Marsh Fails to Allege Misappropriation by Aon.**

Marsh's sole allegation of misappropriation by Aon is the conclusory (and jointly pled) allegation that "Hall and Aon misappropriated Marsh's trade secrets and improperly used Marsh's trade secrets for the benefit of Aon and at the expense of Marsh, without Marsh's consent." (SAC ¶ 327.)  This allegation is even weaker than Marsh's allegation relating to Hall's "access" of specific documents, as Marsh cannot even allege that Aon specifically acquired ***any*** specific information belonging to Marsh, let alone the purported "trade secrets" alleged in paragraph 151.

While Marsh is far from clear regarding what Aon allegedly misappropriated, to the extent Marsh's claim against Aon is based on Hall's alleged ***access*** of Client M's information ***while he was servicing that client for Marsh***, Marsh does not allege how Aon even acquired this information or if it did (which it did not), how Aon allegedly used it.  Even if Marsh were capable of alleging a DTSA claim against Hall—it is not—Aon cannot be "brought into a trade secret misappropriation case simply by offering employment to an employee who has been disloyal to his or her former employer."  *See R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 207 (W.D.N.Y. 2020) (dismissing DTSA claim against new employer who merely hired former employees that had misappropriated plaintiff's trade secrets).  Aon's merely hiring Hall, after which Client M moved from Marsh to Aon, is not sufficient to state a claim under the DTSA.  *See id*.

Accordingly, Marsh's DTSA claim against Aon must be dismissed for failure to plausibly allege misappropriation.

## VI.  THE SAC FAILS TO STATE CLAIMS AGAINST AON AND MCDONOUGH FOR TORTIOUS INTERFERENCE WITH CONTRACT (COUNT XI).

To adequately plead tortious interference with contract, Marsh must plausibly allege "(1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach; and (4) damages." *Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 474 (S.D.N.Y. 2013) (quoting *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 285 (2d Cir. 2006)).

The Court should dismiss this claim because the SAC lacks any specific facts about which Departing Employees, other than McDonough[20] and Hall, allegedly breached their purported contracts with Marsh or how those contracts were allegedly breached. Instead, Marsh offers only a formulaic statement that a breach occurred and improperly lumps all 20 Departing Employees together. (*See* SAC ¶ 302.)  This is insufficient. Courts require plaintiffs at the pleading stage to do more so that courts (and defendants) can assess the threshold issue of whether "Defendants' activities procured a breach of those contracts." *Bose v. Interclick, Inc.*, 2011 WL 4343517, at *10 (S.D.N.Y. Aug. 17, 2011) (dismissing tortious interference with contract claim where plaintiff "just claims generally that Plaintiff had contracts with various website operators which were all breached"). In *Aniero Concrete Company v. New York City Construction Authority*, for example, the court dismissed plaintiff's tortious interference with contract claim because the complaint failed to "assert that SCA, the party with which [plaintiff] was contracting, breached its obligations under the contract at issue." 1997 WL 3268, at *19 (S.D.N.Y. Jan. 3, 1997). And "[a]bsent a

---

[20] As a matter of law, McDonough cannot tortiously interfere with his own contract. *Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 640 (S.D.N.Y. 2018), *aff'd*, 751 F. App'x 69, 74 (2d Cir. 2018).  It is "well settled" that a claim for tortious interference "lies only against a stranger to the contract." *Casanas v. Casanas*, 187 N.Y.S.3d 207, 209 (App. Div. 2023) (affirming denial of motion to amend complaint to add tortious interference claim).

showing that [defendant's] conduct ultimately led to a breach, [plaintiff's] latest allegations cannot be read to state a proper claim for tortious interference." *Id.*

Here, with no details about which of the Departing Employees breached which agreements with Marsh (outside of McDonough and Hall) or how they breached those contracts, neither this Court nor the Defendants can evaluate whether the allegedly-interfered-with contracts were actually breached or whether any allegedly breached contract between Marsh and the Departing Employees is valid. This failure is particularly problematic because the alleged interference involves contracts between Marsh and 20 different employees. (SAC ¶¶ 37-82.) These employees live in different states, were hired at different times, and had different roles at Marsh (*id.*)—these differences likely mean any agreements with each of these 20 different Departing Employees include different terms and/or are governed by different laws. Yet Marsh purports to identify a breach by each Departing Employee with a single conclusory allegation that *all* of the Departing Employees breached their non-solicitation covenants by soliciting Marsh clients and Marsh employees. (SAC ¶ 302 ("The Departing Employees . . . violated the non-solicitation and/or non-disclosure covenants contained in their employment agreements with Marsh by soliciting Marsh clients to move their business from Marsh to Aon, by soliciting Marsh employees to join Aon, and/or by disclosing Marsh's confidential information for Aon's benefit.").)

As one example of the pleading deficiency caused by lumping all 20 Departing Employees together, the allegations ignore that three of the Departing Employees worked for Marsh in California. (SAC ¶¶ 55, 57, 61.) This matters because even if these California Departing Employees' alleged contracts with Marsh included post-employment non-solicitation covenants, California Business and Professions Code section 16600 bars both employee non-solicitation

provisions[21] and customer non-solicitation provisions of the types alleged to have been breached here.[22] To the extent Marsh attempts to avoid these issues by pointing to choice-of-law provisions that select non-California states, *e.g.*, SAC ¶ 58 (alleging an agreement with a California employee "would be governed by New York law"), California law voids those provisions and renders them unlawful. Cal. Lab. Code § 925(a); Cal. Bus. & Prof. Code §§ 16600.1, 16600.5.

In sum, the Court should dismiss this claim because the SAC does not identify which Departing Employees allegedly breached their alleged contract(s) with Marsh or offer any facts to show any such breach.

## VII. THE SAC FAILS TO STATE CLAIMS AGAINST AON, MCDONOUGH, AND HALL FOR TORTIOUS INTERFERENCE WITH MARSH'S BUSINESS RELATIONSHIPS (COUNT X).

To adequately plead tortious interference with business relationships, Marsh must plausibly allege: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Katz v. Travelers*, 241 F. Supp. 3d 397, 404 (E.D.N.Y. 2017) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)).

Further, "the defendant's conduct must amount to a crime or an independent tort, or some 'wrongful means,' or the defendant must have acted 'solely out of malice.'" *Corning Inc. v.*

---

[21] *See, e.g.*, *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 936 (2018) (holding a "nonsolicitation of employee provision . . . void under section 16600"); *Race Winning Brands, Inc. v. Gearhart*, 2023 WL 4681539, at *11 (C.D. Cal. Apr. 21, 2023) (dismissing with prejudice breach of contract claim because one-year post-employment covenant not to solicit employees is void under California law).

[22] *See, e.g.*, *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 948 (2008) (concluding a "noncompetition agreement was invalid" under section 16600 because the agreement restricted employees "from performing work for [a former employer's] clients").

*Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 215 (W.D.N.Y. 2021) (citing *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004)); *Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 435 (S.D.N.Y. 2007) (same). "'Wrongful means' include 'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions' and 'extreme and unfair economic pressure.'" *Corning*, 546 F. Supp. 3d at 215. On the other hand, "[i]f the defendant's 'motive in interfering . . . was normal economic self-interest,' the defendant did not use unlawful means." *Id.*; *Masefield AG v. Colonial Oil Indus.*, 2006 WL 346178, at *8-9 (S.D.N.Y. Feb. 15, 2006) (dismissing claim where parties acted in furtherance of their own economic interests as competitors, without allegations of malice or any fraudulent or criminal conduct). Given these requirements to sufficiently allege tortious interference, it is "very difficult to sustain such a claim." *Cartiga, LLC v. Aquino*, 2025 WL 388804, at *10 (S.D.N.Y. Feb. 4, 2025) (internal quotation marks and citation omitted).

Marsh's claims fail because the SAC's allegations cannot satisfy the wrongful means element. Here, Marsh formulaically recites the elements, with no supporting allegations of fact, alleging that "McDonough, Hall, and Aon, directly or indirectly, intentionally and with malice . . . interfered with Marsh's existing and prospective business relationships, causing existing and prospective clients to leave Marsh using unfair or improper means, including but not limited to improper use of Marsh's trade secrets and confidential information, and/or with the intent to interfere with such relationships." (SAC ¶ 290.) As discussed *supra*, Section I, Marsh fails to allege that Hall misappropriated any Marsh confidential information. And, as discussed *supra*, Section V, Marsh fails to allege that Aon and Hall misappropriated any Marsh trade secrets. Accordingly, Marsh's conclusory allegation, devoid of any allegation of fact, cannot satisfy "the demanding standard required to state a claim for this tort." *Cartiga*, 2025 WL 388804, at *10

(dismissing the claim where plaintiff failed to allege that defendant was "motivated solely by the desire to harm and not with a permissible purpose, such as normal economic self-interest") (internal quotation marks omitted).

Courts regularly dismiss tortious interference with prospective business relations claims where, as here, the complaint "contains no factual allegations that give rise to the inference that the City acted for a wrongful purpose or used dishonesty, unfair, or improper means." *Chahine v. City of New York*, 2020 WL 2555228, at *4 (S.D.N.Y. May 20, 2020); *see also Vinas*, 499 F. Supp. 2d at 434 ("Vinas does not allege, aside from conclusory allegations, that Chubb acted 'solely out of malice.' Indeed, Chubb's economic motivation, even if somewhat attenuated from the Vinas–Angeliades relationship, counsels against such a finding of malice.").

## VIII. THE SAC FAILS TO STATE CLAIMS AGAINST AON, MCDONOUGH, AND HALL FOR UNFAIR COMPETITION (COUNT IX).

To state a claim for unfair competition, Marsh must allege that Defendants "misappropriated Plaintiff's labor, skills, expenditures or good will, and displayed some element of bad faith in doing so." *TileBar*, 723 F. Supp. 3d at 199. As a threshold matter, Marsh's unfair competition claim is premised on Marsh's other claims and fails because those underlying claims fail. Specifically, Marsh alleges that McDonough unfairly competed with Marsh *by* breaching his contractual obligations and fiduciary duties (SAC ¶ 281), that Hall unfairly competed with Marsh *by* breaching his contractual obligations (SAC ¶ 282), and that Aon unfairly competed with Marsh *by* aiding and abetting McDonough's breaches of fiduciary duties and conspiring to interfere with Marsh's business relationships and contracts (SAC ¶ 283) (emphases added). For all of the same reasons described above for why those claims should be dismissed, so too must Marsh's unfair competition claims be dismissed.

Moreover, Marsh's unfair competition claims against McDonough and Hall fail for the additional independent reason that they are duplicative of Marsh's breach of contract claims against them. *TileBar*, 723 F. Supp. 3d at 200 ("[T]o the extent that the unfair competition claim is premised on Defendants' use of information that is confidential but not a trade secret, it is duplicative of Plaintiff's contract claims."); *see also Quest Partners LLC v. Brugman*, 204 N.Y.S.3d 923, 2024 WL 952685, at *2 (Sup. Ct. Feb. 29, 2024). Marsh's unfair competition claim against McDonough also fails as duplicative of its breach of fiduciary duty claim against McDonough. *Cf. Rinaldi v. SCA La Goutte, D'Or*, 2020 WL 5441290, at *1 (S.D.N.Y. Sept. 9, 2020) (dismissing claims for breach of fiduciary duty and unfair competition as duplicative of breach of contract claim).

Finally, Marsh's unfair competition claim against Aon fails as duplicative of its claims for aiding and abetting McDonough's breach of fiduciary duty, tortiously interfering with Marsh's business relationships, and tortiously interfering with Marsh's contracts. *Cf. Saulsbury v. Durfee*, 162 N.Y.S.3d 614, 620 (App. Div. 2022) (claims for unfair competition and tortious interference with prospective business relations should have been dismissed as duplicative of breach of contract claim).

## CONCLUSION

At most, this is a contract dispute, and Defendants are confident they will prevail after the pleading stage. For the reasons set forth herein, Defendants respectfully request that the Court (a) grant Defendants' motion to dismiss; (b) dismiss Counts III, IV, and V of the SAC as against Hall with prejudice; (c) dismiss Counts VII, VIII, IX, X, XI, XII, and XIII of the SAC in their entirety with prejudice; and (d) award Defendants any further relief the Court deems just and proper.

Dated:    August 29, 2025
          New York, New York

Respectfully submitted,

VEDDER PRICE P.C.                          O'MELVENY & MYERS LLP

By: _/s/ Joshua A. Dunn_____
     Joshua A. Dunn                        David S. Almeling (admitted *pro hac vice*)
     jdunn@vedderprice.com                 dalmeling@omm.com
     Courtney M. Brown                     Christopher B. Phillips (admitted *pro hac vice*)
     cmbrown@vedderprice.com               cphillips@omm.com
     Elvira Razzano                        Two Embarcadero Center, 28th Floor
     erazzano@vedderprice.com              San Francisco, California 94111
     1633 Broadway, 31st Floor             Telephone:  +1 415 984 8700
     New York, New York 10019
     T:  +1 212 407 7700                   Eric Amdursky (admitted *pro hac vice*)
     F:  +1 212 407 7799                   eamdursky@omm.com
                                           Ramon Ramirez (admitted *pro hac vice*)
     Jeanah Park (admitted *pro hac vice*)  rramirez@omm.com
     jpark@vedderprice.com                 2765 Sand Hill Road, 1st Floor
     222 N. LaSalle Street                 Menlo Park, California 64025-7019
     Chicago, Illinois  60601              Telephone:  +1 650 473 2600
     T:  +1 312 609 7500
     F:  +1 312 609 5005


     *Counsel for Defendants Aon Risk Services*     *Counsel for Defendants Aon Risk Services*
     *Companies, Inc., Robert McDonough, and*       *Companies, Inc., Robert McDonough, and*
     *Danny Hall*                                   *Danny Hall*

34

## <u>WORD COUNT CERTIFICATION</u>

I, Joshua A. Dunn, certify that according to the word count of the word-processing program used to prepare the foregoing memorandum of law, and exclusive of the portions of it that are excluded by Local Rule 7.1 and this Court's Individual Rule 5.A., there are 10,627 words in the memorandum of law.

*/s/ Joshua A. Dunn*
Joshua A. Dunn
