UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARSH USA LLC,

                Plaintiff,

      V.

AON RISK SERVICES COMPANIES, INC.,
ROBERT MCDONOUGH, and DANNY HALL

            Defendants.

Case No. 25-cv-3241-JAV-HJR

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

LEGAL STANDARD............................................................................................................... 2

ARGUMENT ......................................................................................................................... 3

    I.     The Complaint states claims for breach of contract against Hall (Counts III, IV, and V). ........................................................................................... 3

    II.    The Complaint states a breach of fiduciary duty claim against McDonough (Count VII)........................................................................................ 6

        A.    McDonough's fiduciary duties arise from the employer-employee relationship, independent of his contracts................................ 6

        B.    The factual allegations supporting Marsh's fiduciary duty claim and contract claims against McDonough are not duplicative. ................... 9

    III.   The Complaint states a claim for aiding and abetting breach of fiduciary duty (Count XII). ..................................................................................... 10

        a.    The Complaint alleges Aon substantially assisted McDonough's breach................................................................. 11

        b.    The Complaint alleges Aon knew of McDonough's breaches.......................................................................... 14

    IV.   The Complaint states a claim for breach of the faithless servant doctrine (Count VIII). ..................................................................................... 16

        A.    Marsh alleges a "persistent pattern" of misconduct and satisfies both alternative standards to state a faithless servant claim. ................... 16

        B.    Marsh's faithless servant claim is not duplicative of its fiduciary duty claim.......................................................................... 20

    V.    The Complaint states a claim for trade secret misappropriation (Count XIII). ............................................................................................ 21

        A.    Marsh alleges Hall "misappropriated" Marsh's trade secrets................. 21

        B.    Marsh alleges Aon "misappropriated" Marsh's trade secrets................. 24

    VI.   The Complaint states a claim for tortious interference with contract (Count XI)............................................................................................... 26

    VII.   The Complaint states a claim for tortious interference with business relationships  (Count X)....................................................................... 28

    VIII.  The Complaint states a claim for unfair competition (Count IX)........................ 29

CONCLUSION..................................................................................................................... 32

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*,
2023 WL 372883 (S.D.N.Y. Jan. 24, 2023) ............................................................6

*Advance 2000, Inc. v. Harwick*,
2019 WL 6725977 (W.D.N.Y. Dec. 11, 2019).......................................7, 8, 30, 31, 32

*Affinity LLC v. GfK Mediamark Rsch. & Intel., LLC*,
547 F. App'x 54 (2d Cir. 2013) .................................................................5, 24

*All R's Consulting, Inc. v. Pilgrims Pride Corp.*,
2008 WL 852013 (S.D.N.Y. Mar. 28, 2008).................................................28, 29

*Am. Baptist Churches v. Galloway*,
271 A.D.2d 92 (1st Dep't 2000) ...............................................................13

*Anemone v. Metro. Transp. Auth.*,
2008 WL 1956284 (S.D.N.Y. May 2, 2008) ...................................................13

*Aniero Concrete Co. v. N.Y.C. Constr. Auth.*,
1997 WL 3268 (S.D.N.Y. Jan. 3, 1997) .......................................................28

*Aon Risk Servs. v. Cusack*,
946 N.Y.S.2d 65, 2011 WL 6955890 (Sup. Ct. N.Y. Cnty. Dec. 20, 2011).............12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................2, 3

*Bader v. Wells Fargo Home Mortg., Inc.*,
2012 WL 1428898 (S.D.N.Y. Apr. 25, 2012)....................................................5

*Bender Ins. Agency, Inc. v. Treiber Ins. Agency, Inc.*,
283 A.D.2d 448 (2d Dep't 2001) ...............................................................8

*Bose v. Interclick, Inc.*,
2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ..................................................28

*Bytemark, Inc. v. Xerox Corp.*,
342 F. Supp. 3d 496 (S.D.N.Y. 2018)..........................................................31

*Cardiocall, Inc. v. Serling*,
492 F. Supp. 2d 139 (E.D.N.Y. 2007) ......................................................28, 29

*Cartiga, LLC v. Aquino*,
2025 WL 388804 (S.D.N.Y. Feb. 4, 2025)......................................................9

*Carvel Corp. v. Noonan*,
350 F.3d 6 (2d Cir. 2003) ..................................................................30, 31

**TABLE OF AUTHORITIES**
(continued)

Page

*Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*,
   602 F. Supp. 3d 663 (S.D.N.Y. 2022)...................................................................22, 23, 25

*Charles Ramsey Co., Inc. v. Fabtech-NY LLC*,
   2020 WL 352614 (N.D.N.Y. Jan. 21, 2020)......................................................................7, 9

*Creekside Equity Partners, LLC v. U.S. Bank Nat. Ass'n*,
   2015 WL 3537436 (S.D. Ohio June 4, 2015) ......................................................................29

*People ex rel. Cuomo v Coventry First LLC*,
   52 A.D.3d 345 (1st Dep't 2008), *aff'd*, 13 N.Y.3d 108 (2009) ............................................15

*Design Strategies, Inc. v. Davis*,
   384 F. Supp. 2d 649 (S.D.N.Y. 2005), *aff'd*, 469 F.3d 284 (2d Cir. 2006)..................7, 18, 19

*Don Buchwald & Assocs., Inc. v. Marber-Rich*,
   11 A.D.3d 277 (1st Dep't 2004) ..........................................................................................29

*Ebel v. G/O Media, Inc.*,
   2021 WL 2037867 (S.D.N.Y. May 21, 2021) .......................................................................21

*Excellus Health Plan, Inc. v. Tran*,
   287 F. Supp. 2d 167 (W.D.N.Y. 2003)............................................................................26, 27

*ExpertConnect, LLC v. Fowler*,
   2019 WL 3004161 (S.D.N.Y. July 10, 2019) .................................................................21, 23

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*,
   376 F. Supp. 2d 385 (S.D.N.Y. 2005)....................................................................................6

*Getty Pet. Corp. v. Island Transp. Corp.*,
   878 F.2d 650 (2d Cir. 1989).....................................................................................................9

*Gravitas Search Partners LLC v. Deutsch*,
   2025 WL 2243720 (S.D.N.Y. Aug. 6, 2025)..................................................................17, 19

*Haraden Motorcar Corp. v. Bonarrigo*,
   2020 WL 1915125 (N.D.N.Y. Apr. 20, 2020)................................................................20, 21

*Impax Media, Inc. v. Ne. Advert. Corp.*,
   2018 WL 3962841 (S.D.N.Y. Aug. 17, 2018)..................................................................5, 6

*Innovative Networks, Inc. v. Satellite Airlines Ticketing Ctrs.*,
   871 F. Supp. 709 (S.D.N.Y. 1995)........................................................................................31

*Island Rehab. Servs. Corp. v. Maimonides Med. Ctr.*,
   859 N.Y.S.2d 903, 2008 WL 786507 (Sup. Ct. Kings Cnty. Mar. 24, 2008)...........................8

*JAPNA, Inc. v. SELFX Innovations Inc.*,
   2024 WL 1250269 (S.D.N.Y. Mar. 22, 2024) .................................................................17, 19

# TABLE OF AUTHORITIES
(continued)

Page

*Jing Wang v. Tesla, Inc.*,
2021 WL 3023088 (E.D.N.Y. July 16, 2021) ................................................................8

*JKB Daira, Inc. v. OPS-Tech., LLC*,
2022 WL 4484146 (D. Conn. Sept. 27, 2022) ...........................................................12

*Jones v. City of New York*,
2020 WL 1644009 (S.D.N.Y. Apr. 2, 2020) ...............................................................8

*Keiler v. Harlequin Enters., Ltd.*,
751 F.3d 64 (2d Cir. 2014) ..........................................................................................3

*Khaldei v. Kaspiev*,
135 F. Supp. 3d 70 (S.D.N.Y. 2015) .........................................................................17

*Klein Slowik, PLLC v. Schneider*,
2020 WL 1275591 (Sup. Ct. N.Y. Cnty. Mar. 4, 2020) ............................................18

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006) .........................................................10, 11, 14, 15

*Louis Cap. Mkts., L.P. v. REFCO Grp. Ltd., LLC*,
801 N.Y.S.2d 490 (Sup. Ct. N.Y. Cnty. June 6, 2005) ............................................16

*Maldonado v. Town of Greenburgh*,
460 F. Supp. 3d 382 (S.D.N.Y. 2020) .........................................................................3

*Marsh USA LLC v. Parrish et al.*,
No. 1:25-cv-06208, Dkt. 130 (S.D.N.Y. Sept. 18, 2025) .........................................1

*MedQuest Ltd. v. Rosa*,
2023 WL 2575051 (S.D.N.Y. Mar. 20, 2023) ...................................................23, 24

*Minnie Rose, LLC v. Yu*,
2023 WL 7386024 (S.D.N.Y. Nov. 8, 2023) .............................................................32

*Momentive Performance Materials USA, Inc. v. AstroCosmos Metallurgical, Inc.*,
2009 WL 1514912 (N.D.N.Y. June 1, 2009) ............................................................29

*MThree Corp. Consulting Ltd. v. Wascak*,
2022 WL 15524842 (S.D.N.Y. Oct. 27, 2022) ..................................................19, 20

*Nostrum Pharms., LLC v. Dixit*,
2014 WL 4370695 (S.D.N.Y. Sept. 2, 2014) .....................................................10, 27

*Oliver Wyman, Inc. v. Adam*,
2016 WL 5339549 (S.D.N.Y. Sept. 22, 2016) (Mot. ) .........................................9, 10

*Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*,
2017 WL 6459464 (E.D.N.Y. 2017) ...................................................................25, 26

# TABLE OF AUTHORITIES
(continued)

Page

*Onyx Renewable Partners LP v. Kao*,
  2023 WL 405019 (S.D.N.Y. Jan. 25, 2023) ...........................................................23

*Opternative, Inc. v. Jand, Inc.*,
  2018 WL 3747171 (S.D.N.Y. Aug. 7, 2018) ............................................................5

*Paysy Int'l v. Atos SE*,
  2015 WL 4533141 (S.D.N.Y. July 24, 2015) .........................................................31

*Phansalkar v. Andersen Weinroth & Co. L.P.*,
  344 F.3d 184 (2d Cir. 2003)..............................................................................18, 19

*Plaza Motors of Brooklyn, Inc. v. Rivera*,
  2020 WL 9814102 (E.D.N.Y. Sept. 17, 2020) ......................................................20

*Pure Power Boot Camp, Inc.*,
  813 F. Supp. 2d 489 (S.D.N.Y. 2011)...................................................................20

*Q3 Res., Inc. v. Navigant Consulting, Inc.*,
  2019 U.S. Dist. LEXIS 108835 (S.D.N.Y. June 27, 2019).....................................14

*Quest Partners LLC v. Brugman*,
  204 N.Y.S.3d 923, 2024 WL 952685 (Sup. Ct. N.Y. Cnty. Feb. 29, 2024) .....................31, 32

*R.B. Dev., Co. v. Tutis Cap. LLC*,
  2013 WL 12358006 (E.D.N.Y. Sept. 27, 2013) .....................................................13

*R.R. Donnelley & Sons Co. v. Marino*,
  505 F. Supp. 3d 194 (W.D.N.Y. 2020)..................................................................26

*Regency NYC, Inc. v. Atkinson*,
  2024 WL 4337486 (S.D.N.Y. 2024)...............................................16, 17, 18, 19

*Roytlender v. D. Malek Realty, LLC*,
  2024 WL 3566998 (E.D.N.Y. July 29, 2024) .........................................................16

*Salazar v. Nat'l Basketball Ass'n*,
  118 F.4th 533 (2d Cir. 2024) ..................................................................................3

*Shearson Lehman Bros. Inc. v. Bagley*,
  205 A.D.2d 467 (1st Dep't 1994) ..........................................................................15

*Sidney Frank Importing Co. v. Beam Inc.*,
  998 F. Supp. 2d 193 (S.D.N.Y. 2014)...................................................................32

*Stanley v. Skowron*,
  989 F. Supp. 2d 356 (S.D.N.Y. 2013)..............................................................17, 21

*Swan Media Grp., Inc. v. Staub*,
  841 F. Supp. 2d 804 (S.D.N.Y. 2012)....................................................................5

# TABLE OF AUTHORITIES
(continued)

Page

*Taboola, Inc. v. Ezoic Inc.*,
   2019 WL 465003 (S.D.N.Y. Feb. 6, 2019)..........................................................27, 28

*Taboola, Inc. v. Ezoic Inc.*,
   2021 WL 2041639 (S.D.N.Y. May 21, 2021) ...........................................................27

*TileBar v. Glazzio Tiles*,
   723 F. Supp. 3d 164 (E.D.N.Y. 2024) ...............................................................8, 31

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.*,
   380 F. Supp. 2d 250 (S.D.N.Y. 2005)......................................................................9

*Trahan v. Lazar*,
   457 F. Supp. 3d 323 (S.D.N.Y. 2020)....................................................................32

*Uni-Sys, LLC v. United States Tennis Ass'n, Inc.*,
   350 F. Supp. 3d 143 (E.D.N.Y. 2018) ...................................................................25

*United States v. Visa*, *Inc.*,
   2025 WL 1740613 (S.D.N.Y. June 23, 2025) ........................................................13

*Wash. State Inv. Bd. v. Odebrecht S.A.*,
   2023 WL 5016787 (S.D.N.Y. Aug. 4, 2023)..........................................................17

*Watts v. Jackson Hewitt Tax Serv. Inc.*,
   675 F. Supp. 2d 274 (E.D.N.Y. 2009) ...................................................................14

*Weiser LLP v. Coopersmith*,
   51 A.D.3d 583 (1st Dep't 2008) .............................................................................7

*WSP USA Corp. v. Marinello*,
   2013 WL 6704885 (S.D.N.Y. Dec. 19, 2013) .........................................................5

*Yukos Cap. S.A.R.L. v. Feldman*,
   977 F.3d 216 (2d Cir. 2020)..................................................................................19

*Zurich Am. Life Ins. Co. v. Nagel*,
   538 F. Supp. 3d 396 (S.D.N.Y. 2021).................................................................9, 24

**Statutes**

18 U.S.C. § 1839..................................................................................................................22

18 U.S.C. § 1839(5)(B)(ii)(II)..............................................................................................22

18 U.S.C. § 1839(5)(B)(ii)(III) ............................................................................................25

**Rules**

Fed. R. Civ. P. 8(d)(2)............................................................................................................3

## TABLE OF AUTHORITIES
(continued)

Page

Fed. R. Civ. P. 8(d)(3)...........................................................................................................3

## PRELIMINARY STATEMENT

The Complaint details Defendants' calculated and covert plan to lift out in one piece the core of Marsh's Construction Surety business unit.  It describes how the seeds of this scheme were sown when Defendant Aon—a direct competitor of Marsh—lost a team of employees from its surety business to a competitor.  Rather than rebuilding its surety practice piece by piece, Aon—with the help of senior Marsh leaders, Defendants Robert McDonough and Danny Hall—decided instead to raid Marsh's Construction Surety business unit.  In connection with their scheme, Defendants solicited Marsh's employees and clients to move to Aon and pilfered Marsh's confidential information and trade secrets—all in blatant violation of their contractual commitments, fiduciary duties, and other legal obligations.  Defendants' scheme culminated in the orchestrated resignation of 20 Marsh employees (the "Departing Employees") in the span of just 38 minutes.  And Defendants haven't stopped with this coordinated mass exodus: They have continued to solicit Marsh's employees and clients and to use Marsh's confidential information and trade secrets to aid in that campaign of solicitation.  Marsh filed this lawsuit to address Defendants' ongoing unfair conduct and remedy the harm already inflicted on Marsh.

Despite the detailed factual allegations of Defendants' wrongdoing in the Complaint, Defendants attempt to sweep their misconduct under the rug and shift blame to Marsh—the victim of their actions—by brazenly suggesting that this case is an attempt to "chill competition" and "exert control over individuals' autonomy to work where they choose."  Mot. at 1.[1]  But even a

---

[1] Aon's attempt to cloud the issues here through references to unrelated lawsuits is entirely irrelevant to the arguments raised in their motion, and in any event hardly demonstrates any unfair competition by Marsh.  *Contra* Mot. at 1 n.2.  For example, in the first case that Aon cites, *Marsh USA LLC v. Parrish et al.*, the court recently found that Marsh is likely to succeed on its claims for breach of defendants' non-solicitation and non-disclosure covenants—the very same contractual provisions at issue in this case.  No. 1:25-cv-06208, Dkt. 130 (S.D.N.Y. Sept. 18, 2025).

cursory reading of the Complaint dispels that false narrative.  Marsh welcomes *fair* competition and does not seek to control where the individual Defendants work, provided they respect their obligations to Marsh.  The individual Defendants have always been free to leave their roles at Marsh, as long as they abide by their contractual and other obligations in leaving, including by not soliciting certain Marsh clients and employees and by not taking or using confidential information and trade secrets belonging to Marsh.

Defendants' motion for partial dismissal under Rule 12(b)(6) fails because the Complaint's well-pleaded allegations more than meet Marsh's pleading burden here.  Rather than acknowledging the Complaint's ample factual allegations, Defendants largely alternate between arguing that Marsh must provide even greater details than those pleaded and asserting the existence of controverting facts, including by pointing to new, unsupported allegations and irrelevant litigations outside the Complaint.  But these contentions miss the mark: at the pleading stage, before the benefit of *any* discovery, Marsh's ample factual allegations are to be taken as true and all reasonable inferences are to be drawn in Marsh's favor.  And Marsh has adequately alleged each claim that Defendants seek to dismiss.

Defendants' legal argument that certain tort claims must be dismissed as duplicative of contract claims and other claims likewise misses the mark.  Defendants are simply wrong on the law.  Courts in this district and elsewhere regularly allow plaintiffs to assert such tort claims when, as here, the duties underlying those claims and/or the damages sought are distinct as they are here.

Because the allegations in the Complaint are more than sufficient to state claims against Marsh, Defendants' Motion should be denied in full.

## <u>LEGAL STANDARD</u>

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Plausibility depends on a host of considerations including the full factual picture presented and the particular causes of action and their elements. *See id.* at 677-83. In deciding a motion to dismiss, a court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 544 (2d Cir. 2024). The standard does not require "detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).

Further, Federal Rule of Civil Procedure 8 expressly authorizes pleading in the alternative and a party may state "as many separate claims . . . as it has, regardless of consistency." *See* Fed. R. Civ. P. 8(d)(2), (d)(3). "'In the Second Circuit, there is no requirement that [] alternative pleadings be made in a technical form,' i.e., that the pleading needs to be explicit about pleading 'in the alternative.'" *Maldonado v. Town of Greenburgh*, 460 F. Supp. 3d 382, 402 (S.D.N.Y. 2020) (citation omitted).

## ARGUMENT

Defendants' partial motion to dismiss Counts III (Hall only), IV (Hall only), and V (Hall only), VII, VIII, IX, X, XI, XII, and XIII should be denied because the Complaint sufficiently pleads each element of these claims.

## I.    The Complaint states claims for breach of contract against Hall (Counts III, IV, and V).

Marsh easily alleges claims against Hall for breaching his Non-Solicitation Agreement, Confidentiality Agreement, and Supplemental Terms & Conditions of Employment Agreement. Defendants challenge only whether the Complaint adequately alleges that Hall breached those

agreements by improperly using or disclosing Marsh's confidential information and trade secrets. Mot. at 12-14. It does.

As is often the case in clandestine plans to use a competitor's confidential information and trade secrets, much of the evidence is in the possession of Defendants. Yet the Complaint here more than sufficiently alleges facts supporting the reasonable inference that Hall breached his agreements by usurping and using Marsh's confidential information and trade secrets for personal gain and to benefit Aon. For example, the Complaint alleges that Hall accessed foundational client documents containing Marsh confidential information and trade secrets related to Client M as one of the "last actions" he took on his Marsh-issued laptop before he resigned. Compl. ¶ 182. Hall had "***no legitimate business reason***" to access those documents at that time, given that they were foundational client-relations documents from 2023, and Client M had just renewed its services with Marsh only three months earlier. *Id.* ¶¶ 178-81 (emphasis added). Hall then "deliberately exploited" and "depart[ed]" with this information, "at the encouragement of Aon," and "us[ed] it to divert Client M's business . . . away from Marsh and to Aon" *mere weeks* after Hall's resignation. *Id.* ¶¶ 185-86. As the Complaint details, "[s]hortly after Hall . . . left Marsh," Client M—the same client for whom Hall accessed extensive background shortly before his departure and that had just recently renewed its business with Marsh—"sent notice [] stating that it would be terminating the parties' agreement and moving all of its surety business from Marsh to Aon." *Id.* ¶ 183. Accordingly, "the recency of Client M's renewal and the proximity of Hall's access to and departure with Marsh's confidential information and trade secrets to Client M's departure from Marsh" sufficiently support the inference that Client M's solicitation "was made possible by Hall's improper and unauthorized access and usurpation of Marsh's trade secrets." *Id.* ¶¶ 186-87.

Contrary to Defendants' assertion (Mot. at 13), there is nothing improper with alleging circumstantial evidence supporting an inference of misappropriation. Instead, "it is well recognized" that "misuse" of confidential information "can rarely be proved by convincing direct evidence," and "[i]n most cases plaintiffs must construct . . . circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place." *Opternative, Inc. v. Jand, Inc.*, 2018 WL 3747171, at \*5 (S.D.N.Y. Aug. 7, 2018) (cleaned up) (allegations of defendant's access to confidential information coupled with "circumstantial evidence [] that [defendant] used [plaintiff's] [c]onfidential [i]nformation" were sufficient to state a breach of contract claim); *see also Impax Media, Inc. v. Ne. Advert. Corp.*, 2018 WL 3962841, at \*5-6 (S.D.N.Y. Aug. 17, 2018) (similar); *WSP USA Corp. v. Marinello*, 2013 WL 6704885, at \*4-5 (S.D.N.Y. Dec. 19, 2013) (denying motion to dismiss contract claim where defendant accessed and retained specific confidential materials and "upon information and belief[,] [the] defendant [] shared this information with his new employer").

Further, none of the cases cited by Defendants support dismissal. *See* Mot. at 12-14. *Affinity LLC v. GfK Mediamark Rsch. & Intel., LLC*, 547 F. App'x 54 (2d Cir. 2013) is an unpublished opinion that did not even involve contract claims; instead, it addressed federal antitrust claims and a state law tort claim. *Id.* at 56-57. *Bader v. Wells Fargo Home Mortg., Inc.*, 2012 WL 1428898 (S.D.N.Y. Apr. 25, 2012) is a summary judgment case where the defendant provided payment records showing plaintiff had not been underpaid. *See id.* at \*3-4. In *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804 (S.D.N.Y. 2012), the complaint did "not specify which clause of the Agreement [] is alleged to have [been] breached or through what actions or inactions." *Id.* at 807 (internal quotations omitted). That is nothing like this case, where Marsh

has specified both the specific contractual provisions breached by Hall and specific actions that Hall took in breach of those provisions. *See* Compl. ¶¶ 178-87, 232, 234, 240, 242, 244, 250, 253. Finally, in *Access Bus. Grp. Int'l, LLC v. Refresco Beverages US Inc.*, 2023 WL 372883 (S.D.N.Y. Jan. 24, 2023), the only alleged breach (i.e., failure to purchase additional products) was specifically permitted by the "express terms" of the contract—which stated there was "no obligation to purchase any products"—and thus could not constitute a breach of that contract. *Id.* at *3. Here, there is no question that misuse of Marsh's confidential information and trade secrets as alleged directly violates the agreements at issue. *See* Compl. ¶¶ 230, 240, 250.

## II.     The Complaint states a breach of fiduciary duty claim against McDonough (Count VII).

Defendants do not dispute that Marsh has alleged each element of its breach of fiduciary duty claim against McDonough. Instead, Defendants' sole argument is that this claim should be dismissed as duplicative of Marsh's contract claim against McDonough. Mot. at 14-15. Defendants are wrong for two independent reasons.

### A.     McDonough's fiduciary duties arise from the employer-employee relationship, independent of his contracts.

Defendants are wrong that fiduciary duty and contract claims cannot be based on the same conduct. Mot. at 14. New York courts routinely recognize that "the *same conduct* which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship . . . independent of the contract." *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 385, 408 (S.D.N.Y. 2005) (emphasis added) (internal quotations omitted). "Contract and tort claims arising out of the same transaction or occurrence may coexist so long as the tort claims relate to non-contractual duties, including fiduciary duties." *Impax Media*, 2018 WL 3962841, at *8.

Under New York law, employees owe fiduciary duties to their employers, including the duties of good faith and loyalty. *Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 659 (S.D.N.Y. 2005), *aff'd*, 469 F.3d 284 (2d Cir. 2006). Independent of any contractual obligations, McDonough—as an employee of Marsh—owed Marsh the duties, for example, not to "solicit[] [an] employer's customers before cessation of employment," "misuse [] confidential information," or "conspir[e] to bring about mass resignation of an employer's key employees[] or usurp[] [an] employer's business opportunity." *Charles Ramsey Co., Inc. v. Fabtech-NY LLC*, 2020 WL 352614, at *16 (N.D.N.Y. Jan. 21, 2020) (internal citation and quotations omitted).

That is just what the Complaint alleges McDonough did. The Complaint alleges that, *while employed by* Marsh, McDonough solicited clients to move their business to Aon (Compl. ¶¶ 171-75, 268), disclosed to Aon confidential information surrounding a Marsh prospective hire from Aon to deliberately interfere with Marsh's recruitment and to benefit Aon (*id.* ¶¶ 204-08, 268), and conspired in a coordinated scheme with Aon to effectuate the nearly simultaneous mass resignation of 20 of Marsh's key Construction Surety employees on March 10, 2025 (*id.*, *e.g.*, ¶¶ 3-5, 144-46, 151-57, 268). Those allegations state a breach of fiduciary duty claim. *See, e.g.*, *Weiser LLP v. Coopersmith*, 51 A.D.3d 583, 584 (1st Dep't 2008) (former accounting firm partners breached fiduciary duties by "soliciting [the firm's] clients and employees to follow them to their new firm"); *Charles Ramsey Co., Inc.*, 2020 WL 352614, at *17 (denying motion to dismiss breach of fiduciary duty claim involving allegations that defendants "encouraged [former employer's] employees to go work at competitors"); *Advance 2000, Inc. v. Harwick*, 2019 WL 6725977, at *3 (W.D.N.Y. Dec. 11, 2019) (denying motion to dismiss fiduciary duty claims and recognizing that

an "employee's disclosure of employer information, particularly confidential information or trade secrets, can be a breach of [] fiduciary duty").[2]

Because McDonough was prohibited from engaging in this disloyal conduct even in the absence of any contract, Marsh's fiduciary duty claim stands independent of any contract breach claim. *See Bender Ins. Agency, Inc. v. Treiber Ins. Agency, Inc.*, 283 A.D.2d 448, 450 (2d Dep't 2001) (reinstating former employer's claim for breach of duty of loyalty against former employee and in so doing, finding the claim was not duplicative of the breach-of-contract claim because the "duties" did not "ar[i]se from the parties' Agreement"); *Advance 2000, Inc.*, 2019 WL 6725977, at *8 ("Defendants' fiduciary duties may have been broader than their obligations under [the] noncompete and nondisclosure agreements, because an employee is 'prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties.'") (citation omitted); *Island Rehab. Servs. Corp. v. Maimonides Med. Ctr.*, 859 N.Y.S.2d 903, 2008 WL 786507, at *4 (Sup. Ct. Kings Cnty. Mar. 24, 2008) ("Even in the absence of a formal employment contract, [defendant], acting as an employee, would still have owed a fiduciary duty of loyalty and good faith to plaintiffs").[3]

---

[2] In the same way, Defendants' argument that Marsh's allegations fall short of meeting what they characterize as "the high bar for alleging breach of fiduciary duty" under *TileBar v. Glazzio Tiles*, is misplaced. Mot. at 15, n.18. In *TileBar*, the court recognized that it would breach the duty of loyalty to "use the employer's resources," or "confidential information" in "mak[ing] preparation[s] to compete with his employer," and to "misuse [] confidential information, solicit[] [an] employer's customers before cessation of employment, [and] conspir[e] to bring about mass resignation of an employer's key employees." 723 F. Supp. 3d 164, at 204-05 (E.D.N.Y. 2024) (internal citations and quotations omitted). That is precisely what Marsh has alleged McDonough did here.

[3] Defendants' arguments concerning punitive damages are premature at this stage. Mot. at 14 n.17. *Jones v. City of New York*, 2020 WL 1644009, at *17 (S.D.N.Y. Apr. 2, 2020) ("Because punitive damages are a form of damages, not an independent cause of action, a motion to dismiss a prayer for relief in the form of punitive damages is procedurally premature.") (internal citation and quotations omitted); *Jing Wang v. Tesla, Inc.*, 2021 WL 3023088, at *5 (E.D.N.Y. July 16, 2021) ("[T]he trend among courts applying New York law seems to be to deny attempts to dismiss

**B. The factual allegations supporting Marsh's fiduciary duty claim and contract claims against McDonough are not duplicative.**

Defendants are wrong that "[t]here are no factual allegations supporting Marsh's breach of fiduciary duty claim that are different from the allegations giving rise to" Marsh's "breach of contract claims." Mot. at 14-15. For example, Marsh's client solicitation contract claim against McDonough is limited to his solicitation of clients **after his employment with Marsh ended**. Compl. ¶¶ 95, 123, 211, 213-14, 261. But Marsh's fiduciary duty claim against McDonough addresses his solicitation of clients **during his employment with Marsh**. *See id.* ¶¶ 173-75, 268. And McDonough's disclosure of sensitive information "to Aon leadership" that Marsh was interviewing a specific candidate from Aon to "interfere with Marsh's recruitment efforts" would violate his duty of loyalty to Marsh, even assuming *arguendo* that McDonough did not also share information considered "confidential" under his contracts. *Id.* ¶¶ 204-08, 268.[4]

As such, the cases that Defendants cite are easily distinguishable. Mot. at 14-15. Unlike in the *Cartiga* and *Oliver Wyman* opinions, the conduct alleged here is ***not*** the "exact conduct on which the breach-of-contract claim is based," *Cartiga, LLC v. Aquino*, 2025 WL 388804, at *11

---

prayers for punitive damages at the motion to dismiss stage because it is 'not even clear that there is a requirement that a complaint seeking punitive damages must plead specific facts that would support an award of such damages.'") (citation omitted). Regardless, New York courts have held that proof of public harm is not required for a plaintiff to recover punitive damages for tort claims. *E.g.*, *Getty Pet. Corp. v. Island Transp. Corp.*, 878 F.2d 650, 657 (2d Cir. 1989); *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 267-68 (S.D.N.Y. 2005).

[4] Indeed, the extent of any overlap in the facts underlying the various causes of action is a fact-intensive inquiry that cannot yet be resolved at this stage of the case. For example, "depending on what discovery uncovers, the Court might find that [McDonough] breached his fiduciary duties without breaching the contract; for example, hypothetically, he might have disclosed sensitive and confidential information that he acquired from [Marsh] but that does not qualify as [Confidential Information] under the contract." *Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 403 (S.D.N.Y. 2021). As such, the Court should "avoid dismiss[al]" of Marsh's fiduciary duty claim at this preliminary stage. *Charles Ramsey Co., Inc.*, 2020 WL 352614, at *17 (internal citation omitted).

(S.D.N.Y. Feb. 4, 2025), or "wholly duplicative," *Oliver Wyman, Inc. v. Adam*, 2016 WL 5339549, at *10 (S.D.N.Y. Sept. 22, 2016) (Mot. at 14-15). Rather, the breach of fiduciary duty claim is "based, at least in part, on conduct other than that complained of in the breach-of-contract claim" and/or "goes beyond" the conduct proscribed under McDonough's contracts. *Nostrum Pharms., LLC v. Dixit*, 2014 WL 4370695, at *13 (S.D.N.Y. Sept. 2, 2014) (denying motion to dismiss breach of fiduciary duty claim).

### III.    The Complaint states a claim for aiding and abetting breach of fiduciary duty (Count XII).

Defendants' challenges to Marsh's aiding and abetting breach of fiduciary duty claim against Aon are equally meritless. Mot. at 15-19. Primarily, Defendants contend that Marsh has not alleged an underlying breach of fiduciary duty claim against McDonough. It has. *See supra* § II. Beyond that, Defendants also contend that Marsh has failed adequately to plead that "the defendant knowingly induced or participated in the breach." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) (internal quotation and citation omitted). With respect to this element, courts have required that (1) there be "an allegation that [the] defendant had actual knowledge of the breach," and (2) a defendant provide "substantial assistance to the primary violator." *Id.* (internal quotations and citation omitted). The Complaint alleges both.[5]

---

[5] Defendants contend in passing that Aon Risk Services Companies, Inc. "is not the proper defendant because McDonough and Hall are employed by a different Aon entity, Aon Risk Services, Inc. of Maryland." Mot. at 1. n.1. Without the benefit of discovery, Marsh has not yet had the opportunity to discern the respective roles of various Aon entities in the organization's complex structure. But in any event, whether Aon Risk Services, Inc. of Maryland now technically employs the individual Defendants is not determinative. Whoever may ultimately have come to employ the individual Defendants, the evidence available to Marsh at this early stage indicates that Aon Risk Services Companies, Inc. is, or controlled, the entity that orchestrated the lift-out of the core of Marsh's Construction Surety business, including Marsh's employees, clients and confidential information and trade secrets. Marsh reserves all rights in connection with adding or substituting any defendant in this case as facts are further developed through discovery.

      a.      **The Complaint alleges Aon substantially assisted McDonough's breach.**

The "substantial assistance" element of an aiding and abetting claim requires allegations that a defendant "affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Id.* at 294-95. The Complaint does just that. In particular, it alleges that Aon actively assisted and helped McDonough solicit Marsh's clients while he was still employed. *E.g.*, Compl. ¶¶ 6, 171-75, 311.

For example, the Complaint alleges that "Aon directly participated in the solicitation of Marsh clients prior to McDonough's departure, including going so far as assisting in the preparation of BORs for Marsh's existing clients to send once the Departing Employees announced their resignations." *Id.* ¶ 311. Specifically, the Complaint details that, "on March 11, 2025, the very next day after the Departing Employees resigned *en masse*, a Marsh client submitted a [BOR] letter moving its business to Aon." *Id.* ¶ 173. Also on March 11, "this client replied to an email that had been sent by Alpaugh," Aon's President of North America, "on March 10, 2025—*the exact same day that McDonough resigned from [Marsh]*—with an executed authorization letter for Aon's Construction and Surety Practice" and "copied McDonough's Marsh email" in this correspondence. *Id.* ¶ 174. The timing of this client correspondence and McDonough's notice of resignation support that Alpaugh and Aon were aware that McDonough had been involved in soliciting this client even before his departure and that they assisted in those efforts.

In another example, the Complaint alleges that "on March 11, 2025, another client for which McDonough served as a business lead while at Marsh also notified Marsh that it would be terminating its agreement with Marsh and wanted 'immediate revocation of all [BOR] letters previously provided to Marsh,'" and "then moved its business from Marsh to Aon." *Id.* ¶ 175. "The timing of this client's departure from Marsh **the day after** McDonough's resignation, but

before his last day of employment with Marsh, makes obvious the fact that McDonough solicited this client on behalf of Aon while still on Marsh's payroll." *Id.* It reasonably follows that Aon was aware of and helped facilitate the transition of this client from Marsh to Aon prior to March 11, 2025—*i.e.*, while McDonough was employed by Marsh. Indeed, the degree of close coordination between McDonough and Aon in orchestrating other elements of the raid, including the mass resignation of McDonough's team on March 10, gives rise to a strong inference of similar coordination and assistance by Aon in simultaneously moving this client's business. *See id.* ¶¶ 171-72 (alleging that Aon and McDonough worked together to identify and approach Marsh clients to move business to Aon).

These allegations more than suffice to support substantial assistance. For example, in *JKB Daira, Inc. v. OPS-Tech., LLC*, an employer stated a claim for aiding and abetting breach of fiduciary duty where a competitor "substantial[ly] assist[ed]" in a senior-level employee's breach by "entic[ing] him to share [the employer's] confidential and proprietary information in order to divert certain [] business opportunities." 2022 WL 4484146, at *14 (D. Conn. Sept. 27, 2022); *see also Aon Risk Servs. v. Cusack*, 946 N.Y.S.2d 65, 2011 WL 6955890, at *17 (Sup. Ct. N.Y. Cnty. Dec. 20, 2011) (on preliminary injunction, finding a competitor had aided and abetted a former employee's breach of fiduciary duty by providing "substantial assistance" in the form of "encouraging" employees "to solicit Aon employees and clients"). Similarly, the close sequence of client moves to Aon almost immediately upon McDonough tendering his resignation and before it even became effective, coupled with Aon's assistance in the preparation of client transfer documents to send immediately upon the mass resignation, support that Aon "knowingly facilitated and encouraged" McDonough's breach. Compl. ¶ 11. These examples illustrate that Aon and McDonough clearly worked together while McDonough was employed to "orchestrate[]

[a] plan to identify Marsh clients . . . to move their business to Aon [which] necessarily drew upon Marsh's confidential information and trade secrets." *Id.* ¶ 172.

Notably, Defendants' response to the allegations in the Complaint is to present unsupported *counter-allegations* and invite the Court to improperly weigh facts. Mot. at 17. Specifically, Defendants try to excuse Aon's preparation of BOR letters by arguing that "[t]o the extent that Aon prepared a BOR, that BOR was prepared at the request of Marsh's former client, after the client had already decided to move its business." *Id.* But those "facts" are nowhere in the Complaint. And such unsupported factual contentions have no place in opposing a motion to dismiss. *United States v. Visa*, *Inc*., 2025 WL 1740613, at *10 (S.D.N.Y. June 23, 2025).

Defendants also argue that the Complaint's allegations related to "suspicious timing" cannot support a claim. Mot. at 17-18. But again, not so. "Temporal proximity is usually sufficient to generate issues of fact because it is strong circumstantial evidence of improper intent." *Anemone v. Metro. Transp. Auth.*, 2008 WL 1956284, at *10 (S.D.N.Y. May 2, 2008) (holding that the temporal proximity between a government employee's exercise of free speech and termination shortly thereafter "create[d] a triable issue of fact on the government's motive"); *see also R.B. Dev., Co. v. Tutis Cap. LLC*, 2013 WL 12358006, at *9 (E.D.N.Y. Sept. 27, 2013) (allegations related to "suspect timing and sequence" of events in which defendant participated could establish its intentional participation in a scheme to support a conspiracy claim); *Am. Baptist Churches v. Galloway*, 271 A.D.2d 92, 100-01 (1st Dep't 2000) (suspicious timing of the defendants' actions supported a theory that "all defendants acted in concert"). Here, the suspicious timing of client departures immediately after McDonough tendered his resignation—which could *only* have been accomplished so quickly if Aon and McDonough had already worked in concert to facilitate the transfer of the clients' business even before his employment at Marsh ended—raise

a strong inference that Aon substantially assisted in McDonough's solicitation of these clients. Indeed, it is hard to imagine sophisticated business clients blindly moving their accounts without the participation and assurances of the new business to which they were moving it.

The two cases that Defendants rely on do not show otherwise. Mot. at 17-19. In *Q3 Res., Inc. v. Navigant Consulting, Inc.*, the complaint did not allege an underlying breach of fiduciary duty, and there were "no factual allegations" that former Q3 employees "solicited or encouraged other Q3 employees or clients to go to Navigant." 2019 U.S. Dist. LEXIS 108835, at *13 (S.D.N.Y. June 27, 2019). Unlike in *Q3*, the Complaint here specifically asserts a breach of fiduciary duty claim against McDonough, including as it relates to his pre-resignation solicitation of clients, *see* Compl. ¶¶ 6, 171-75, 265-70, 311, and Defendants do not allege that any element of that claim was not sufficient pled. *See supra* § II.

Likewise, in *Watts v. Jackson Hewitt Tax Serv. Inc.*, 675 F. Supp. 2d 274, 280 (E.D.N.Y. 2009), the aiding and abetting breach of fiduciary duty claim was dismissed because the counterclaim-plaintiffs did not bring any underlying breach of fiduciary duty claim. *Id.* at 280. Not so in this case. *See* Compl. ¶¶ 265-70. Further, the *Watts* counterclaim-plaintiffs alleged "that [counterclaim-defendants] instructed certain . . . unnamed employees to provide [them] access to the information in question" but failed to indicate "how [they] 'substantially assisted' the unnamed employees in obtaining the documents." *Watts*, 675 F. Supp. 2d at 281. Here, however, Marsh alleges specific examples of how Aon substantially assisted McDonough in soliciting Marsh clients, including, for example, "assisting in the preparation of BORs for Marsh's existing clients to send once the Departing Employees announced their resignations." Compl. ¶ 311.

### b.    The Complaint alleges Aon knew of McDonough's breaches.

The Complaint more than sufficiently alleges that Aon knew of McDonough's breach of his fiduciary duties owed to Marsh. To satisfy the knowledge element, a plaintiff must allege that

the defendant "had actual knowledge of the breach of duty." *Lerner*, 459 F.3d at 294 (citation omitted).

Among other things, the Complaint alleges that Aon knew that McDonough was a "high-ranking employee of Marsh," Compl. ¶ 310, and because of his "senior leader" role at Marsh, Aon specifically targeted McDonough to be its "inside man" to "execute the plan to raid Marsh," *id.* ¶¶ 145-46. Further, Aon was aware of the fiduciary duties owed by McDonough as they are standard in the industry and in particular were known by "Jeffrey Alpaugh, the President of Aon's North America operations" who "worked for Marsh for more than thirty years" (and, indeed, worked "directly with McDonough" during that time). *Id.* ¶¶ 147-49; *see Shearson Lehman Bros. Inc. v. Bagley*, 205 A.D.2d 467, 467 (1st Dep't 1994) (refusing to dismiss aiding and abetting claim and in so doing, finding that the primary violators were employees of the former employer and "therefore, had a fiduciary duty to the company," and that the aider and abettor "had knowledge of [the primary violators'] relationship to [the company]"). Defendants cannot—and indeed do not—suggest that Aon was unaware of the fiduciary duties McDonough owed to Marsh.

Rather, Defendants argue the narrow point that Marsh has not pled that "Aon actually knew about McDonough's alleged fiduciary *breaches*." Mot. at 18 (emphasis added). Not so. *See* Compl. ¶ 310 (alleging "Aon had actual knowledge of McDonough's fiduciary duty and breach"). However, under New York law, actual knowledge to support an aiding and abetting claim may also be "fairly inferred from [] allegations that defendants participated in [] the alleged [wrongdoing]." *People ex rel. Cuomo v Coventry First LLC*, 52 A.D.3d 345, 346 (1st Dep't 2008), *aff'd*, 13 N.Y.3d 108 (2009). As detailed above, the Complaint alleges that Aon had knowledge of and substantially assisted in McDonough's solicitation of Marsh clients before he ended his employment with Marsh, "including going so far as assisting in the preparation of BORs for

Marsh's existing clients to send once the Departing Employees announced their resignations." Compl. ¶ 311; *see also*, *supra*, § III(a). Further, the fact that one of the clients with whom McDonough closely worked moved to Aon almost immediately after he tendered his resignation, and in so doing copied McDonough's *Marsh* email on a thread with Aon leadership, reflects that Aon was aware of McDonough's actions and strongly suggests that Aon and McDonough had coordinated solicitation of this client even before the employee departures were announced. *Id.* ¶¶ 173-74, 311. These allegations are sufficient, at minimum, to give rise to a strong inference that Aon knew of McDonough's conduct in breach of his fiduciary duties to Marsh. *See Louis Cap. Mkts., L.P. v. REFCO Grp. Ltd., LLC*, 801 N.Y.S.2d 490, 494 (Sup. Ct. N.Y. Cnty. June 6, 2005) (complaint "sufficiently alleged that [aider and abettor] knowingly participated in [former employees'] breach of their fiduciary duties" because he "carefully planned" the scheme at issue and "was engaged in the recruitment of [the former employees] for their scheme").

## IV.    The Complaint states a claim for breach of the faithless servant doctrine (Count VIII).

Defendants argue that the Complaint fails to state a claim under the faithless servant doctrine because (1) it does not allege a "persistent pattern" of misconduct; and (2) the claim is duplicative of Marsh's claim for breach of fiduciary duty. Mot. at 19. Both arguments fail.

### A.    Marsh alleges a "persistent pattern" of misconduct and satisfies both alternative standards to state a faithless servant claim.

A faithless servant claim may meet the "persistent pattern" showing by satisfying one of two alternative standards. *Roytlender v. D. Malek Realty, LLC*, 2024 WL 3566998, at *12 (E.D.N.Y. July 29, 2024) ("[A]n employee can be a faithless servant under either standard."). "Under the *Turner* standard, courts focus on whether the alleged misconduct 'substantially violates the contract of service,' … [and] [u]nder the *Murray* standard, 'misconduct by an employee that rises to the level of a breach of a duty of loyalty or good faith is sufficient to warrant forfeiture.'"

16

*Regency NYC, Inc. v. Atkinson*, 2024 WL 4337486, at *5 (S.D.N.Y. 2024) (internal citations omitted). Both standards are satisfied here.

As an initial matter, Defendants' Motion should be denied because Defendants fail even to address the *Murray* standard. Defendants state in conclusory fashion that Marsh has failed under either standard, but their entire argument focuses solely on the more rigorous *Turner* standard. Mot. at 19-20[6]; *see Khaldei v. Kaspiev*, 135 F. Supp. 3d 70, 84 (S.D.N.Y. 2015) (describing the *Turner* standard as the "more stringent" standard). Because Marsh can allege this claim under either standard, Defendants cannot obtain dismissal by only addressing one of the alternative standards. *Wash. State Inv. Bd. v. Odebrecht S.A.*, 2023 WL 5016787, at *19 (S.D.N.Y. Aug. 4, 2023) (denying motion to dismiss specific claims against defendants where they "offer[ed] no authority" to support that they could not be liable under multiple relevant provisions of a statute).

The Complaint unquestionably satisfies the *Murray* standard. Under that standard, an employee breaches the duty of loyalty where he "acts adversely to his employer" or "omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment." *Stanley v. Skowron*, 989 F. Supp. 2d 356, 359-60 (S.D.N.Y. 2013) (finding manager's insider trading made him a faithless servant). Here, the Complaint alleges repeated acts of disloyalty and abuse of McDonough's leadership position in the weeks preceding his resignation, including, for example, actively soliciting clients and conspiring with Aon to bring about the mass resignation of 19 other key employees using Marsh resources and confidential information. *E.g.*, Compl. ¶¶ 3-5, 144-46, 151-57, 160-63, 172-75, 275. This is sufficient to state

---

[6] The cases Defendants cite likewise only analyze the *Turner* standard. *See*, *e.g.*, *Gravitas Search Partners LLC v. Deutsch*, 2025 WL 2243720, at *14 (S.D.N.Y. Aug. 6, 2025); *JAPNA, Inc. v. SELFX Innovations Inc.*, 2024 WL 1250269, at *9-10 (S.D.N.Y. Mar. 22, 2024) (referencing a "persistent pattern" requirement only in connection with the *Turner* standard).

a faithless servant claim under the *Murray* standard. *See, e.g.*, *Klein Slowik, PLLC v. Schneider*, 2020 WL 1275591, at *1 (Sup. Ct. N.Y. Cnty. Mar. 4, 2020) (plaintiff stated faithless servant claim where complaint alleged that defendants, "while still employed by plaintiff," "solicit[ed] plaintiff's clients for their new firm" and "use[d] plaintiff's resources to create" a competing firm); *Design Strategies*, 384 F. Supp. 2d at 662-64 (forfeiture warranted because defendant acted "adversely to his employer" where defendant encouraged a potential customer to give a business opportunity to "a direct competitor of [plaintiff]").

If more were needed (it's not), the allegations in the Complaint also satisfy the *Turner* standard because McDonough's disloyalty substantially violated the terms of his service in that it was "*not* limited to a single, isolated incident, but rather occurred repeatedly." *Phansalkar v. Andersen Weinroth & Co. L.P.*, 344 F.3d 184, 202 (2d Cir. 2003). The Complaint alleges that McDonough's acts of disloyalty were "repeated" in the weeks he "contemplated and ultimately decided to end his employment at Marsh and to commence employment at a competitor." Compl. ¶ 276. The Complaint details multiple instances of disloyalty in which McDonough, while still employed by Marsh and utilizing Marsh resources and confidential information, solicited Marsh clients and conspired with Aon in the weeks prior to the mass resignation to identify and entice a key group of Marsh employees to resign simultaneously, deliberately leaving Marsh's Construction Surety group understaffed. *Id.* ¶¶ 3-5, 144-46, 151-57, 160-63, 172-75, 275. McDonough's disloyalty far exceeded a "single, isolated incident." *Phansalkar*, 344 F.3d at 202; *see also Regency NYC, Inc.*, 2024 WL 4337486, at *6 (finding plaintiff's allegations that a defendant "misappropriat[ed] and/or retain[ed] [former employer's] confidential and proprietary information," and "conspir[ed] to steal" the former employer's existing and prospective clients to state a claim under the *Turner* standard because they were "not limited to a single isolated

incident"); *Design Strategies*, 384 F. Supp. 2d at 662-64 (*Turner* standard satisfied even for disloyalty "related to a *single* business opportunity" in "mid- to late November and probably lasting into early December 1999") (emphasis added).

Defendants' argument that disloyal acts must span months has no basis in law. Mot. at 20-21. New York courts have found disloyalty to be substantial "in a variety of circumstances," except where "the disloyalty consisted of a single act, or where the employer knew of and tolerated the behavior." *Phansalkar*, 344 F.3d at 201-02. McDonough's disloyalty was not isolated to a single act, and, obviously, Marsh did not "kn[o]w of and tolerate[] the behavior" (nor have Defendants argued as much). *Id.* at 202.

The cases Defendants cite do not counsel otherwise. For example, the court in *JAPNA* held that a faithless servant claim *could stand* against an individual defendant based on allegations that she, like McDonough, engaged in "*repeated* acts of disloyalty to JAPNA," including by "transferring confidential information to herself and to [d]efendants." 2024 WL 1250269, at *10 (emphasis added). In *Yukos Cap. S.A.R.L. v. Feldman*, the Second Circuit, addressing an unpreserved objection to jury instructions under the "plain error" standard, found that "[r]easonable minds could disagree about whether" a single embezzlement incident "was a 'substantial and material' violation of the duty of loyalty." 977 F.3d 216, 239 (2d Cir. 2020). In *Gravitas Search Partners LLC v. Deutsch*, 2025 WL 2243720 (S.D.N.Y. Aug. 6, 2025), the court recognized the faithless servant claim could stand under the "stricter *Turner* standard" based on allegations that the defendant—like McDonough—"solicit[ed] business for her own benefit that should have been undertaken for the benefit of [p]laintiff" and "misappropriated confidential [] information and exploited [p]laintiff's resources" during her employment, which were more than "***an isolated incident***." *Id.* at *14 (emphasis added). And in *MThree Corp. Consulting Ltd. v.*

19

*Wascak*, the court found there was no "pattern of disloyalty" based on the lack of allegations of misconduct *during* the defendant's employment, as "mere preparation to compete" alone was insufficient. 2022 WL 15524842, at *4-5 (S.D.N.Y. Oct. 27, 2022). Here, however, Marsh has alleged multiple disloyal acts by McDonough during his employment in which he solicited Marsh clients to Aon and closely conspired with Aon to effectuate a mass defection, going far beyond mere "preparation to compete."[7]

### B.    Marsh's faithless servant claim is not duplicative of its fiduciary duty claim.

Marsh can assert both its faithless servant claim and its fiduciary duty claim as a matter of law. New York courts regularly hold that these claims are doctrinally distinct, in particular where, as here, the damages alleged under each cause of action are different. *See*, *e.g.*, *Pure Power Boot Camp, Inc.*, 813 F. Supp. 2d 489, 524-25 (S.D.N.Y. 2011). As Marsh alleges, and Defendants previously conceded, the fiduciary duty and faithless servant claims are distinct because they "seek different damages—the breach of fiduciary duty claim[] seek[s] 'lost revenue'," among other damages, "and the faithless servant claim[] seek[s] disgorgement of McDonough's [] compensation." Dkt. 40 at 24; *compare* Compl. ¶ 270 *with* ¶ 278. Courts have refused to dismiss faithless servant claims and fiduciary duty claims as duplicative in such circumstances, even when the claims "rely on the same set[] of facts." *Plaza Motors of Brooklyn, Inc. v. Rivera*, 2020 WL 9814102, at *4 (E.D.N.Y. Sept. 17, 2020); *see also Haraden Motorcar Corp. v. Bonarrigo*, 2020 WL 1915125, at *12 (N.D.N.Y. Apr. 20, 2020) (denying motion to dismiss fiduciary duty claim

---

[7] Defendants assert that allegations in the Complaint that McDonough performed some basic job duties, such as reviewing bonus structures, undermine the faithless servant claim. Mot. at 21. That selective reading of the Complaint imagines away McDonough's broader pattern of repeated disloyal conduct. It is hardly surprising that a faithless servant engaged in disloyal actions might attempt to cover his tracks by going through the motions of also performing some of his regular duties, and Defendants cite no case law for the proposition that performing some basic job duties while *simultaneously* engaging in repeated disloyal acts vitiates a faithless servant claim.

and rejecting argument that it was duplicative of faithless servant claim where the plaintiff sought "different relief" through those claims).

And the case that Defendants rely on, *Ebel v. G/O Media, Inc.*, 2021 WL 2037867 (S.D.N.Y. May 21, 2021), is not to the contrary.  There, the court noted that courts have treated duty of loyalty and faithless servant claims as "doctrinally district."  *Id.* at *4.  However, because the claims in that case were styled as a *single* cause of action (a single claim for "breach of fiduciary duty of loyalty/faithless servant") and "both sides treat[ed] these claims as the same [claim]," the court "treat[ed] [them] as a single claim."  *Id.*  Unlike in *Ebel*, Marsh unequivocally has pleaded separate causes of actions for these two claims and does not treat them as the same claim.[8]

## V.    The Complaint states a claim for trade secret misappropriation (Count XIII).

### A.    Marsh alleges Hall "misappropriated" Marsh's trade secrets.

Marsh properly pleads a claim for trade secret misappropriation against Hall.  Defendants argue only that Marsh has not alleged any "misappropriation" of a trade secret under the three alternative theories of liability:  (1) acquisition by improper means, (2) disclosure without consent or (3) use without consent.  Mot. at 23-24.  Not so.  Marsh alleges facts to support, at minimum, that Hall used or disclosed trade secrets without consent.[9]

---

[8] The faithless servant claim is also not duplicative of Marsh's breach of contract claim.  Mot. at 23, n. 19.  For the reasons set forth in § II, *supra*, a faithless servant claim based on a breach of the employee's duty of loyalty may likewise be brought alongside the contract claims.  *See also Stanley*, 989 F. Supp. at 363-64 (existence of valid contract that prohibited insider trading did not preclude faithless servant claim based on insider trading misconduct).

[9] Marsh has also alleged a violation under the acquisition by improper means theory.  *See ExpertConnect, LLC v. Fowler*, 2019 WL 3004161, at *6 (S.D.N.Y.  July 10, 2019) (plaintiff plausibly alleged acquisition of trade secrets through improper means by pleading breach of NDA limiting use of confidential information to the performance of job duties).  However, because Marsh also alleges a violation under the other two available theories (use and disclosure without consent), the Court need not address the acquisition by improper means theory at this time.

Relevant here, "misappropriation" means:  "disclosure or use of a trade secret of another without express or implied consent by a person who . . . knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret[.]"  18 U.S.C. § 1839(5)(B)(ii)(II).  This is exactly what Marsh alleges.

The Complaint alleges that Hall signed "multiple agreements" in which "he promised to keep Marsh's trade secrets confidential" and "to use Marsh's trade secrets only on behalf of Marsh."  Compl. ¶ 324.  For example, Hall's Confidentiality Agreement prohibits him from "us[ing], disseminat[ing] or disclos[ing] to any other person, organization or entity Confidential Information or Trade Secrets, except as required to carry out [his] duties as an employee of the Company, and except as expressly authorized by the President or highest executive officer of the Company."  *Id.* ¶ 85.  As such, Hall has a "duty to maintain the secrecy of Marsh's trade secrets or limit the use of Marsh's trade secrets for the benefit of Marsh."  *Id.* ¶ 323; *see Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 676-77 (S.D.N.Y. 2022) (partners "who signed an agreement imposing restrictions on their ability to disclose and use Plaintiff's proprietary information" had a "duty to maintain the secrecy of the trade secret or limit the use of the trade secret") (citing 18 U.S.C. § 1839)).

Defendants inaccurately suggest that Marsh only alleges Hall *accessed* Marsh's trade secrets related to Client M.  *Contra* Mot. at 25-26.  In fact, Marsh alleges that Hall *used* and *disclosed* these trade secrets to move Client M's business from Marsh to Aon.  Compl. ¶ 325.  The Complaint sets out that (i) Hall was the business lead for Client M (*id.* ¶ 181), (ii) he accessed the trade secrets—which are effectively Marsh's roadmap for the client account—immediately before he resigned when he had no business need to do so (*id.* ¶¶ 181-82), (iii) Client M had renewed its

business with Marsh just months before Hall's departure (*id.* ¶ 181), and (iv) nevertheless Client M notified Marsh that it would be moving its surety business from Marsh to Aon shortly after Hall's resignation (*id.* ¶ 183). Taken together, these facts strongly support the reasonable inference that Hall used and disclosed the trade secrets he accessed shortly before defecting in aid of his effort to redirect the business of Client M to the detriment of Marsh and benefit of Aon and in violation of his duty not to disclose them to Aon or use them for non-Marsh business purposes. *See Catalyst Advisors*, 602 F. Supp. 3d at 676-77 (complaint alleged use without consent where former partner used trade secrets to sabotage former employer's client relationship for the benefit of his future employer); *ExpertConnect, LLC*, 2019 WL 3004161, at *6 (allegation that "Defendants disclosed and used [the] trade secrets to solicit [plaintiff's] clients" stated misappropriation claim).[10]

Again, Defendants' cases do not support a different conclusion. Mot. at 23-26. In *MedQuest Ltd. v. Rosa*, 2023 WL 2575051 (S.D.N.Y. Mar. 20, 2023), the court found that the complaint did not sufficiently allege defendants improperly used the disputed lawyer list or expert database list in their new business. *Id.* at *6. MedQuest pleaded only that the defendants improperly used the lists because: (1) defendants referred new clients to experts on the list; and (2) the business generated by plaintiff's expert service had diminished in the more than 12 months since defendants formed their new business. *Id.* The lawyer list consisted of "45,000+" lawyers, and the expert database list contained "approximately 2,500 experts." *Id.* Given the "expansive

---

[10] Defendants are also wrong in asserting that Marsh's "allegations of use or disclosure without consent are based solely on information and belief." *Contra* Mot. at 24. Compl. ¶¶ 178-83, 185-88, 325. And regardless, there is nothing wrong with alleging facts on information and belief at the pleading stage, as, "without discovery, it is to be expected that [p]laintiffs would have limited knowledge of the extent to which [d]efendant used their trade secrets." *Onyx Renewable Partners LP v. Kao*, 2023 WL 405019, at *5 (S.D.N.Y. Jan. 25, 2023) (citation omitted).

nature of [the] lists" the court found it was "not surprising or nefarious" that defendants "might" have contact with a lawyer or witness on the lists. *Id.* The existence of "some common contacts" would be expected under these facts. *Id.* Marsh's allegations are nothing like those in *MedQuest.* Marsh alleges clear cause and effect: in the days immediately preceding Hall's departure for Aon, Hall accessed Marsh trade secrets related to the foundational documents for establishing Client M's account, and he and Aon then lured Client M to Aon shortly after leaving Marsh, using that foundational client information, despite Client M having renewed its relationship with Marsh just months earlier.

In *Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396 (S.D.N.Y. 2021), the only allegation that the employee used or disclosed the trade secret was that the employee "'used' the trade secret as leverage during settlement negotiations with [plaintiff] itself,"—that is, the employee offered to return the trade secret in exchange for consideration. *Id.* at 404-05. In answering this "question of first impression," the *Zurich* court determined that possession of a trade secret to extort the trade secret's owner, without disclosing, using, or even accessing the contents of the trade secret itself, did not give rise to a DTSA claim. *Id.* at 405. The court clarified that, had the employee "threatened to disclose" the trade secret "unless he received consideration," that would state a claim. *Id.* Here, Hall did even more than threaten to disclose Marsh's trade secrets; he did use and disclose them to lure Client M's business to Aon. Compl. ¶ 185.[11]

### B.    Marsh alleges Aon "misappropriated" Marsh's trade secrets.

---

[11] Defendants' invocation of *Affinity LLC v. GfK Mediamark Rsch. & Intelligence, LLC*, 547 Fed. App'x 54, 57 (2d Cir. 2013) similarly fails to move the needle. In *Affinity*, the court analyzed a Rule 12(b)(6) dismissal of plaintiff's claim of anticompetitive behavior under the Sherman Act, where plaintiff failed to allege facts sufficient to overcome the presumption of a *de minimis* impact on competition. *Id.* The DTSA has no such heightened pleading requirement.

Marsh also properly pleads a misappropriation of trade secrets claim against Aon.  Again, Defendants challenge only the "misappropriation" element of this claim.  Mot. 27.  Relevant here, "misappropriation" means "disclosure or use of a trade secret of another without express or implied consent by a person who . . . knew or had reason to know that the knowledge of the trade secret was . . . derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret[.]"  18 U.S.C. § 1839(5)(B)(ii)(III)."

Defendants disingenuously suggest that Marsh only alleges "Aon[] merely hir[ed] Hall, after which Client M moved from Marsh to Aon."  Mot. 27.  In fact, Marsh alleges that Aon acquired Marsh's trade secrets related to Client M from Hall, who had a duty to Marsh not to disclose these trade secrets to Aon or use them for purposes other than Hall's work at Marsh (Compl. ¶ 185), and then used those trade secrets "to inform its compensation, pricing, fees, staffing, expertise, tools, systems, and technologies" and devise "other strategies for serving that client" that enabled Aon and Hall to successfully solicit Client M to Aon (*id.* ¶ 188); *see also id.* ¶¶ 244, 326-27, 329-30.  This is sufficient, at a minimum, to give rise to the plausible inference that Aon misappropriated Marsh's trade secrets.  *See Catalyst Advisors, LP*, 602 F. Supp. at 666-67 (allegations that defendant used trade secrets to interfere with plaintiff's client relationships, including inducing a client to withdraw its proposal with plaintiff and sign a different proposal with defendant's new employer, was sufficient to plead misappropriation); *Uni-Sys, LLC v. United States Tennis Ass'n, Inc.*, 350 F. Supp. 3d 143, 177 (E.D.N.Y. 2018) (allegations that defendants "orchestrated" and "encouraged and facilitated" acquisition of trade secrets and "disclosed and used" trade secrets in connection with stadium projects were "more than sufficient" to allege misappropriation); *Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, 2017 WL 6459464, at *8 (E.D.N.Y. 2017) (allegations that defendant used marketing strategies, margins, and customer-

specific strategies obtained by former employees to compete with plaintiff sufficient to state claim for misappropriation).

The sole case cited by Defendants, *R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 207 (W.D.N.Y. 2020), is inapplicable. Mot. at 27. In *R.R. Donnelley*, only one of the complaint's 72 paragraphs contained factual allegations directed at the new employer. *Id.* at 206. Instead, the plaintiff relied on an agency theory, premised on an offer of employment, to allege trade secret misappropriation by the new employer. *Id.* Not so here. Marsh directly makes factual allegations against Aon that sufficiently show Aon encouraged and actively participated in the acquisition, disclosure, and use of Marsh's trade secrets to solicit Client M, forming the plausible basis for Aon's liability. *See*, *e.g.*, Compl. ¶¶ 188, 244, 326-27, 329-30.

## VI. The Complaint states a claim for tortious interference with contract (Count XI)

Marsh's tortious interference with contract claim is more than sufficiently pled. Defendants challenge this claim as it relates to interference with the "Departing Employees, other than McDonough and Hall." Mot. at 28. And Defendants' sole argument is that the Complaint "improperly lumps all 20 Departing Employees together" and "lacks any specific facts about which Departing Employees, other than McDonough and Hall, allegedly breached their purported contracts with Marsh or how those contracts were allegedly breached." *Id.* Both Defendants' reading of the Complaint and the underlying premise of their argument are wrong.

***First***, there is nothing wrong with Marsh grouping the Departing Employees. Plaintiffs cite to no authority otherwise, and courts routinely find this claim sufficiently pled when a claim alleges the defendant interfered with multiple individuals' contracts. *See*, *e.g.*, *Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 176 (W.D.N.Y. 2003) (complaint sufficiently alleged plaintiff tortiously interfered with the contracts of "various physician practices and/or physicians" when the allegations "set forth the existence of contracts between defendant HCS and third-party

physicians, and intentional conduct by plaintiff to induce the breach of those contracts—*i.e.*, withholding payment for services rendered to coerce physicians to deal directly with plaintiff rather than through [their contracted billing agent]"—even though "no contractual terms [were] specified"); *Taboola, Inc. v. Ezoic Inc.*, 2021 WL 2041639, at *10 (S.D.N.Y. May 21, 2021) (tortious interference claim pled with respect to several publishers' contracts with plaintiff).[12]

**Second**, Marsh does allege "which of the Departing Employees breached which agreements with Marsh" and "how they breached those contracts." *Contra* Mot. at 29.  For example, for each Departing Employee, the Complaint specifies the agreement breached, as well as the date and governing law of that agreement.  Compl. ¶¶ 48, 50, 52, 54, 56, 58, 60, 62, 64, 66, 68, 70, 72, 74, 76, 78, 80, 82.  While not required at the pleading stage, the Complaint goes further by identifying the contractual provisions at issue and identifying the specific Departing Employees subject to the same.  *Id*. ¶¶ 5, 91, 97, 100, 103, 131, 142, 299-302.  *See also Taboola, Inc.*, 2021 WL 2041639, at *3-4 (citing *Taboola, Inc. v. Ezoic Inc.,* 2019 WL 465003, at *10 (S.D.N.Y. Feb. 6, 2019) ("*Taboola I*")) (tortious interference with contract claim requires only allegations of a valid contract and "some details" about its terms and breach at the motion to dismiss stage).  The Complaint further explains how the Departing Employees breached those agreements by helping Aon solicit Marsh clients and employees and disclosing Marsh's confidential information for Aon's benefit.  *See*, *e.g.*, Compl. ¶¶ 5-8, 10-12, 164-70, 192, 198-200, 298, 302.  *Taboola I*, 2019 WL 465003, at *11 (denying motion to dismiss tortious interference claim that involved "clear[]"

---

[12] Defendants' argument that "three of the Departing Employees worked for Marsh in California," Mot. at 29, is premature and irrelevant here.  Not surprisingly, Defendants do not actually move to dismiss the claim on this ground.  This is likely because the enforceability of a restrictive covenant agreement involves factual issues that are not suitable for resolution on a motion to dismiss.  *See*, *e.g.*, *Nostrum Pharm., LLC*, 2014 WL 4370695, at *6 (noting that resolution of the enforceability of a noncompete agreement was "intensely fact-based" and "not one that lends itself to resolution on a motion to dismiss").

allegations as to the "nature" of alleged breaches.)

None of the cases Defendants rely on supports dismissal. In *Bose v. Interclick, Inc.*, the plaintiff failed to specify any contract that was breached or identify the parties to those contracts. 2011 WL 4343517, at *10 (S.D.N.Y. Aug. 17, 2011). In *Aniero Concrete Co. v. N.Y.C. Constr. Auth.*, the plaintiff never alleged that the contracting party "did, in fact, breach" the contract, and the allegations of the underlying breach constituted only conduct that was expressly allowed under the parties' contracts. 1997 WL 3268, at *19 (S.D.N.Y. Jan. 3, 1997). By contrast, the Complaint alleges the specific contracts that were breached, the names of the parties to those contracts, and the specific ways the Departing Employees breached their agreements, Compl. ¶¶ 5-8, 10-12, 48, 50, 52, 54, 56, 58, 60, 62, 64, 66, 68, 70, 72, 74, 76, 78, 80, 82, 164-70, 192, 198-200, 298, 302. And unlike in *Aniero*, there is no dispute here over whether the alleged underlying conduct would constitute a violation of the contracts at issue.

## VII.    The Complaint states a claim for tortious interference with business relationships (Count X).

Marsh sufficiently pleads a claim for tortious interference with business relationships. Defendants argue the Complaint fails to offer factual allegations in support of the "wrongful means" element. Mot. at 30-31. But Defendants misapply the standard for satisfying that element.

It is undisputed that "wrongful means" can be shown through "an independent tort." *Id.* at 30. However, Defendants apparently overlook the fact that unfair competition and breach of fiduciary duty are "independent torts" that satisfy the "wrongful means" element. *Cardiocall, Inc. v. Serling*, 492 F. Supp. 2d 139, 153 (E.D.N.Y. 2007) ("wrongful means" element satisfied by allegations of independent tortious conduct—specifically, defendant's wrongful use of plaintiff's confidential information underlying claims for "misappropriation of trade secret information, unfair competition and breach of duty"); *see also All R's Consulting, Inc. v. Pilgrims Pride Corp.*,

2008 WL 852013, at *16 (S.D.N.Y. Mar. 28, 2008) ("Because this Court has found that Plaintiffs made out the elements of common law unfair competition, Plaintiffs have pleaded enough facts to survive a motion to dismiss on the interference claim."); *Don Buchwald & Assocs., Inc. v. Marber-Rich*, 11 A.D.3d 277, 279 (1st Dep't 2004) (reinstating tortious interference with business relations claim "because there are questions as to whether the individual defendants used wrongful means, namely, breaching their fiduciary duties, in inducing plaintiff's clients to leave plaintiff and begin being represented by [a competitor]").[13]

The independent torts alleged in connection with Marsh's other claims, such as breach of fiduciary duty and unfair competition, are more than sufficient to satisfy the "wrongful means" element of this claim.[14] *See* Compl. ¶ 291; *see also id.* ¶¶ 265-87; *see also Cardiocall, Inc.*, 492 F. Supp. 2d at 153; *All R's Consulting*, 2008 WL 852013, at *16.

## VIII.  The Complaint states a claim for unfair competition (Count IX).

---

[13] Because Defendants' independently tortious conduct constitutes the wrongful means underlying this claim, Marsh does not have to show that Defendants operated out of pure malice. Defendants' own citations make clear that the third element of a tortious interference with business relationships claim is disjunctive—that is, a plaintiff must show a defendant acted solely out of malice <u>or</u> through use of wrongful means, such as "an independent tort." Mot. at 30 (emphasis added).

[14] Defendants do nothing more than quote the legal standard for the economic self-interest defense. Mot. at 31. They do not attempt to establish—much less cite to any allegation in the Complaint supporting—that this defense applies on the face of the Complaint. Even if it were applicable (it is not), Defendants come nowhere near meeting their burden of proof. *See Creekside Equity Partners, LLC v. U.S. Bank Nat. Ass'n*, 2015 WL 3537436, at *9 (S.D. Ohio June 4, 2015) ("The fatal flaw of relying on [economic self-interest theory] to support a motion to dismiss is that they are defenses to [plaintiff's] claims, on which [defendant] has [the] burden of proof" (citing *Momentive Performance Materials USA, Inc. v. AstroCosmos Metallurgical, Inc.*, 2009 WL 1514912, at *5-6 (N.D.N.Y. June 1, 2009))) (applying New York law). Defendants cannot defeat Marsh's tortious interference with business relationships claim merely by asserting economic self-interest—they bear the burden of proving the defense applies. *Id.* And even if Defendants ultimately could carry that burden, Marsh would prevail by showing Defendants "fraudulently or illegally interfered with the contractual or business relationship." *See id.*

Defendants' two arguments for dismissal of Marsh's unfair competition claim are equally unavailing. For the reasons explained above, Defendants are wrong that the underlying claims on which Marsh's unfair competition claim is premised fail. *Contra* Mot. at 32; *see supra* §§ I-III, VI-VII. Separately, Marsh's unfair competition claim is not duplicative of its other contract and tort claims. *Contra* Mot. at 33.

***Contract Claims***: Marsh's unfair competition claim against McDonough and Hall is not duplicative of its contract claims against them. As explained above, it is well-established that "conduct constituting a breach of contract may be actionable in tort if a legal duty independent of the contract itself has been violated." *Advance 2000, Inc.*, 2019 WL 6725977, at *8 (internal quotation and citation omitted); *see supra* § II. Under this claim, Marsh alleges that Defendants violated a "duty not to misappropriate the property of another," which courts recognize is independent of any "contractual duty." *Id.* (citation omitted).

In *Advance 2000, Inc.*, the plaintiff sufficiently alleged "conduct beyond a simple breach of the provision of the nondisclosure agreement, because it involve[d] an element of bad faith," *id.* at *9—i.e., defendants "gave this information to a competitor for whom [they] subsequently worked," *id.* at *7. Marsh likewise alleges an element of "bad faith" on the part of McDonough and Hall that is sufficient to distinguish the contractual claims from the unfair competition claim. Specifically, the Complaint alleges that McDonough and Hall acted in bath faith by "knowingly and deliberately misappropriat[ing] Marsh confidential information for use in Aon's business" and undertook these acts "in order to gain an unfair competitive advantage over Marsh for the purpose of harming Marsh's Construction Surety practice." Compl. ¶¶ 284-85; *see also id.* ¶¶ 3, 6, 8-10, 144-45, 154-56, 172, 178-87. Such allegations are sufficient to show that Defendants "act[ed] in such a way that a trier of fact could infer that [they] willfully intended to harm the plaintiff" beyond

their contractual obligations. *Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003); *see also Advance 2000*, 2019 WL 6725977, at *8-9; *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 509 (S.D.N.Y. 2018).[15]

Further, the proposition for which Defendants cite *TileBar*, 723 F. Supp. 3d 164 at 200—i.e., that unfair competition claims premised on a defendant's use of information that is confidential but not a trade secret renders the claim duplicative of a contractual claim—has been rejected by courts in the Southern District and elsewhere. *See*, *e.g.*, *Innovative Networks, Inc. v. Satellite Airlines Ticketing Ctrs.*, 871 F. Supp. 709, 730 (S.D.N.Y. 1995) (unauthorized taking and exploitation of company documents that do not rise to the level of trade secrets for use in competitor's business constitutes unfair competition); *Bytemark, Inc.*, 342 F. Supp. 3d at 509 (finding allegations related to defendants' "use[] and disclos[ure] [of] [p]laintiff's *confidential information* and trade secrets" stated "wrongful conduct" beyond contractual obligations to support unfair competition claim) (emphasis added); *Advance 2000*, 2019 WL 6725977, at *8-9 (holding there was no duplication of contract and unfair competition claims premised on allegations that defendants took plaintiff's "confidential information"). Additionally, the court in the *Quest Partners LLC v. Brugman* case that Defendants rely on did not even attempt to analyze

---

[15] In any event, Marsh's unfair competition claim is not based entirely on the same alleged conduct proscribed by contract. For example, McDonough's client non-solicitation obligations only extended to *post*-separation solicitations, but the Complaint alleges that he engaged in *pre*-termination solicitations as well that involved the misappropriation of Marsh information. The Complaint also details how McDonough conspired with Aon in the weeks before he left, including through misappropriation of confidential information, to identify and coordinate 19 of the "best" Marsh Construction Surety employees to resign nearly simultaneously, which is conduct that goes beyond just the solicitation of employees or disclosure of confidential information under McDonough's contracts (*see* § II, *supra*). And to the extent there is overlap between the contract claims and the unfair competition claim, the unfair competition claim may still proceed in the alternative to these claims. *See*, *e.g.*, *Paysy Int'l v. Atos SE*, 2015 WL 4533141, at *4 (S.D.N.Y. July 24, 2015).

the elements of the unfair competition claim.  204 N.Y.S.3d 923, 2024 WL 952685, at *2 (Sup. Ct. N.Y. Cnty. Feb. 29, 2024).

      *Tort Claims*: Tellingly, Defendants do not cite a single case where an unfair competition claim was dismissed as duplicative of any fiduciary duty or tortious interference claim.  *See* Mot. at 33.  Nor do Defendants explain why Marsh's unfair competition claim should be dismissed as duplicative of its fiduciary duty and tortious interference claims.  Without any authority or argument, Defendants cannot prevail on this theory.  *Minnie Rose, LLC v. Yu*, 2023 WL 7386024, at *11 (S.D.N.Y. Nov. 8, 2023) (on a motion to dismiss, "a defendant must make more than a merely 'cursory and conclusory' argument . . . where a defendant 'do[es] not explain the deficiencies with [a] plaintiff's pleadings, the Court will not dismiss the claim.'") (alterations in original) (citation omitted).  And regardless, courts routinely allow these claims to be brought together.  *See*, *e.g.*, *Trahan v. Lazar*, 457 F. Supp. 3d 323, 348-49, 355-56 (S.D.N.Y. 2020); *Advance 2000, Inc.*, 2019 WL 6725977, at *4, *7-9; *Sidney Frank Importing Co. v. Beam Inc.*, 998 F. Supp. 2d 193, 209-14 (S.D.N.Y. 2014).  As such, Marsh's unfair competition claim should not be dismissed as duplicative.

## <u>CONCLUSION</u>

      For the reasons stated above, Defendants' motion for partial dismissal of Marsh's claims should be denied in full.

Dated: September 22, 2025  
      New York, New York

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Karl G. Nelson*           

    Harris M. Mufson  
    State Bar Number: 4502522  
    Danielle J. Moss  
    State Bar Number: 4996526  
    GIBSON, DUNN & CRUTCHER LLP  
    200 Park Avenue  
    New York, NY 10166  
    Telephone: (212) 351-4000  
    Facsimile: (212) 351-4035  
    hmufson@gibsondunn.com  
    dmoss@gibsondunn.com

    Jason C. Schwartz  
    GIBSON, DUNN & CRUTCHER LLP  
    1700 M Street, N.W.  
    Washington, DC 20036  
    Telephone:  (202) 955-8500  
    Facsimile:  (202) 467-0539  
    jschwartz@gibsondunn.com

    Karl G. Nelson  
    Andrew LeGrand  
    GIBSON, DUNN & CRUTCHER LLP  
    2001 Ross Avenue  
    Suite 2100  
    Dallas, TX 75201  
    Telephone:  (214) 698-3100  
    Facsimile:  (214) 571-2900  
    knelson@gibsondunn.com  
    alegrande@gibsondunn.com

    *Attorneys for Plaintiff Marsh USA LLC*

## <u>WORD COUNT CERTIFICATION</u>

I, Karl G. Nelson, an attorney duly admitted to practice law *pro hac vice* before this Court, hereby certify that this memorandum of law complies with the word limit set forth in Your Honor's Individual Practices because it contains 10,898 words, excluding the parts of the motion exempted from the word limit by Your Honor's Individual Practices.  In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated: New York, New York
September 22, 2025

*/s Karl G. Nelson*
Karl G. Nelson
