**GIBSON DUNN**

Karl G. Nelson
Partner
T: +1 214.698.3203
M: +1 214.929.9895
knelson@gibsondunn.com

February 3, 2026

<u>VIA ECF</u>

Hon. Jeannette A. Vargas
United States District Court
Southern District of New York
500 Pearl Street, Room 703
New York, NY 10007

Re:     *Marsh USA LLC v. Aon Risk Servs. Cos., Inc., et al.*, Case No. 1:25-cv-3241-JAV-HJR

Dear Judge Vargas:

Plaintiff Marsh USA LLC ("Marsh") respectfully submits this letter pursuant to Rule 3.A of Your Honor's Individual Rules and Practices in Civil Cases to apprise the Court of additional, publicly available facts from *Aon Risk Servs. Cos., Inc. et al. v. Rampersaud et al.*, No. 1:25-cv-10275 (S.D.N.Y.) (hereinafter, "*Rampersaud*"), currently before Judge Edgardo Ramos, which bear on the arguments Defendants advance in support of their pending partial motion to dismiss Marsh's Second Amended Complaint (the "Motion") and brief in support of the Motion (the "Brief"). *See* Dkts. 59-60. Marsh submits this information solely for the Court's consideration in assessing the parties' briefing submitted in connection with Defendants' Motion and seeks no separate ruling, relief, or order through this submission.

In *Rampersaud*, Aon Risk Services Companies, Inc. ("Aon") sought and obtained injunctive relief based on factual allegations and inferential pleadings that closely parallel, and in several instances mirror, allegations that Aon characterizes in this case as deficient in its Brief. As reflected in Aon's complaint in *Rampersaud* (attached hereto as **Ex. A**), its brief in support of its motion for injunctive relief (attached hereto as **Ex. B**), and the December 19, 2025 hearing transcript (attached hereto as **Ex. C**), Aon relied on several recurring inferential frameworks in *Rampersaud* that match the allegations they challenge here:

*1) Reliance on Temporal Proximity to Infer Coordination.* Aon alleged in *Rampersaud* that a coordinated raid was evidenced by near-simultaneous employee resignations occurring within minutes of one another, repeatedly relying on the temporal clustering as circumstantial proof of unlawful coordination and solicitation. Aon expressly invoked timing to support both irreparable harm and likelihood of success. *See, e.g.*, Ex. A ¶¶ 62–66, 78, 84–87, 113–14, 128, 134; Ex. B at 2, 22.

# GIBSON DUNN

Page 2

Similarly, Marsh alleges in the present case that reasonable inferences of coordination and solicitation can be drawn from the fact that twenty employees resigned within approximately thirty-eight minutes as part of a coordinated raid led by Defendants McDonough and Aon.  *See* Dkt. 56 ¶¶ 4–5, 43.

*2) Inference of Misappropriation from Access and Timing.*  Aon alleged in *Rampersaud* that, in the days preceding the mass resignation, departing employees accessed sensitive compensation data, client revenue information, and business-development materials, and that the "timing and coordination" of that conduct supported an inference of premeditation and misappropriation, including because there "was no legitimate business reason for [their] conduct."  *See* Ex. A ¶¶ 53–61, 76–77; Ex. B at 2, 14, 22.  Aon further alleged misuse notwithstanding that the information was accessible to the departing employee "by virtue of [his] Aon employment," asserting that improper purpose could be inferred from the context and timing, including through allegations pleaded on "information and belief."  *See* Ex. A ¶¶ 95–100.

Correspondingly, here, Marsh alleges that in the weeks surrounding the near-simultaneous employee resignations, departing employees accessed specifically identified confidential and trade-secret materials—including client pricing, strategy, and renewal information—in close temporal proximity to the resignations, without a legitimate business purpose.  Marsh alleges that the timing and scope of that access supports an inference of misuse and unlawful solicitation.  *See* Dkt. 56 ¶¶ 178–89.

*3) Circumstantial Relationship Between Client Contact and Alleged Solicitation.*  Aon alleged in *Rampersaud* that, shortly after the clustered resignations, former employees contacted or "called upon" Aon clients they serviced while at Aon.  Aon relied on the close temporal proximity between access to confidential client information, their resignations, and their outreach to Aon clients as evidence of improper solicitation, without any allegation that those clients actually departed Aon.  *See* Ex. A ¶¶ 83–84; Ex. B at 2, 9–10, 20.

Marsh alleges in this case that shortly before and after the clustered resignations, former employees contacted Marsh clients to solicit them to Aon (and that some of those clients indeed moved their business to Aon).  Marsh similarly relies on the proximity in time between access, resignation, and client contact as probative of misuse of confidential information and improper solicitation.  *See* Dkt. 56 ¶¶ 171–76, 182–201.

*4) Concealment as Basis to Infer Improper Purpose.*  Aon alleged in *Rampersaud* that departing employees provided false or misleading explanations regarding their conduct and failed to return Aon property.  Aon relied on these allegations as circumstantial

# GIBSON DUNN

Page 3

evidence of improper intent and breach of contract. *See, e.g.*, Ex. A ¶¶ 16, 71–73, 81–82, 107–108.

Here, Marsh alleges that departing employees wiped or restricted access to company devices after Marsh demanded their return, coordinated secrecy, and provided evasive or misleading explanations in connection with their departures. *See* Dkt 56 ¶¶ 12, 158–70.

*5) Attribution of Insider Conduct to Hiring Competitor.* In *Rampersaud*, Aon further alleged that the defendant employer knew of the departing employees' obligations and benefited from, and assisted with, the coordinated departures and related misconduct, including through recruitment and "[u]pon information and belief. . . openly accept[ing]" Aon confidential information. *See* Ex. A ¶¶ 39, 66, 84–85, 95, 113–15, 133–35, 138–40; Ex. B at 15, 20–22.

Similarly, here, Marsh alleges that Aon knew of the departing employees' contractual obligations and participated in or benefitted from the coordinated departures and ensuing competitive conduct. *See, e.g.*, Dkt. 56 ¶¶ 147–55, 172–89, 297–302, 311.

The court in *Rampersaud* found that Aon's application for injunctive relief was "a strong one" based on the facts presented, expressly concluding that Aon demonstrated a likelihood of success on the merits of its claims on which it moved for injunctive relief. Ex. C at 10–11, 63–65. The *Rampersaud* court further observed that the types of documents alleged to have been taken—"lists and the analysis concerning the income generated by those clients, the salaries that were paid to employees"—may constitute trade secrets, and that the alleged conduct preceding the resignations supported an inference of coordination and aiding and abetting. *Id*. at 63–64. Judge Ramos entered injunctive relief in an order dated December 24, 2025, attached hereto as **Ex. D**.

While the legal standards and evidentiary showings associated with Rule 12(b)(6) motions and preliminary injunction applications differ, federal courts have observed that a showing sufficient to establish a likelihood of success on the merits necessarily presupposes allegations that satisfy the threshold plausibility standard of Rule 8(a). *See, e.g.*, *Haitian Ctrs. Council, Inc. v. McNary*, 807 F. Supp. 928, 934 (E.D.N.Y. 1992) (entry of preliminary injunction in favor of plaintiffs necessarily found that claims survived Rule 12(b)(6) challenge); *Chancey v. Illinois State Bd. of Elections*, 635 F. Supp. 3d 627, 645 (N.D. Ill. 2022) (granting preliminary injunction and denying motion to dismiss because in showing some likelihood of success on the merits, plaintiffs necessarily "demonstrated that they have stated a plausible claim for relief."); *Democracy N.C. v. Hirsch*, No. 1:23-CV-878, 2024 WL 1415113, at *9 (M.D.N.C. Apr. 2, 2024) (plaintiffs met plausibility threshold where court

## GIBSON DUNN

Page 4

previously found likelihood of success on substantially similar claims at preliminary injunction stage).

Finally, it is noteworthy that Defendants attack Marsh's pleadings in this case, in part, contending that Marsh cannot allege certain claims based on similar or overlapping conduct, characterizing the claims as duplicative. *See* Dkt. 60 at 14–15, 21–23, 33. While Marsh's response clearly shows that these claims stand independently, Aon itself pleaded several similarly "duplicative" claims in *Rampersaud*. For example, Aon alleged that a departing employee breached his contract not to solicit or induce any employee of Aon to work for a competitor when he, among other things, worked with his new employer to solicit other employees to terminate their employment with Aon. *See* Ex. A ¶¶ 105, 107. Aon then alleged that the same departing employee breached his fiduciary duty by, among other things, working with the new employer to solicit and induce other employees to leave Aon's employment and orchestrate the mass resignation. *See id.* ¶ 128. Similarly, Aon pleaded an unfair competition claim alongside its other tort claims. *See id.* ¶ 137–41. Nevertheless, Defendants assert here that Marsh should be prohibited from doing the same, *see* Dkt. 60 at 33.

Defendants urge this Court to reject inferential pleading based on timing, access patterns, concealment, and competitive impact as speculative or legally insufficient, *see id.* at 13–14, 16–19, 23–27, 30–32, and to dismiss several of Marsh's claims as duplicative of one another, *see id.* 14–15, 21–23, 33. But as the old maxim goes, "what's good for the goose is good for the gander." *Duka v. SEC.*, No. 15 Civ. 357, 2015 WL 5547463, at *1 n.2 (S.D.N.Y. Sept. 17, 2015) (acknowledging the "irony" of agency argument in favor of a stay, when agency flatly rejected the same argument when plaintiff sought a stay of administrative proceedings). Accordingly, Marsh submits these developments in *Rampersaud* for the limited purpose of illustrating Aon's recent reliance on the same inferential methods and combination of claims it now opposes from Marsh in persuading another court in this District to grant relief.

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

Karl G. Nelson

Cc: All counsel of record

Attachments