UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __4/6/2026__

MARSH USA LLC,

                    Plaintiff,

      V.

AON RISK SERVICES COMPANIES, INC.,
ROBERT MCDONOUGH, and DANNY
HALL

                  Defendants.

Case No. 1:25-cv-3241

**AGREED PROTOCOL FOR
PRESERVATION, COLLECTION,
AND REVIEW OF ESI**

Plaintiff Marsh USA LLC ("Plaintiff") and Defendants Aon Risk Services Companies, Inc.,

Robert McDonough, and Danny Hall (collectively, "Defendants") (together, the "Parties") by their

undersigned Counsel, hereby stipulate and agree as follows:

## I.  PURPOSE

This Protocol governs the process for the identification, collection, and forensic imaging

of sources of electronically stored information ("ESI") reasonably accessible to the parties, for use

in litigation pending in *Marsh USA LLC v. Aon Risk Servs. Cos., Inc., et al*, Case No. 1:25-cv-

3421 (S.D.N.Y.) (the "Action").  This Protocol will govern discovery of ESI in this case as a

supplement to the Federal Rules of Civil Procedure, the Local Rules of the United States District

Court for the Southern District of New York, and any other applicable orders and rules.  All

disclosures and productions made pursuant to this Protocol are subject to the Agreed Protective

Order to be entered in this case (the "Protective Order"), and any other subsequent orders entered

in this matter.

The parties agree they may negotiate supplementation or modification of this protocol as

discovery progresses.

**A.    Cooperation**

The parties shall conduct discovery in a manner consistent with Fed. R. Civ. P. 1 mandate to seek the just, speedy, and inexpensive determination of litigation. Counsel must balance their obligation to zealously represent their clients with the collective obligation to conduct discovery in a cooperative and efficient manner.

**B.    Preservation**

The parties are responsible for taking reasonable and proportional steps to preserve unique ESI that is within their respective possession, custody, or control and discoverable under Fed. R. Civ. P. 26(b)(1). All parties' preservation efforts shall be consistent with the reasonable scope of discovery and sufficient to preserve any metadata that the parties agree to produce in Section II.

**C.    Definitions**

1.    "**ESI**" shall include all forms of electronically stored information as defined in Fed. R. Civ. P. 34(a), including email, text messages, instant messages, documents, files, metadata, and logs. Potential sources of ESI include, but are not limited to, email accounts, social media accounts, messaging applications, mobile phones, tablets, computers, external storage devices, and any other system by which communications occur and/or documents are stored electronically.

2.    "**Forensic imaging**" shall mean a bit-for-bit, sector-by-sector copy of all data stored on a device or storage medium, including unallocated space and deleted files.

3.    "**Reasonably accessible**" shall refer to all sources reasonably likely to contain unique, discoverable ESI which are not rendered inaccessible due to undue burden or cost as set forth in Fed. R. Civ. P. 26(b)(2).

## II.  DELIVERY FORMAT & METADATA

ESI will be produced to the requesting party with searchable text, in one of the formats set forth below.  Unless otherwise agreed by the parties, files not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format.

**A.    Image File**

1.    Black and white images must be 300 DPI Group IV single-page TIFF files;

2.    Images containing color must be produced in JPEG format;

3.    File names cannot contain embedded spaces or special characters (including the comma);

4.    Folder names cannot contain embedded spaces or special characters (including the comma);

5.    All image files must have a unique file name (i.e. Bates number), which can include an underscore (e.g., PREFIX_0000001);

6.    Images must be endorsed with sequential Bates numbers in the lower right corner of each image; and

7.    For ESI produced in native format, the producing party shall prepend a unique Bates number to each original file name.

**B.    Image Cross-Reference File**

1.    The image cross-reference file (.OPT) links the images to the database records.  It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database.

**C.    Data File**

1.    The data file (DAT) contains all of the fielded information that will be loaded into the database;

2.    The first line of the .DAT file must be a header row identifying the field names;

3.    The .DAT file must use the following Concordance® default delimiters:

    i.    Comma ASCII character (020)

    ii.    Quote þ ASCII character (254)

    iii.    Date fields should be provided in the format: mm/dd/yyyy

    iv.    Date and time fields to be provided in one field.

4.    If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments;

5.    An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media.  The text file must be named after the BateBeg. Do not include the text in the .DAT file;

6.    For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media.  The native file must be named after the BateBeg number. The Parties will provide a corresponding placeholder TIFF image for native files, which placeholder will read "Document Produced in Native Format" and bear the beginning Bates number for the native file and a confidential or highly confidential designation if needed;

7.    BEGATTACH and ENDATTACH fields must be two separate fields; and

8.    The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| BateBeg | EDC0000001 | First Bates number of native file document/email |
| BateEnd | EDC0000001 | Last Bates number of native file document/email  <br><br>**The LASTBATES field should be populated for single page |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided  <br><br>Native: Name of the individual or department from whose files the document originated |
| All_Custodians | Smith, John  <br><br>Doe, Jane | Lists every individual who received electronic files of the document that were removed during de-duplication. |
| Email FROM | John Smith | Email: Sender  <br><br>Native: Author(s) of document  <br><br>**semi-colon should be used to separate multiple entries |
| Email TO | Cooper, Janice; LeeW [mailto:LeeW@placeholder.com] | Recipient(s)  <br><br>**semi-colon should be used to separate multiple entries |
| Email CC | Frank Wobash [mailto: frank_Wobash@placeholder.com] | Carbon copy recipient(s)  <br><br>**semi-colon should be used to separate multiple entries |
| Email BCC | John Smith | Blind carbon copy recipient(s)  <br><br>**semi-colon should be used to separate multiple entries |
| Email SUBJECT | Board Meeting Minutes | Email: Subject line of the email  <br><br>Native: Title of document (if available) |

| Field Name | Sample Data | Description |
|---|---|---|
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE Time Sent | 10/12/2010 10:22 PM | Email: Date and Time the email was sent<br><br>Native: Date the document was last sent |
| TimeZone | UTC | Specifies the time zone applied during document processing. |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty)<br><br>Native: Author of the document |
| DATE_Time Created | 10/10/2010 7:00PM | Email: (empty)<br><br>Native: Date the document was created |
| DATE Time Mod | 10/12/2010 7:00PM | Email: (empty)<br><br>Native: Date the document was last modified |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br><br>Native: Date the document was last |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| Text Precedence | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |
| FILE_PATH | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document.<br><br>Native file must be named after the |

| Field Name | Sample Data | Description |
|---|---|---|
| CONFIDENTIALITY | Confidential<br><br>Highly Confidential | Indicates any confidentiality designation or highly confidential designation assigned to the document. |
| REDACTED | Redacted or Has Markups | Shows whether the document contains any redacted text. |

With regard to the collection of mobile device and short form instant message data, the following metadata fields should be added to the production load file:

| Field Name | Sample Data | Description |
|---|---|---|
| BeginDate | 1/1/2024 | Start date of conversation |
| EndDate | 1/2/2024 | End date of conversation |
| Direction | Incoming / outgoing | Flag pointing to whether message was sent or received (only to be included if single message format is selected) |
| Participants | 2023335513; John_Doe@placeholder.com | List of all phone numbers and/or email addresses that were included in the message |

### D.    Text Files

1.    Text must be produced as separate text files, not as fields within the .DAT file;

2.    The full path to the text file (OCRPATH) should be included in the .DAT file;

3.    Document level text files should be provided, named per the BateBeg number;

4.    Extracted text files must be in a separate folder, and the number of text files per folder should not exceed 1,000 files;

5.    There should be no special characters (including commas in the folder names); and

6.    For redacted documents, provide the full text for the redacted version of the document.

**E.      Linked Native Files**

1.      Native file documents must be named per the BateBeg number;

2.      The full path of the native file must be provided in the .DAT file for the FilePath field;

3.      The number of native files per folder should not exceed 1,000 files; and

4.      Excel type files that do not contain redactions should be provided in Native format. Other files can be requested in the native format if initial review using the provided image files is difficult/impossible to complete.

### III.  DATA SEGREGATION & INITIAL REVIEW

1.      The producing party shall disclose to the requesting party the method it intends to use to locate, within the collected and processed ESI, the ESI it will either produce or review for responsiveness.  Such disclosure shall occur pursuant to Section IV(1)(v), before the producing party implements its intended method, so that parties can resolve any disputes regarding the adequacy of the method before the investment of significant time and money.

2.      The producing party may locate potentially responsive ESI using: (a) linear review; (b) data filtering; (c) clustering; (d) technology-assisted review ("TAR") tools, including predictive coding or continuous active learning; or (e) any other method reasonably expected to identify responsive ESI.

3.      The forensic images shall not be provided directly to the requesting party. Following collection, ESI will be indexed using an industry recognized processing tool and Vendor shall make the imaged ESI available to counsel for privilege and relevance review.

4.      Within a reasonable time after receiving the imaged ESI from Vendor, counsel shall review the data and produce all relevant, non-privileged ESI in accordance with the discovery rules.

5.      Any email or attachment (and its associated family members) that contains one of the agreed upon search terms will be reviewed for responsiveness to the parties' document requests.

6.      Only the most inclusive email needs to be reviewed and produced.  The most inclusive email includes the most recent email from each multiple thread email chain as well as emails lower down in the chain, each of which contain unique attachments.

7.      Reasonable efforts shall be made to remove any encryption or password protection prior to production.  If the producing party cannot do so, it shall both: (i) provide the requesting party any available encryption keys or passwords needed to access produced ESI; and (ii) disclose the extent to which encryption or password-protection restricted its ability to review and produce potentially responsive ESI.

8.      Reasonable efforts shall be used to connect documents with communications containing hyperlinks to documents.  For example, Microsoft Purview licensees should connect SharePoint and OneDrive documents with Teams messages linking those documents.

9.      For each document searchable in its native format and produced as an image, the producing party shall ensure the image is searchable or else provide a companion text file that includes the document's extracted text and a load file that links the image with the appropriate text file.

10.     Digital files containing electronic comments and tracked changes shall be produced in a manner that preserves and displays the same.

11.     The Parties will endeavor to deduplicate ESI.  Documents will be deduplicated as against the entire population for all custodians and deduplicated custodians.

12.    The Parties will retain all deduplicated documents for the duration of the action or as agreed and may request production of deduplicated documents for particular custodians by identifying the applicable Bates numbers in writing.

13.    Producible data from chat systems, instant message systems, and text messages (irrespective of format) must be threaded and grouped into 24-hour timeframes (absent compelling reason to change that duration.)  For the avoidance of doubt, such grouping is not intended in any way to limit complete production of producible data from chat systems, instant message systems, and/or text messages.  Parties are to meet and confer regarding acceptable producible format for chat systems, instant message systems, and text messages (e.g. Relativity Short Message Format, Cellebrite UFDR, etc.) that captures relevant metadata. The Metadata Load File should contain the following fields:

| Field | Description |
|---|---|
| PRODBEGDOC | Beginning production number. |
| PRODENDDOC | Ending production number. |
| PRODBEGATT | Beginning production number of the first document in a family. |
| PRODBEGATT | Ending production number of the last document in a family. |
| Custodian | Name of the Custodian of the data Produced (Last Name, First Name format) to the extent known and accessible. |
| File Name | Name of the original digital file. |
| Chat Accounts | Names of all senders and recipients in the chat, IM, or text thread. |
| Chat Senders | Names of all senders in the chat, IM, or text thread. |
| Chat Receivers | Names of all recipients of the chat, IM, or text thread. |
| Begin Date | Beginning date of the chat, IM, or text thread. |
| End Date | Ending date of the chat, IM, or text thread. |

| Field | Description |
|---|---|
| Chat Name | Name of the chat, IM, or text thread's group if present, otherwise name of other individual(s) in the chat, IM, or text thread. |
| Chat Source | Message application (e.g. Apple Messages, WhatsApp, etc.) |
| Chat Type | Messaging protocol (e.g. MMS, SMS, iMessage, RCS, etc.) |
| Conversation ID | Unique identifier of the chat, IM, or text thread. |
| Message Count | Number of messages in the chat, IM, or text thread. |

14.    Custodians with iPhone data stored in the iCloud to have a qualified collection technician or forensic examiner to confirm iCloud data retention settings are compliant with this ESI Protocol and all relevant litigation holds.

## IV.  SEARCH PARAMETERS

1.    Within twenty one (21) days of the Court entering this Protocol (the "Initial Exchange Date"), the parties will exchange the following information to the extent not previously provided:

    i.    Each producing party will provide list of its key custodians, determined in good faith to be likely to possess, control, or have custody of relevant ESI. The list shall include each key custodian's relationship to or title within the producing party and a short description of the custodian's relevance to the facts and circumstances alleged in the complaint;

    ii.    Each requesting party will provide a list of keyword search terms and strings (including, where relevant, sematic synonyms, code words, acronyms, abbreviations, etc.), as well as any proposed exclusion criteria (including,

but not limited, date restrictions), to be applied by the producing party to each key custodian's ESI (the "Search Terms");

iii.    Each producing party will provide a list of non-custodial data sources (such as databases, servers, group shares, cloud-based storage, etc.) that may contain relevant information; and

v.    Each producing party will disclose any intent to utilize TAR tools, identifying the tools proposed to be used.

2.    Within twenty-one (21) days after the Initial Exchange Date, the parties shall meet and confer in good faith to resolve disputes regarding any of the information exchanged pursuant to Section IV(1) above.

3.    All Search Terms shall be applied as non-case sensitive. If a party contends that any of the proposed Search Terms should not be deployed for any reason, the collecting party shall provide the requesting party with a hit report that includes: (a) the total number of hits for all proposed Search Terms; and (b) the total number of hits for each contested Search Term so the parties can meet and confer with equal information.

4.    The parties may agree to modify these parameters during the course of the discovery process if the results appear under- or over-inclusive. The parties will continue to meet and confer regarding any search parameters as necessary and appropriate during the discovery period.

## V. REDACTIONS & PRIVILEGE LOG

1.    The parties may use redactions to protect: (1) attorney-client or work product privileges consistent with any order concerning privilege agreed and/or entered in this litigation; or (2) sensitive personal information as set forth in Fed. R. Civ. P. 5.2(a).

2.      Other than as permitted by this Protocol or the Protective Order, no redactions for relevance other than as required by law or statutory authority may be made within a produced document or ESI item.

3.      Documents redacted for privilege shall reflect the use of redaction boxes with the text "Redacted – Privileged." Documents produced with redactions for PII shall identify in some manner (such as through highlighting in black or through the use of redaction boxes) the location and extent of redacted information. Text that was redacted shall not be included in the redacted document's text file.

4.      Where a responsive document contains both redacted and unredacted content, the producing party shall produce the unredacted portions of the document and the text/OCR corresponding only to the unredacted portions.

5.      Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged.

6.      The production of a document in a redacted form does not affect the producing party's obligation to timely substantiate the assertion of privilege over the content in a privilege log.

7.      Redacted versions of spreadsheets, slide presentations and the like may be produced with TIFF image files and OCR in lieu of a native File, TIFF placeholder image and extracted text file.

8.      Any metadata fields for redacted documents that would reveal privileged information shall be excluded.

9. The parties will make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals non-privileged hidden data from redacted native Files that are produced as TIFF image files and will be formatted so as to be readable.

10. The parties shall honor reasonable requests for the production of particular redacted documents in other formats where the TIFF image is not reasonably usable. During the pendency of the litigation, an electronic copy of all original unredacted documents shall be preserved without addition thereto, or modification, alteration (including but not limited to alteration of associated metadata) or deletion thereof.

11. Within 30 days of serving a production, the producing party must serve a privilege log identifying all documents or communications redacted or withheld from production due to the attorney-client privilege or work product doctrine. The privilege log shall be consistent with Fed. R. Civ. P. 26(b)(5).

12. Where applicable, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title (for an e-mail, the unmodified subject line of the message to the full extent such information is not privileged); and document date. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules.

13. Privilege logs shall be produced in PDF format and shall be accompanied by an Excel copy of the log.

## VI.  CONFIDENTIALITY & CLAW BACK

1.      To designate ESI as Confidential or Highly Confidential[1] under the Protective Order, the producing party shall insert either "Confidential" or "Highly Confidential": (1) for ESI produced in an electronic image format, in a conspicuous, nonobstructive location on the face of a document; and (2) for ESI produced in native format, after the Bates number and before the original file name (for example, a file originally named "Jan 2020 BOD Minutes.docx" should be renamed "BATES##### Confidential Jan 2020 BOD Minutes.docx").

2.      The parties shall be provided with all protections afforded by Fed. R. Evid. 502(d). A party does not waive either attorney-client privilege or work product protection by disclosing a document in this litigation, regardless of the care the producing party took to avoid the document's disclosure.  This nonwaiver provision applies to this Action.  This provision applies equally to ESI and hard copy documents.

3.      If a party identifies documents (including ESI) produced by another party that it reasonably expects is subject to attorney-client privilege or work product protection, the party in receipt of the documents must promptly identify the producing party of the same.  If the producing party opts to assert its attorney-client privilege or work product protection and claw the document back, it may do so by initiating the process outlined in Fed. R. Civ. P. 26(b)(5)(B).

4.      If a party inadvertently produces protected material and later seeks to claw it back by asserting a privilege or work product claim, a party challenging the claim may use the protected material in support of its challenge only to the extent that it learned the protected material's content before the producing party asserted the claim.  In other words, a receiving (challenging) party may

---

[1] If permitted by the Protective Order or otherwise by agreement of the Parties.

only use in its challenge the portion of the purportedly protected material that it reviewed before it became aware of the producing party's attempt to claw it back.

## VII.  DISPUTES

If a dispute arises over the scope of collection, review, or production, the parties shall promptly take reasonable steps to preserve the subject ESI until resolution.  The parties shall meet and confer in good faith regarding a dispute before seeking Court intervention, in accordance with the Court's local rules.

## VIII.  AUTHENTICATION

In the interest of efficiency and to the extent possible, parties agree to stipulate to the authenticity of produced ESI.

## IX.  COSTS

Unless otherwise agreed or ordered by the Court, each party shall bear its own costs for preserving, collecting, processing, storing, reviewing, and producing ESI.

## X.  RESERVATION OF RIGHTS

This protocol does not waive any objections the parties may assert regarding the scope of discovery or any rights under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or applicable privilege doctrines.


AS AGREED:


BY:  _/s/ Karl G. Nelson_____
       Karl G. Nelson
       GIBSON, DUNN & CRUTCHER  LLP
       2001 Ross Ave., Suite 2100
       Dallas, TX 75201
       Tel.: (214) 698-3203
       KNelson@gibsondunn.com

DATE:   04/03/2026

COUNSEL FOR PLAINTIFF


BY:  /s/ Jeanah Park

      Jeanah Park
      VEDDER PRICE P.C.
      222 N. LaSalle Street
      Chicago, IL 60601
      Tel: (312) 609-7500
      JPark@vedderprice.com


DATE:   04/03/2026

COUNSEL FOR DEFENDANTS[i]

---

[i] *Pursuant to Section 8.5 of the SDNY Electronic Filing Rules and Instructions, e-signatures are being used on consent of all parties.*


SO ORDERED.

Dated: April 6, 2026
      New York, New York

Henry J. Ricardo
United States Magistrate Judge