Vedder Price
222 North LaSalle Street
Chicago, Illinois 60601

T: +1 312 609 7500
F: +1 312 609 5005
vedder.com



**Jeanah Park**
Shareholder
+1 (312) 609 7532
jpark@vedder.com

June 30, 2026

**VIA ECF**

Hon. Henry J. Ricardo, United States Magistrate Judge
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, NY 10007

Re:    *Marsh USA LLC v. Aon Risk Servs. Cos., et al.*, Case No. 1:25-cv-3241-JAV-HJR
       (S.D.N.Y.) – Defendants' Letter Motion to Compel

Dear Judge Ricardo:

This firm, along with O'Melveny & Myers, represents defendants Aon Risk Services Companies, Inc. ("**Aon**"), Robert McDonough, and Danny Hall (collectively, "**Defendants**") in the above-captioned action. We write pursuant to Rule II.B.1 of Your Honor's Individual Rules and Practices (the "**Court Rules**"), to request a pre-motion conference on a motion to compel Plaintiff Marsh USA LLC ("**Marsh**" or "**Plaintiff**") to produce information responsive to Defendants' expedited requests intended to facilitate productive settlement discussions at a mediation scheduled on July 30, 2026 and to amend Plaintiff's Initial Disclosures to include a computation of alleged damages and produce supporting documents, pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii). The information Defendants seek is basic information Plaintiff should have ready access to, such as identity of allegedly lost clients, identity of trade secrets at issue, and damages. However, Plaintiff has refused to provide this information, requiring Defendants to seek Court intervention.

## I. The Parties' Meet and Confer Efforts.

The parties met and conferred via video conference five times to discuss: the parties' responses to expedited requests for production; the parties' answers to interrogatories; the parties' Initial Exchanges and search terms pursuant to the ESI Protocol [ECF 87].[1] The parties exchanged over 50 pages of letters on June 18, 23, and 26 confirming their positions and their intentions to move to compel as to issues on which they had reached impasse (Ex. A-C). Marsh refused to confirm its final position as to outstanding expedited issues addressed in Defendants' final letter (Ex. D).

## II. Procedural History.

---

[1]  On June 15 from 3:30-5:30 p.m. ET (two hours), Jeanah Park, Courtney Brown, and David Almeling attended on behalf of Defendants. On June 16 from 12-1 p.m. (one hour), J. Park, C. Brown, and Ramon Ramirez attended on behalf of Defendants. On June 17 from 11:30 a.m-1:00 p.m. (1.5 hours), Joshua Dunn, C. Brown, and R. Ramirez attended on behalf of Defendants. On June 18 from 3:30-4:10pm (40 minutes), C. Brown and Elvira Razzano attended on behalf of Defendants. On June 22 from 1-3 p.m. (2 hours), J. Park, C. Brown, and R. Ramirez attended for Defendants. Rachel Robertson and Claire Piepenburg attended each session for Plaintiff.

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.

Chicago | Dallas | London | Los Angeles | Miami | New York | San Francisco | Singapore | Washington, DC

Hon. Henry J. Ricardo
June 30, 2026
Page 2

Marsh filed its complaint on April 17, 2025, asserting claims for violations of client non-solicit and employee non-solicit agreements, and misappropriation of alleged confidential information and trade secrets. Defendants filed a partial motion to dismiss [ECF 59-61] Marsh's Second Amended Complaint [ECF 56] (the "**SAC**"), which was fully briefed on September 29, 2025 [ECF 67]. For several months, Marsh took no further action to prosecute its claims. Following a pretrial conference on March 4, 2026 [ECF 81], the parties served written discovery requests on April 2 and responded on May 4. On May 26, at Plaintiff's request, Defendants agreed to extend certain pre-trial deadlines, including the fact discovery cutoff, to November 23 [ECF 88, 89].

Mediation is scheduled for July 30.  Defendants proposed that the parties exchange five discrete requests for information to facilitate targeted discovery in advance of the mediation, which Defendants served on June 5 (Ex. E). This motion seeks relevant information and documents responsive to Defendants' expedited requests needed to facilitate a productive mediation.

### III. Marsh Must Identify Alleged Trade Secrets and Confidential Information at Issue.

Marsh asserts DTSA, breach of contract, and tortious interference claims for alleged taking of confidential or trade secret information. The identity of such alleged trade secrets and confidential information is critical to this case and Defendants' defenses. Marsh refuses to identify this information with any particularity.

Defendants' first Interrogatory asks Marsh to "Identify with particularity each and every alleged trade secret or item of allegedly confidential, proprietary, or otherwise protected information that You contend was misappropriated, used, or disclosed by Defendants," and certain other related information on such alleged trade secret or confidential information (Ex. F). Following meet and confers, Marsh agreed to provide only some information, but has not committed to *when* it would do so. As explained below, however, Defendants need this information in advance of the existing July 10 deadline for Aon to respond to certain of Marsh's requests for production, as well as before the July 30 mediation to allow Defendants to engage in productive settlement negotiations.

Similarly, Defendants' RFPs 13 and 25 to Marsh seek, "All Documents and Communications supporting your contentions regarding Hall's access to, and alleged misappropriation of, Marsh information pertaining to 'Client M' in" the Complaint and "Documents and Communications sufficient to identify any confidential information of Marsh that Marsh alleges McDonough, Hall, and/or any Departing Employee has taken, used, shared, obtained, divulged, or disclosed…" (Ex. G). Marsh agreed to produce documents responsive to these requests, to the extent they exist, but will not, for example, commit to producing documents that show where in a given document the specific confidential information at issue is located, or how it was allegedly misappropriated.

However, merely including such documents in Marsh's upcoming productions is insufficient to *identify* which of them purportedly contain alleged Confidential Information and/or Trade Secrets. *Moog Inc. v. Skyryse, Inc.*, 2022 WL 16852364, at *2 (W.D.N.Y. July 22, 2022) ("Courts should not allow trade secret plaintiffs to point to documents in which trade secrets are said to reside as a substitute for a detailed identification."). Not only is Marsh required to provide this information, but Defendants need this information to complete their own production of documents responsive to Marsh's expedited RFP 19 to Aon, which seeks, "All documents and communications

Hon. Henry J. Ricardo
June 30, 2026
Page 3

concerning Marsh Material[2] since January 1, 2025" (Ex. H). Defendants committed to responding to RFP 19, but without information from Marsh as to which documents Marsh contends contain Confidential Information and/or Trade Secrets, where in Marsh's own production and where in a given document such information is located, it is impossible for Defendants to complete their production of responsive documents.[3]

**Thus, Defendants move to compel Marsh to fully respond to expedited RFP 13 by July 10, and to answer Interrogatory 1 by July 16.** *See, e.g.*, *Rocket Pharms., Inc. v. Lexeo Therapeutics, Inc.*, 764 F. Supp. 3d 115, 119 (S.D.N.Y. 2025); *Lonza Greenwood LLC v. Natals, Inc.*, 2026 WL 396079, at *1 (S.D.N.Y. Feb. 12, 2026) (requiring plaintiff to "identify the alleged trade secrets with reasonable particularity before discovery can commence").

### V. Marsh Must Produce Documents Regarding Allegations Related to Clients.

Marsh asserts that McDonough and Hall breached client non-solicit and non-service agreements. Marsh also brings tortious interference claims against Aon and McDonough in connection with allegations that one to 18 Departing Employees breached client non-solicit and/or non-service agreements. Marsh alleges that the alleged breached caused certain clients moved to Aon. Thus, documents concerning the alleged solicitation, including whether clients moved because of solicitation as opposed to another independent reason, are relevant to the claims and defenses.

Expedited RFP 28 to Marsh seeks, "All Documents and Communications ***concerning or supporting*** your contention that McDonough, Hall, and/or the Departing Employees have unlawfully communicated with, solicited or serviced Marsh clients or prospective clients, as alleged in the SAC" (Ex. G, emphasis added). Expedited RFP 29 to Marsh seeks, "All Documents and Communications ***concerning*** [Marsh's] claim that McDonough, Hall, any Departing Employee, and/or Aon has provided or is providing services to any of the clients who moved their business from Marsh to Aon since McDonough, Hall, and the Departing Employees' resignation from Marsh, as alleged in the SAC" (Ex. G, emphasis added).

Marsh stated it will produce only documents ***showing*** that improper communications, solicitation, or servicing of Marsh Clients or Prospective Clients, "as alleged in the SAC" (Ex. G, emphasis added). This is insufficient because, for example, it would not include communications relating to whether, regardless of solicitation, the Marsh client moved to Aon for some other reason, such as a better rate, a bad experience with Marsh, or some other reason unrelated to alleged misconduct.

**Defendants move to compel Marsh to produce, by July 10, all documents responsive to RFPs 28 and 29.**

---

[2] Following meet and confers, the parties agreed to define "Marsh Material" using the definition for Marsh Confidential Information and Trade Secrets used in McDonough's and Hall's Confidentiality Agreements.

[3] Aon's ability to complete its production on RFP 19 is also impacted by Marsh's overbroad search terms— the parties continue to meet and confer on that issue. Marsh asked Defendants to search nearly 440 search terms or strings, while Defendants asked Marsh to search 30 targeted search strings. For example, Marsh asked Defendants to search cell numbers for all 20 Departing Employees, which hit on email signatures.

Hon. Henry J. Ricardo
June 30, 2026
Page 4

**IV. Marsh Must Provide A Computation of Its Alleged Damages.**

Marsh's March 3, 2026 Initial Disclosures (Ex. I) do not comply with FRCP 26(a)(1)(A)(iii), which requires, "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material … on which each computation is based…."[4]  Marsh's Disclosures include only descriptions of categories of alleged damages. Defendants advised Marsh during the meet and confer process of its obligations under FRCP 26(a) and (e) to provide a computation and to supplement. On June 23, Marsh finally stated that it would amend its Disclosures by July 24.

However, Marsh's agreement to comply with Rule 26(a) is conditioned on Defendants agreeing to narrow the scope of what they have asked for in their expedited requests.  As discussed above, one of the key issues in this case is the identity of the clients Marsh claims moved business to Aon as a resulted of alleged misconduct and Marsh's alleged damages.  Accordingly, Defendants requested the following basic information: **Identification of clients the Departing Employees serviced during the final full two fiscal years of employment at Marsh and for each such client, Marsh's annual revenue for last two full fiscal years** (RFP 17, Ex. G).  Defendants also issued Interrogatory 7 seeking a computation of each category of damage claimed by Marsh and Interrogatory 6, seeking, for each Marsh Client: "(a) The length of time [Marsh has] serviced said Client; (b) The length of time [Marsh has] handled the business [it] allege[s] to have lost to Aon or the business [it] allege[s] the Departing Employees to have actively interfered with; and (c) [Marsh's] retention rate (Ex. F). Marsh offered to amend its response to Interrogatory 6 to identify "all clients whose business Marsh alleges to have lost to Aon or whose business Marsh alleges the Departing Employees have actively interfered with *(*Ex. F), but has not committed to when.

Instead, Marsh has only agreed to provide either (1) by July 10, information reflecting Mar. 2023-Mar. 2025 revenue per client (for each client[5] Marsh alleges it lost to Aon since January 1, 2025) and an explanation as to how the revenue was calculated; and by July 24, documents responsive to RFP 17; *or* (2) by July 10, documents responsive to RFP 17.

Marsh cannot pick and choose what it will respond to, particularly when the information Defendants seek is information Marsh presumably has had—and was obligated to include in its Initial Disclosures—since at least the end of 2025.

**Defendants move to compel Marsh to: (1) by July 10 (i) provide a chart reflecting revenue per client for 2023-2025, including an explanation as to how the revenue was calculated, (ii) amend its Initial Disclosures; and (2) by July 16, produce documents responsive to RFP 17 (regarding revenue from 2023-2025), and any other documents "on which each computation [of Marsh's damages] is based, including materials bearing on the nature and extent of injuries suffered," as required by FRCP 26(a)(1)(A)(iii); and (3) answer Interrogatories 6 and 7 by July 16.**

---

[4]  Relatedly, Interrogatory 7 to Marsh is: "Provide a computation of each category of damages that you allege in the Action and identify which Defendant you contend is liable for payment of each category" (Ex.6).

[5] The parties have agreed to a specific list of clients constituting "Marsh Clients" (and are in the process of agreeing to a specific list of "Marsh Prospective Clients") for purposes of all discovery requests.

Hon. Henry J. Ricardo
June 30, 2026
Page 5

Respectfully submitted,

*/s/ Jeanah Park*

Jeanah Park
Shareholder

cc:    All Counsel of Record (via ECF)